**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

1. GREAT LAKES INSURANCE SE,

Plaintiff,

vs.

2. FREDY VALLE d/b/a VALLE TRUCKING;
3. SILVER STAR CONSTRUCTION COMPANY, INC.;
4. TYLON MACKEY;
5. ISRAEL JUAREZ;
6. ORD TRUCKING, INC.
7. ZURICH AMERICAN INS. CO.,

Defendants,

---

8. ZURICH AMERICAN INS. CO.,

Defendant/Third Party Plaintiff,

vs.

9. PROGRESSIVE NORTHERN INS. CO.,

Third-Party Defendant.

Case No. CIV-22-00702-JD
Judge Jodi W. Dishman

**DEFENDANT/THIRD-PARTY PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Introduction ........ 1

Statement of Material Facts As To Which No Genuine Issue Exists ........ 2

Arguments and Authorities ........ 14

I. Progressive has a duty to defend and indemnify Silver Star as to the Underlying Suit ........ 14

A. Progressive's Form F Endorsement (Form MC1632) provides coverage for any auto used in Valle's business ........ 15

B. Pursuant to the lease of ORD's truck by Valle, Juarez and Silver Star are additional insureds under the Progressive Policy ........ 18

C. Progressive has a duty to defend and indemnify Silver Star due to the HSA qualifying as an insured contract under the Progressive Policy ........ 23

II. The Progressive Policy provides primary coverage, and the ZAIC Policy provides excess coverage ........ 28

# TABLE OF AUTHORITIES

**Cases**

*Alfalfa Elec. Coop., Inc. v Mid-Continent Cas. Co.*, 2015 OK CIV APP 53, 350 P.3d 1276, 1281 .......... 21
*Chambers v. Walker*, 1982 OK 128, 653 P.2d 931, 933-34 .......... 21
*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 931-32 (7th Cir. 2011) .......... 19
*Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991) .......... 28
*Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursey, Inc.*, 747 P.2d 947 (Okla. 1987) .. 28
*First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302-03 (Okla. 1996) 14
*Home Indem. Corp. v. King*, 670 P.2d 340 (Cal. 1983) .......... 18
*Nuvell Nat'l Auto Finance, LLC v. Monroe Guaranty Ins. Co.*, 736 S.E.2d 463 (Ga. Ct. App. 2012) .......... 24
*Rodriguez v. Ager*, 705 F.2d 1220 (10th Cir. 1983) .......... 18
*Utica Mut. Ins. Co. v. Voyles*, 277 F. App'x 809, 812 (10th Cir. 2008) .......... 15

**Statutes**

OKLA. STAT. tit. 47, § 169(C) .......... 30
OKLA. STAT. tit. 47, § 230.29 .......... 19
OKLA. STAT. tit. 47, § 230.29(A)(4) .......... 19
OKLA. STAT. tit. 47, § 230.29(B) and (C) .......... 21, 22
OKLA. STAT. tit. 47, § 230.29(C)(4) .......... 21
OKLA. STAT. tit. 47, § 230.30 .......... 16, 20, 21, 22
OKLA. STAT. tit. 47, §§ 231.1, *et seq.* .......... 20

**Regulations**

Oklahoma Administrative Code § 165:30-3-11(j) and (k) .......... 20
Oklahoma Administrative Code § 165:30-3-11 .......... 20, 22

**Secondary Sources**

7 Appleman, *Insurance Law & Practice* § 4684.01 at 95 (1979) .......... 15

Defendant/Third-Party Plaintiff, Zurich American Insurance Company ("**ZAIC**"), moves for summary judgment as to ZAIC's Third-Party claim against Progressive Northern Insurance Company ("**Progressive**") for declaratory judgment.

## Introduction

This case arises out of a motor vehicle accident ("**Accident**") which occurred on September 4, 2019 in Payne County, Oklahoma, involving Israel Juarez ("**Juarez**") and then-twenty-year-old Tylon Mackey ("**Mackey**"). At the time of the Accident, Juarez was operating a dump truck owned by ORD Trucking, Inc. ("**ORD**"). Mackey, who was driving a motorcycle, sustained catastrophic injuries, including a traumatic brain injury which will necessitate life-long, twenty-four hour care.[1] Mackey filed a lawsuit in the District Court of Payne County, Oklahoma on July 8, 2020 ("**Underlying Suit**"). At the time of the Accident, ORD had been hired by and was transporting materials for Fredy N. Valle, Sr. d/b/a Valle Trucking ("**Valle**"). Valle had engaged ORD's services to haul materials to fulfill Valle's contractual obligations with another entity, Silver Star Construction Company, Inc. ("**Silver Star**") pursuant to a Hauling Services Agreement ("**HSA**") entered into by Valle and Silver Star. As part of its obligations under the HSA, Valle had listed Silver Star on Certificates of Insurance Valle obtained from its insurers, Great Lakes and Progressive. At the time of the Accident, Silver Star also had in effect an insurance policy issued by ZAIC. ZAIC has provided a defense to Silver Star for the Underlying Suit without any reservation of rights. On

[1] According to discovery in the Underlying Suit, Mackey cannot speak or perform without assistance activities of daily living such as feeding, clothing, or performing personal hygiene without assistance, and that he is 100% disabled and is dependent upon others to complete any task.

May 17, 2022, Zurich sent a letter to Progressive, demanding that Progressive defend and indemnify Silver Star for the Underlying Suit on a primary, non-contributory basis. On September 19, 2022 Silver Star made demand upon Progressive for "Defense and Indemnity Pursuant to the Hauling Agreement." To date, neither ZAIC nor Silver Star have received a written response from Progressive as to these demands.

## Statement of Facts As To Which No Genuine Issue Exists[2]

*The Accident and Underlying Suit*

1. The Second Amended Petition in the Underlying Suit states, *inter alia*, as follows:

> . . .
> 19. At the same time, Defendant Juarez, who was employed by ORD Trucking, Valle Trucking and Silver Star, was operating a vehicle owned by ORD Trucking, traveling northbound on Murphy Street near the city of Stillwater.
> . . .
> 23. ORD Trucking, Valle Trucking, and Silver Star knew or should have known the motor vehicle operated by Defendant Juarez was unsafe and improperly inspected, repaired and maintained.
> 24. ORD Trucking, Valle Trucking, and Silver Star knew or should have known of Defendant Juarez's history of reckless, careless, and intoxicated driving.
> . . .
> 31. At the time of the collision, the company vehicle being driven by Defendant Juarez was owned by Defendant ORD Trucking.
> . . .
> 33. At the time of the collision, Defendant Juarez was driving the company vehicle while in the course and scope of his employment with ORD Trucking, Valle Trucking, and Silver Star.

*See* Second Amended Petition in Underlying Suit, **Exhibit 1**.

2. The Underlying Suit asserts claims against the Defendants therein, including Silver Star, for the following: negligence/negligence per se and negligent hiring, training, screening

[2] Hereafter, the "Statement of Facts As To Which No Genuine Issue Exists will be referred to as "**SOF**."

and supervision (respondeat superior). *See* Exhibit 1. The Underlying Suit seeks actual and punitive damages against Silver Star in excess of $1,000,000.00. *See* Exhibit 1.

*<u>The Hauling Services Agreement</u>*

3. On February 7, 2019, Silver Star and Valle entered into the HSA, whereby Valle agreed to deliver, transport, and/or haul materials for Silver Star. *See* HSA, **Exhibit 2**.

4. Under the HSA, Silver Star is identified as conducting paving, grading, excavation and heavy construction operations requiring transportation of various materials or equipment. *See* Exhibit 2, at page 1.

5. Under the HSA, Valle, or "HAULER," is identified as an independent contractor engaged in the business of delivery, transporting and/or hauling various types of freight and materials by motor vehicle on behalf of others. *See* Exhibit 2, at page 1.

6. Under the HSA, Valle agreed to utilize either wholly owned vehicles or vehicles leased by Valle. *See* Exhibit 2, at page 1.

7. Under the HSA, Valle agreed to do the following:

> A. ***Maintain the exclusive possession, control and use of all the equipment that may be required to fulfill the requirements of this Agreement***.
>
> . . .
>
> E. ***Maintain a policy or policies of insurance coverage, as set forth more particularly herein, which provide contractual liability coverage and which shall also name SILVER STAR as an additional insured on the policy or policies***.
>
> 2. <u>INDEMNITY:</u> . . . ***to hold harmless and unconditionally indemnity SILVER STAR against any and all liability for costs, expenses, claims and damages, including attorney fees and all other costs of defense, which SILVER STAR may at any time suffer or incur, or become liable for, by reason of any accidents, damages or injuries sustained either to persons or property, including but not limited to employees or agents of Silver Star and/or Hauler, and/or any third parties, arising out of the services performed by HAULER pursuant to this Agreement, regardless of whether such injury or damage was caused in whole or in part, to any degree, by HAULER***.

It is the express intent of the parties to this Agreement that the indemnity obligations described herein are for the benefit of SILVER STAR unless the injury or damage sustained arose directly from SILVER STAR's negligence. . . .

3.   INSURANCE:

A. . . .  to purchase and maintain a commercial general liability insurance policy or policies, providing coverage for damage to both property and injury to persons, expressly insuring HAULER'S indemnity obligations above, in an amount not less than One Million Dollars ($1,000,000.00) for each occurrence, and Two Million Dollars ($2,000,000) in the aggregate. . . .

B. . . . to purchase an applicable commercial motor vehicle insurance policy, providing coverage for both damage to property and injury to persons, expressly insuring HAULER'S indemnity obligations referenced above, in an amount not less than One Million Dollars ($1,000,000.00) combined single limit.

C. . . . ***to name SILVER STAR as an additional insured under its commercial general liability and automobile policies referenced herein, on a primary and non-contributory basis, without restriction as to fault or liability. HAULER agrees to furnish SILVER STAR with Certificates of Insurance identifying each carrier and policy, evidencing HAULER'S compliance with the obligations as set forth in this Agreement,*** . . . . HAULER further agrees that the insurance provided to SILVER STAR as set forth in the Agreement shall not operate to preclude, circumvent or nullify any obligation assumed by it in paragraph 2 above, to indemnify SILVER STAR for any loss or damage sustained to any person or property. . . .

*See* Exhibit 2 (emphasis added).  *See also,* Deposition Transcript of Fredy Valle, October 5, 2023, **Exhibit 3,** at 26:17-27:5 (Valle acknowledged entering into the HSA).

8.   In its discovery responses in the Underlying Suit, Valle stated as follows:

As to the project in question, Silver Star Construction contracted with Valle Trucking for five trucks to be present at the job site on the day of the incident. Valle Trucking thereafter contracted with ORD and three other contractors to be present at the site with trucks. . . . Silver Star paid Valle Trucking for the project, and Valle paid the other contracting companies according to those contracts.

*See* Valle's Answers to Plaintiff's Interrogatories, at Answer to Interrogatory No. 9, **Exhibit 4**.

9. Jesus Ordones ("**Ordones**"), the owner of ORD, testified that ORD had been hired by Valle and was working for Valle at the time of the Accident. *See* Deposition Transcript of Jesus Ordones, July 20, 2023, attached as **Exhibit 5**, at 26:12-28:5.

10. Ordones testified that ORD was paid by Valle. Exhibit 3, at 27:21-28:3. *See also*, Exhibit 3, at 17:21-18:3 (Silver Star paid Valle by check, and then Valle paid its contractors by check).

11. Ordones testified that Silver Star did not enter into a contract with ORD. Exhibit 5, at 59:22-60:3. He testified the agreement was between Silver Star and Valle. Exhibit 5, at 60:11-18.

12. Ordones testified it was his decision, as owner of ORD, to put Juarez in one of his trucks to provide to Valle. Exhibit 5, at 60:22-61:1. *See also*, ORD's Responses to Plaintiff's Requests for Admission in the Underlying Suit, at Request No. 2 (admitting Juarez was acting in the course and scope of his employment with ORD at the time of the Accident), **Exhibit 6**.

13. Juarez testified at his deposition that ORD gave him a job. *See* Deposition Transcript of Israel Juarez, July 29, 2021, **Exhibit 7**, at 13:25-14:2.

14. At the time of the Accident, Juarez was operating a truck owned by ORD. *See* Juarez's Responses to Mackey's Request for Admission No. 2, **Exhibit 8**; ORD's Responses to Mackey's Request for Admission No. 1, Exhibit 6.

15. Juarez was acting within the course and scope of his employment with ORD at the time of the Accident. *See* ORD's Responses to Mackey's Request for Admission No. 2, Exhibit 6.

16. Juarez testified it was his understanding at the time of the Accident that ORD was working for Valle. Exhibit 7, at 33:20-23.

17. Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA. Exhibit 3, at 34:16-20.

18. Juarez testified he was paid for his work by ORD. Exhibit 7, at 39:14-18.

19. Valle provides a pre-numbered "field ticket" to each driver on which to document important load details. Some of the fields filled out by driver are "LEASE," "TRUCK #," "date," "driver name," "job #," start and end times, total hours worked, "# OF LOADS," "RATE," "TERMS," and "material type." *See* Valle Trucking Field Tickets, attached as **Exhibit 9**. *See also*, deposition transcript of Fredy Valle, Exhibit 3, at 33:1-34:21.

20. For loads transported by an ORD vehicle and driver, "ORD" appears in the "LEASE" field of the Valle field ticket. *See* Exhibit 9, at pages 4, 5, and 12.

21. Valle obtained a license as an Oklahoma intrastate motor carrier by filing the Progressive Policy with the Oklahoma Corporation Commission Transportation Division. *See* Form E, Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance certifying Progressive's issuance of insurance to Valle effective from July 12, 2019, attached as **Exhibit 10**, at page 34.

*Progressive's Policy and Certificate of Insurance*

22. At the time of the Accident, Progressive had in force and effect its Automobile Liability Policy, Policy No. 004019061-2 (the "**Progressive Policy**"), issued to Valle. *See* Progressive Policy, **Exhibit 11**. The Progressive Policy reflects "Liability To Others" coverage limits of $1,000,000.00, and "Employer Non-Owned Auto Liability To Others" coverage limits of $1,000,000.00. *See id*.

23. Progressive's Certificate of Liability Insurance ("**Progressive COI**") was issued on September 5, 2019. The Progressive COI has effective dates of July 12, 2019 through July 12, 2020, lists Fredy Valle and Valle Trucking as the insured, and lists Silver Star and its subsidiaries as the certificate holder. The Progressive COI provides limits of $1,000,000.00 in liability coverage for each accident. *See* Progressive COI, **Exhibit 12**. The Progressive COI shows Valle had automobile liability coverage for Scheduled Autos and Non-Owned Autos. *See* Exhibit 11.

24. The Progressive Policy includes a Form F, Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, which reflects a Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed in Oklahoma. *See* Exhibit 11, at Form F.

25. The Progressive Policy defines an "insured contract" as "That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your** employees or agents; . . . ." *See* Exhibit 11, at pages 3-4 (emphasis in original).

26. The Progressive Policy states in part as follows:

> Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. . . .
>
> **We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional

payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

*See* Exhibit 11, at Part I, page 6 (emphasis in original).

27. Part I-Liability to Others contains the following additional definitions:

A. When used in Part I-Liability To Others, **insured** means:
1. **You** with respect to an insured auto.
. . .
4. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I-Liability To Others.
. . .
*If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.*

*See* Exhibit 11, at Part I, page 6 (bold emphasis in original, italic emphasis added).

28. The Progressive Policy contains certain exclusions, including the following:

**5. Contractual**
Any liability assumed by an **insured** under any contract or agreement, *unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.*

*See* Exhibit 11, at Exclusions, page 9 (bold emphasis in original, italic emphasis added).

29. The Progressive Policy contains an Other Insurance clause which states as follows:

3. **Other Insurance**
a. For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. . . .
b. *If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all Coverage Forms and policies covering on the same basis.*

*See* Exhibit 11, at page 22 (bold emphasis in original, italic emphasis added).

30. Valle paid premiums for Progressive's Employer's Non-Ownership Liability Endorsement, which states in part as follows:

> **ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT**
>
> If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:
>
> *"**Non-owned auto**" means an **auto** that **you** do not own*, lease, hire, rent, or borrow, *and that is used in connection with **your** business*. This includes **autos** owned by **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business or **your** personal affairs.
>
> **CHANGES TO PART I –LIABILITY TO OTHERS**
>
> *The definition of an **insured auto** is modified to include a **non-owned auto***. The definition of **insured** does not include the owner of a **non-owned auto**.
>
> . . .
>
> **OTHER INSURANCE**
>
> The insurance provided by this endorsement is excess over any other valid and collectible insurance. . . .

*See* Exhibit 11, at Employer's Non-Ownership Liability Endorsement, page 28-29 (bold emphasis in original, italic/underlined emphasis added); and Progressive's Response to ZAIC's Request for Admission No. 10, **Exhibit 13**.

31. Pursuant to OKLA. STAT. tit. 47, § 230.30, Progressive filed FORM E UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE with the Oklahoma Corporation Commission Transportation Division on December 5, 2019, certifying Progressive Northern Insurance

Company provided Valle a policy of insurance effective from July 12, 2019 12:01 AM standard time. *See* Form E, Exhibit 10**.**

*The ZAIC Policy*

32. ZAIC issued a Commercial Insurance Business Automobile Policy to Silver Star, Policy No. BAP 9809603-04 ("**ZAIC Policy**") with effective dates of April 1, 2019 to April 1, 2020. *See* ZAIC Policy, **Exhibit 14**. The ZAIC Policy reflects "Covered Autos Liability" limits of $1,000,000.00. *See id.*

33. The ZAIC Policy states as follows under the Business Auto Coverage Form:

> SECTION II – COVERED AUTOS LIABILITY COVERAGE
> A. Coverage
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
> . . .
> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. . . .
>
> SECTION IV – BUSINESS AUTO CONDITIONS
>
> The following conditions apply in addition to the Common Policy Conditions:
> . . .
> 5. Other Insurance
> a. For any covered "auto" you own, this Coverage Form provide primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .
> . . .
> d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

*See* Exhibit 14, Business Auto Coverage Form, at Sections II and IV.

*The Great Lakes Policy and Certificate of Insurance*

34. At the time of the Accident, Great Lakes had in force and effect its Certificate of Liability Insurance issued on February 20, 2019 ("**Great Lakes COI**"), **Exhibit 15**, under Great Lakes Commercial General Liability Policy No. GLG022472 ("**Great Lakes Policy**"), **Exhibit 16**.

35. The Great Lakes COI has effective dates of February 11, 2019 through February 11, 2020, lists Valle as the insured, and lists Silver Star and its subsidiaries as the certificate holder. The Great Lakes COI provides limits of $1,000,000.00 in liability coverage under the Great Lakes Policy for each occurrence. *See* Exhibit 15.

36. The Great Lakes Policy, which was issued to Valle with effective dates from February 11, 2019 to February 11, 2020, was in force and effect at the time of the Accident. *See* Exhibit 16.

37. The Great Lakes Policy provides General Aggregate coverage of $1,000,000.00, with an Each Occurrence Limit of $1,000,000.00, and states in part as follows:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**.
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

. . .

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

. . .

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any other insurance, whether primary, excess, contingent or on any other basis:

**a)** That is Fire, Extended Coverage, Builder's Risk Installation Risk or similar coverage for "your work";

**b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I -** Coverage A **-** Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

. . .

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

*See* Exhibit 16, at Section I (bold emphasis in original, bold/italic emphasis added).

38. The Great Lakes Policy contains an Endorsement entitled, "Additional Insured—Owners, Lessees or Contractors—Scheduled Person or Organization" (hereafter, "**Additional Insured Endorsement**"), which states in part as follows:

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** | **Location (s) Of Covered Operations** |
| --- | --- |
| Silver Star Construction, Inc<br>& it's Subsidiaries<br>2401 S Broadway<br>Moore, OK 73160 | Any and All<br>Location(s) Of<br>Covered Operations |

. . .

**A. Section II - Who Is An Insured** *is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule*, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** *The acts or omissions of those acting on your behalf;*

*in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above*.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

*See* Exhibit 16, at Additional Insured Endorsement (bold emphasis in original, italic/underlined emphasis added).

39. The Great Lakes Policy contains a definition in Section V, which is amended by an Endorsement entitled "Amendment of Insured Contract Definition." The Endorsement defines an "insured contract" as follows:

> a. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. . . .

*See* Exhibit 16, at Amendment of Insured Contract Definition.

40. On May 17, 2022, ZAIC sent letters to Great Lakes and Progressive, demanding that they defend and indemnify Silver Star for the Underlying Suit on a primary, noncontributory basis. *See* Great Lakes and Progressive Demands, **Exhibit 17**. Great Lakes agreed to defend Silver Star, subject to a reservation of rights. *See* Reservation of Rights Letter, **Exhibit 18**.

## Arguments and Authorities

### I. Progressive has a duty to defend and indemnify Silver Star as to the Underlying Suit.

As Valle's insurer, Progressive has a duty to defend and indemnity Silver Star as to the claims asserted against Silver Star in the Underlying Suit based upon: (A) the Form F endorsement which requires Progressive to cover a hired auto; (B) the nature of the Valle-ORD transaction as a lease of ORD's equipment with a driver; and (C) the HSA's qualifying as an insured contract under the Progressive Policy. Liability insurance policies generally impose two duties on the insurer—the duty to defend and the duty to indemnify. *See First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302-03 (Okla. 1996). The duty to defend is broader than the duty to indemnify, and is not limited by "determinable

contingencies" or the "outcome of the third-party action." *Id.* at 303-04. Rather, under Oklahoma law, "[a]n insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to the *potential of liability* under the policy." *Id.* at 303 (emphasis in original). An insurer's duty to defend is determined on the basis of the allegations of the petition (and other pleadings), as well as information obtained from the insured and other sources reasonably available to the insurer. *Id.* Thus, under Oklahoma law, "[t]he duty to defend cannot be limited by the precise language of the pleadings. *The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible*." *Id.* at 303 n.15 (emphasis in original). *See also Utica Mut. Ins. Co. v. Voyles*, 277 F. App'x 809, 812 (10th Cir. 2008) ("Oklahoma does not recognize the four-corners rule followed by some courts. A court must look beyond the language of the complaint to determine whether a duty to defend exists.") "An insurer has a duty to defend an insured whenever it ascertains *the presence of facts* that give rise to the *potential* of liability under the policy." *Id.* (emphasis added) (internal citation omitted). Thus, an insurer cannot shut its eyes to *facts* triggering the duty to defend, in favor of reliance upon the complaint's allegations. *Id.* at 303 n.13. "'[E]ven though the pleadings do not show coverage, where known or reasonably ascertainable facts become available that show coverage the duty to defend devolves upon the insured.'" *Id.* at 303 n.15 (quoting 7 Appleman, *Insurance Law & Practice* § 4684.01 at 95 (1979)).

**A. Progressive's Form F Endorsement (Form MC1632) provides coverage for any auto used in Valle's business.**

Progressive's policy includes a Form F Endorsement to comply with Oklahoma law's requirement that motor carriers file with the Oklahoma Corporation Commission a liability

insurance policy or bond covering public liability and property damage. OKLA. STAT. tit. 47, § 230.30 governs issuance of licenses to motor carriers and states as follows:

> A. No license shall be issued by the Commission to any carrier until after the carrier shall have filed with the Commission a liability insurance policy or bond covering public liability and property damage, issued by some insurance or bonding company or insurance carrier authorized pursuant to this section and which has complied with all of the requirements of the Commission, which bond or policy shall be approved by the Commission, and shall be in a sum and amount as fixed by a proper order of the Commission, and the liability and property damage insurance policy or bond shall bind the obligor thereunder to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any carrier for which the carrier is legally liable. A copy of the policy or bond shall be filed with the Commission. . . .
>
> B. . . .
> No carrier, whose principal place of business is in Oklahoma, shall conduct any operations in this state unless the operations are covered by a valid primary bond or insurance policy issued by a provider authorized or approved by the State Insurance Commissioner. No carrier shall conduct any operations in this state unless the operations are covered by a valid bond or insurance policy issued by a provider authorized and approved by the National Association of Insurance Commissioners and certified by the State Insurance Commission.

*See* OKLA. STAT. tit. 47, § 230.30. In compliance with OKLA. STAT. tit. 47, § 230.30, Progressive's policy contains a Form MC1632, which is a "FORM F UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT." *See* Exhibit 11 at Form F. Form F states as follows:

> It is agreed that:
>
> ***1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby. . . .***
>
> 2. The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commissions listed below. [Indicates filing in Oklahoma.]

> . . .
> Attached to and forming part of Policy No. CA 04019061-2 issued by Progressive Northern Insurance Co, herein called Company, of PO BOX 94739, CLEVELAND, OH 44101 to FREDY N VALLE SR, VALLE TRUCKING of 2449 SW 90TH STREET, OKLAHOMA CITY, OK 73159-0000.

*See* Exhibit 11, at Form F (underlined emphasis in original, bold italic emphasis added). Thus, Progressive's Form F filing amends the Progressive policy to provide coverage for any auto used in Valle's business. As set forth in SOF Nos. 8-11, 14, 16-17, the truck owned by ORD and operated by Juarez at the time of the subject accident was being operated for the purpose of Valle fulfilling its obligations to Silver Star under the HSA. As such, the truck was an auto being used in Valle's business, and the Form F filed by Progressive for purposes of covering public liability and property damage operates to provide coverage for the auto owned by ORD, driven by Juarez, and used in Valle's business.

ZAIC anticipates Progressive may cite to federal decisions interpreting the MCS90 federal filing, and argue that the Form F and the filings required by Oklahoma statutes and administrative regulations are surety, not insurance coverage. However, the Form F included in the Progressive Policy clearly states it "amends the policy." *See* Exhibit 11, at Form F. The MCS90 does not include the same language as the Form F.[3] Further, the federal motor carrier statutes have been frequently amended, while the Oklahoma statutes have not been materially amended. Thus, while many of the federal decisions discussing the MCS90 have been attacked

[3] The MCS90 states the policy is amended so that the insurer will "pay any final judgment." The Form F says the law "amends the policy to provide insurance for…liability". Oklahoma requires its intrastate carriers, using a state permit to haul, to provide *coverage* for the operation – the vehicle and its driver, and this modification of its insurance policy has the added effect of adding other insureds as well – those alleged to be vicariously liable, such as Silver Star.

because the statute(s) upon which they were decided have since been amended, the Oklahoma motor carrier statute has remained substantially the same.[4] A state can also decide to interpret an intrastate motor carrier act very differently than the federal courts interpret federal law. For example, in *Home Indem. Corp. v. King*, 670 P.2d 340 (Cal. 1983), the Court held that California's intrastate motor carrier filings endorsement constituted coverage, not mere surety. The *King* Court held that that a forklift operator was "using" the insured truck, and thus was "insured" for purposes of the standard Public Utilities Commission endorsement in the truck owner's policy.[5] Here, the Oklahoma MCA and associated regulations govern, and the Form F provides insurance coverage for the truck involved in the subject Accident.

**B. Pursuant to the lease of ORD's truck by Valle, Juarez and Silver Star are insureds under the Progressive Policy.**

The truck owned by ORD and operated by Juarez at the time of the subject accident was leased by Valle. This is evidenced by the Valle field tickets identifying the vehicles being leased by Valle, the date and time of the leases, the rate of pay for the leases, and the companies whose vehicles were being leased. *See* SOF Nos. 19-20. Here, Valle was leasing vehicles

---

[4] *See e.g., Rodriguez v. Ager*, 705 F.2d 1220 (10th Cir. 1983) (motor carrier held liable for the operation of equipment operated under the motor carrier's permit where carrier lessee which was licensed by the Interstate Commerce Commission was responsible as a matter of law for injuries sustained in an accident even though the driver was not on a mission for the carrier and it was unaware of the fact that the vehicle was being used in the way it was). *Rodriguez* has been much maligned since its issuance because Congress has made several significant amendments to the federal statutes to avoid the creation of an employment relationship between carrier and driver.

[5] *See also, Samson v Transamerica*, 636 P.2d 32 (Cal. 1981) (holding a pickup truck, which was used for services which were incidental to the transportation of property, such as the carrying of tools, spare parts and "wide load" signs, was used in conducting the service the insured performed as a common carrier and was thus included within the scope of the endorsement and a California Public Utilities Commission general order governing mandatory insurance, both of which were incorporated into the underlying policy.)

from ORD to satisfy its obligations to Silver Star under the HSA. *See* SOF Nos. 8-11, 14, 16-17. The HSA required Valle to maintain exclusive possession, control, and use of the equipment used for the Silver Star job, and that Valle use only owned or leased vehicles for the job. *See* SOF No. 2. *See also,* SOF Nos. 9 (Ordones testified that ORD had been hired by Valle and was working for Valle at the time of the Accident); SOF No. 10 (ORD was paid by Valle); SOF No. 11 (Silver Star entered into a contract with Valle, not ORD); SOF No. 16 (Juarez testified at the time of the Accident, ORD was working for Valle); SOF No. 17 (Valle testified any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA).

The Valle field tickets are evidence of a lease between Valle and ORD, whereby Valle leased ORD's trucks and drivers to fulfill Valle's obligations to Silver Star pursuant to the HSA. *See* SOF Nos. 2, 19-20. The field tickets set forth all the essential terms of the lease, including reference to the party to the lease, the truck number, date, driver name, job number, start and end times, total hours worked, number of loads, rate, terms, and material type. *See id*. OKLA. STAT. tit. 47, § 230.29 defines a "lease" in the context of the Oklahoma Motor Carrier Safety and Hazardous Materials Transportation Act as "a contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of passengers or property, in exchange for compensation." *See* OKLA. STAT. tit. 47, § 230.29(A)(4).[6] Valle obtained an

[6] *See also, Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 931-32 (7th Cir. 2011) (A non-trucking or bobtail policy's rental exclusion for "use in the business of one to whom the auto is rented" should be applied where the contract provisions acknowledged by the parties did establish it was a lease or rental agreement, even though it was called an owner-operator agreement. The

Oklahoma intrastate motor carrier license by filing the Progressive Policy. *See* SOF No. 21; OKLA. STAT. tit. 47, § 230.30. Oklahoma's Motor Carrier Act of 1995, OKLA. STAT. tit. 47, §§ 231.1, *et seq*. ("**MCA**") requires motor carrier insurance to cover the operation of any carrier for which the carrier is legally liable. *Id*. The required insurance policy may not contain any restriction relating to the driving or operation of the vehicle, and must cover any and all vehicles operated by the motor carrier insured, whether or not listed or identified in the policy. *See* Oklahoma Administrative Code ("**OAC**") 165:30-3-11(j) and (k).[7] Insurance policy

---

Court found all the elements present for a lease where the lessor offered the lessee use of his vehicle and driving services, the lessee accepted, and the parties agreed lessor would haul freight for lessee and obtain insurance to do so, and in return the lessee would provide lessor with additional insurance coverage and compensation. The Court found "no reason why enforcing the [Contractor Operating Agreement]—and consequently applying the 'rented' exclusion—would contravene public policy.")

[7] OAC § 165:30-3-11 provides in part as follows:

> (a) No motor carrier whose principal place of business is in Oklahoma shall conduct any operations in this State unless such operations are covered by a valid primary bond or insurance policy issued by an insurer authorized or approved by the Oklahoma Insurance Department. . . .
>
> (b) Every motor carrier shall file with, and must be approved by, the Commission a certificate on Form E or G certifying that there is in effect a valid bond or insurance policy covering operations in Oklahoma to protect the public against loss of life, injury, property damage, . . . .
>
> . . .
>
> (j) No certificate of insurance shall be filed with the Commission, which contains a provision to the effect that liability thereunder may be limited or avoided because of the culpability, the recklessness, or the condition of the driver of the vehicle involved or any other restriction relating to the driving or operation of the vehicle.
>
> (k) Every certificate of insurance filed with the Commission shall provide that the public is protected from damage sustained through operations of any and all vehicles operated by the motor carrier insured, whether or not listed or identified in the policy; and that liability is not limited by the description of any particular vehicle or route which may be traveled by the motor vehicle in transporting passengers or property under the certificate or permit or license.

provisions resulting in a lesser obligation than required by statute will be void as against public policy. *See Chambers v. Walker*, 1982 OK 128, 653 P.2d 931, 933-34.

Pursuant to OKLA. STAT. tit. 47, § 230.29(B) and (C), a licensed motor carrier may perform authorized transportation in vehicles it does not own if there is a written lease between the carrier and the owner, identifying the vehicle to be used, granting the use of the vehicle, and stating the rate of pay and other terms. Pursuant to the statute, the authorized carrier lessee must have exclusive possession, control and use of the vehicle, and the lessee must assume complete responsibility for the operation of the equipment for the duration of the lease. *See* OKLA. STAT. tit. 47, § 230.29(C)(4). Oklahoma courts have imposed the motor carrier insurance requirements on a policy of insurance which attempted to skirt these obligations. *See Alfalfa Elec. Coop., Inc. v Mid-Continent Cas. Co.*, 2015 OK CIV APP 53, 350 P.3d 1276, 1281 (citing the MCA, noting the insurer issued a Form F pursuant to OKLA. STAT. tit. 47, § 230.30, and noting the Oklahoma Supreme Court's longstanding interpretation to make a motor carrier and its insurer "jointly liable" and to allow an injured third party to bring a direct action against a motor carrier and its insurer).

Here, the Valle field tickets identify the vehicle being leased by vehicle number, as well as state the day and time of the lease, the rate of pay, and the company whose vehicle is being leased (*e.g.*, "ORD"). *See* SOF Nos. 19-20 This, together with the testimony of Valle, Juarez, and Ordones (*see* SOF Nos. 9, 16-17) establishes that the dump truck owned by ORD was being leased by Valle. Pursuant to Oklahoma statutes and applicable regulations, the hired auto operated by Juarez at the time of the Accident must be covered by Progressive despite any language in its policy preventing coverage for a hired auto. *See* OKLA. STAT. tit. 47, §

230.30, OAC § 165:30-3-11; OKLA. STAT. tit. 47, § 230.29(B) and (C).   Further, pursuant to its policy, Progressive must cover "any person while using, with [Valle's] permission, and within the scope of that permission, an insured auto you…hire…"  *See* Exhibit 11, at Part I—Liability to Others, Additional Definitions, at page 6, para. (A)(2).  Thus, Juarez, who was operating an ORD truck pursuant to a lease between Valle and ORD at the time of the Accident, is an "insured" under the Valle policy.

The Progressive Policy also defines an insured as "[a]ny other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I – Liability To Others."  *See* Exhibit 11, at Part I—Liability to Others, Additional Definitions, at page 6, para. (A)(3).  Because Juarez is an insured under the Progressive Policy and Mackey has alleged in its Second Amended Petition filed in the Underlying Suit that Silver Star is vicariously liable for the acts and omissions of Juarez (*see* SOF No. 1), Silver Star is also an insured under the Progressive Policy.

Pursuant to the plain language of Progressive's policy, the driver of the vehicle used in Valle's business, Juarez, is an insured.  Juarez had Valle's permission to use the vehicle that Valle hired by virtue of the lease whereby Valle leased autos from ORD to fulfill its obligations under the HSA.  Further, pursuant to the Progressive Policy, the HSA, and the allegations in Plaintiff's Second Amended Petition in the Underlying Suit, Silver Star is alleged to be legally liable for the acts or omissions of Juarez.  Thus, both Juarez and Silver Star are insureds under the Progressive Policy.

**C. Progressive has a duty to defend and indemnify Silver Star due to the HSA qualifying as an insured contract under Progressive's policy.**

The Progressive Policy defines an "insured contract" as "[t]hat part of any other contract or agreement pertaining to **your** business . . . under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your** employees or agents." *See* Exhibit 11, at General Definitions, Paragraph 6(e) (emphasis in original). Here, Mackey has alleged in his Second Amended Petition that Valle, Silver Star, and ORD are all vicariously liable for the actions or omissions of Juarez, who as an independent contractor hired by ORD (ORD also an independent contractor hired by Valle). However, the facts clearly demonstrate that Silver Star is not an employer of Juarez and that Juarez was an agent of Valle, not Silver Star. ORD was hired by Valle to full Valle's obligations to Silver Star pursuant to the HSA (see SOF Nos. 7, 8, 10, 15, 16), and Juarez was hired by ORD to fulfill those same obligations (see SOF Nos. 15, 16). Because neither Valle, ORD, nor Juarez were employees of Silver Star, Mackey has no valid claim for respondeat superior. The facts position the HSA squarely within Progressive's definition of an "insured contract." The HSA clearly pertains to Valle's business, and in the HSA, Valle assumed the tort liability imposed upon Silver Star for Valle's negligence ***or*** the negligence of Valle's employees or agents (ORD and Juarez). Nor does the Progressive Policy's Contractual Exclusion defeat coverage for this insured contract, since the HSA was entered well in advance of the Accident. *See* Exhibit 11, at Exclusions (emphasis in original).

Here, the HSA constitutes an insured contract under the Progressive policies. Pursuant to the HSA, Valle was required to defend and indemnify Silver Star. *See* Exhibit 2, at page 2,

Paragraph 2. Because the HSA is an insured contract under the Progressive Policy and no exclusion applies, Progressive has a duty to defend and indemnify Silver Star. Instructive in this regard is *Nuvell Nat'l Auto Finance, LLC v. Monroe Guaranty Ins. Co.*, 736 S.E.2d 463 (Ga. Ct. App. 2012), as it presents an analogous factual scenario. In *Nuvell*, the wife of a vehicle owner's friend who was struck and killed by a tow truck during an attempted repossession of the vehicle brought an action against the tow truck driver, the field repossession company, the repossession management company, and the financing company that ordered the repossession. Nuvell National Auto Finance, LLC ("**Nuvell**") provided financing to Lidie Joseph Clements to purchase a 2004 Dodge Ram truck. *Id*. at 465. Nuvell faxed a request for repossession of the truck to Renaissance Recovery Solutions, LLC ("**Renaissance**"), a repossession management company with which Nuvell had a contract for repossession services. *Id*. Monroe Guaranty Insurance Company ("**Monroe**") issued three policies to Renaissance, including a Commercial Auto Policy. *Id*. On March 1, 2006, Nuvell and Renaissance had entered into an indemnity agreement pursuant to which Nuvell was issued a certificate of insurance reflecting Monroe as the insurer. *Id*. Nuvell was not added to the policy as a named insured. *Id*.

After being given the repossession assignment by Nuvell, Renaissance contacted Renovo Services, LLC ("**Renovo**"), a repossession company, to pick up the Dodge Ram. *Id*. Renovo retained several independent contractors, including Michael Brown ("**Brown**"), for repossessing vehicles. Renovo owned the wreckers, and the drivers leased them on a per job basis. When Brown went to repossess the truck, Clements' friend, William Jacobs, Jr., was run over by the tow truck and killed. *Id*. In the underlying lawsuit, Pamela Jacobs sued

Michael Brown, Nuvell, Renaissance, and Renovo for wrongful death, wrongful repossession, negligent hiring and retention, and other claims. The Jacobs case proceeded to trial and the jury awarded a verdict of $2.5 million. *Id*. at 401. Judgment was entered accordingly and was satisfied. *Id*. Nuvell filed a third-party claim against Renaissance and Monroe, claiming it was an insured under the Commercial Auto Policy and that Renaissance had agreed to indemnify it. *Id*. at 401. Nuvell appealed from the trial court's denial of its motion for summary judgment against Monroe and the grant of Monroe's motion for summary judgment on the basis that Nuvell was not an insured. *Id*.

The Monroe policy listed Renaissance as the named insured, although a later endorsement was issued which stated that the named insured was amended to include Renovo Services. *Id*. at 404. The Monroe policy provided coverage for non-owned autos, which was defined as follows:

> those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees," partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

*Id*. The Georgia Court of Appeals found that the trial court had erred in determining the tow truck owned by Renovo and operated by Brown was not a non-owned auto as to Renaissance. *Id*. at 406-07. The Court further found error with the trial court's determination that the tow truck was not used in connection with the business of Renaissance. *Id*. at 407. The Court stated:

> In determining whether the tow truck was used "in connection with" the business of Renaissance, the trial court relied on the standard set out in *CMH Homes v. United States Fidelity & Guaranty Co.*, 2007 U.S. Dist. LEXIS 12795 (E.D.Tenn.2007), with which we agree. . . . Because the phrase "in connection with the business" of

Renaissance is not defined in the Monroe policy, it is to be given its ordinary and plain meaning, avoiding a technical or strained construction, and any ambiguity is to be resolved in favor of Renaissance. *Hosking v. State Farm Mut. Automobile Ins. Co.*, 198 Mich.App. 632, 633, 499 N.W.2d 436 (1993).

* * *

. . . The March 1, 2006 agreement between Nuvell and Renaissance provided in paragraph 8 that

> [c]ontractor [Renaissance] will indemnify and hold harmless [Nuvell] ... from any and all liabilities, losses, damages costs, and expenses (including reasonable attorneys' fees and legal expenses), suits, and/or causes of action ... arising out of [Renaissance's] negligent, reckless, or willful misconduct in the performance of any Services under this Agreement, and any Services performed by any entity, person or company to which Contractor assigns Services whether with ***409** or without knowledge of [Nuvell], and from [Renaissance's] breach of any covenant, representation or warranty set forth in this agreement or in [Nuvell's] Policy on Repossession and Location Information.

The insurance policy provides in Section II, subsection "B. Exclusions" that

> [t]his insurance does not apply to any of the following: ... 2. Contractual Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages: a. Assumed in a contract or agreement that is an "*insured contract* " provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or b. That the "insured" would have in the absence of the contract or agreement. (Emphasis supplied.)

In Section V–Definitions, subsection H 5, "insured contract" is defined as

> [t]hat part of any other contract or agreement pertaining to your business ... under ****471** which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

According to Section IV, subsection B 5, "Other Insurance," sub-subsection c. provides that liability coverage is primary for any liability assumed under an "insured contract."

**Therefore, Nuvell's liability assumed by Renaissance under the indemnity agreement shifts to Monroe because coverage under the Monroe policy applies to**

> **any liability of Renaissance resulting from the lawsuit**. Accordingly, Renaissance was entitled to summary judgment on this ground also. . . .

*Id*. at 407-09 (italic emphasis in original, bold emphasis added).

In the instant case, Silver Star is in the position of Nuvell; Valle is in the position of Renaissance; Progressive is in the position of Monroe; ORD is in the position of Renovo; and Juarez is in the position of Brown. The indemnity agreement in *Nuvell* is similar to the HSA; the contractual liability exclusion in *Nuvell* is similar to the contractual exclusions in the Great Lakes and Progressive Policies; and the definition of "insured contract" in *Nuvell* is similar to the definition of "insured contract" in the Progressive Policy. The Progressive Policy includes a non-owned autos endorsement nearly identical to the one in *Nuvell*, and here, Valle was not the owner of the truck involved in the accident. *See* SOF No. 14. Because Valle assumed liability under the HSA's indemnity agreement for any claims brought against Silver Star in relation to any claims arising out of the services provided by Valle (and contractors hired by Valle), under the indemnity agreement the liability shifts to Progressive because Progressive's coverage under its policy applies to any liability of Valle resulting from the Underlying Suit. *See Nuvell*, 736 S.E. 2d at 409.

ZAIC anticipates Progressive may argue that Juarez's operation of the truck was not "in connection" with Valle's business. As there is no definition in the Progressive Policy for "in connection with [Valle's] business," the Court should interpret this language according to its ordinary, plain meaning. *See BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005). The facts demonstrate Valle hired ORD and Juarez for purposes of

fulfilling ***Valle's*** obligations under the HSA. *See* SOF Nos. 10, 16. Thus, ORD and Juarez worked in furtherance of Valle's business, and certainly "in connection with" Valle's business.

## II. The Progressive Policy provides primary coverage, and the ZAIC Policy provides excess coverage.

General principles of contractual interpretation govern the construction of an insurance policy. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). "An insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." *Id.* "When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions." *BP America, Inc.*, 148 P.3d at 835. "[N]either forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract." *Dodson*, 812 P.2d at 376. In *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursey, Inc.*, 747 P.2d 947 (Okla. 1987), the Oklahoma Supreme Court established the coverage priority to be given to various kinds of policies. The Court stated as follows:

> ¶ 19 . . . In determining which insurer provides primary coverage, a brief overview of the common terms of coverage used in insurance contracts is appropriate. ***954** *Primary coverage* is provided when, under the terms of the policy, the insurer is liable without regard to any other insurance coverage available. *Excess coverage* or *secondary coverage* is provided when, under the terms of the policy, the insurer is liable for a loss only after any primary coverage—*other insurance*—has been exhausted. A *pro rata clause* in a policy limits coverage to a proportionate share in relation to all coverage available for the same risk. An *escape clause*, also known as a *no liability clause*, disclaims any and all liability if other insurance is available.
>
> ¶ 20 Questions of conflict and apportionment of liability between or among insurers arise when more than one policy covers the same loss. By definition, of course, primary

> coverage up to the limits of the policy will be applied to a loss before resort is had to any excess coverage. Furthermore, when one policy provides pro rata coverage and another provides only excess coverage, the pro rata policy is to be treated as primary.
>
> ¶ 21 When one policy has an escape clause that disclaims any liability if there is other available insurance and another policy provides only excess coverage, we follow the general trend that the "no liability" policy is deemed primary coverage. This conclusion is based on the rationale that excess coverage is not "other available insurance" which would trigger the escape clause. On the other hand, we hold that between an escape clause and a pro rata clause, the escape clause will prevail and the pro rata coverage will be deemed primary.
>
> ¶ 22 ***The conflict is compounded when concurrent policies have "other insurance" clauses which cancel each other. They may each provide only excess coverage leaving no primary coverage, or both may have escape clauses disclaiming liability if other insurance is available to cover the loss. When concurrent policies have such "other insurance" clauses which cancel each other, we hold that they are mutually repugnant and are to be disregarded, with the loss shared by the insurers on a pro rata basis. Where the insurers have designated in their policies the same method of apportionment, the contracts will control. Absent concurring provisions for apportionment, coverage of the loss is to be shared on a pro rata basis according to the ratio each respective policy limit bears to the cumulative limit of all concurrent policies. . . .***

*Id*. at 953-54 (footnotes omitted, italic emphasis in original, bold emphasis added).

Here, the Progressive Policy includes an "Other Insurance" provision which purports to make any coverage under the Policy "excess over any and all other valid and collectible insurance, whether primary, excess or contingent." *See* Exhibit 11. The Progressive Policy's Employer's Non-Ownership Liability Endorsement, which may apply applies to the vehicle operated by Juarez at the time of the Accident since it was not a Valle-owned vehicle, also states "[t]he insurance provided by this endorsement is excess over any other valid and collectible insurance. . . ." *See* Exhibit 11.The Progressive Policy states Progressive will pay only its proportionate share when there are multiple available policies which apply on the same basis (to be calculated in proportion to the available limits of liability of all available policies).

*See* Exhibit 11.  The ZAIC Policy includes an "Other Insurance" provision which states, "[f]or any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . ."  *See* Exhibit 14. The ZAIC Policy states ZAIC will pay only its proportionate share when there are multiple available policies which apply on the same basis.  *See* Exhibit 14.

Pursuant to the unambiguous terms of the afore-referenced policies and by operation of the Oklahoma Motor Carrier Act, Progressive's policy is primary, and the ZAIC Policy is excess to the Progressive Policy.  Progressive's coverage provided pursuant to its Form F and OKLA. STAT. tit. 47, § 169(C) is primary.  The Form F "amends the policy to provide insurance . . . in accordance with the provisions of such law or regulations. . . ."  *See* Exhibit 11, at Form F. Further, OKLA. STAT. tit. 47, § 169(C) states, "[n]o [motor] carrier, whose principal place of business is in Oklahoma, shall conduct any operations in this state unless the operations are covered by a valid primary bond or insurance policy issued by an insurer authorized or approved by the Oklahoma Insurance Department."  Thus, Progressive's policy coverage must be primary in order to comply with Oklahoma law.   Because Progressive's Policy is primary, pursuant to *Equity Mutual*, the entirety of the limits for the Progressive Policy must be exhausted before the ZAIC Policy is implicated.

WHEREFORE, Defendant/Third-Party Plaintiff Zurich American Insurance Company respectfully requests an Order from the Court: (1)  granting summary judgment in its favor as to Progressive's duty to defend and indemnify Silver Star as to the Underlying Suit; (2) setting forth the priority of coverage and proportionate indemnification obligations with regard to the

ZAIC and Progressive Policies as set forth herein; and (3)  granting any other relief to which

ZAIC may be entitled.

Respectfully Submitted,

**ASTON | MATHIS | CAMPBELL PLLC**

By *s/Amy E. Hampton*
    **RACHEL C. MATHIS, OBA #16360**
    **AMY E. HAMPTON, OBA # 20235**
    2642 East 21st Street, Suite 250
    Tulsa, OK  74114
    (918) 949-9966
    FAX: (918) 949-9968
    E-Mail: rmathis@amlawok.com
    ahampton@amlawok.com
    Attorney for Defendant/Third-Party Plaintiff
    Zurich American Insurance Company

**CERTIFICATE OF SERVICE**

I, Amy E. Hampton, hereby certify that on this 21st day of November, 2023, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system:

Michael S. Linscott
Doerner, Saunders, Daniel & Anderson, L.L.P.
Two West Second Street, Suite 700
Tulsa, OK 74103-3117
*Attorney for Great Lakes Insurance SE*

Brian M. Keester
Doerner, Saunders, Daniel & Anderson, L.L.P.
2 West Second Street, Suite 700
Tulsa, OK 74103-3117
*Attorney for Great Lakes Insurance SE*

Emily E. Williams
Doerner, Saunders, Daniel & Anderson, L.L.P.
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
*Attorney for Great Lakes Insurance SE*

J. Chris Horton
J. Chris Horton, PC
PO Box 576
El Reno, OK 73036
*Attorney for Silver Star Construction Company, Inc.*

James A. Scimeca
Burch, George & Germany
1500 City Place Bldg.
204 N. Robinson, Ste 1500
Oklahoma City, OK 73102
*Attorney for Tylon Mackey*

Ryan Polchinski
Law Offices of Daniel M. Davis
300 N. Walnut Ave.
Oklahoma City, OK 73104
*Attorney for Tylon Mackey*

Andrew Polchinski
Law Offices of Daniel M. Davis
300 N. Walnut Ave.
Oklahoma City, OK 73104
*Attorney for Tylon Mackey*

Bradley E. Bowlby
Starr, Begin & King, PLLC
1800 South Baltimore, Suite 550
Tulsa, OK 74119
*Attorney for Progressive Northern Insurance Company*

Christopher C. King
Starr, Begin & King, PLLC
1800 South Baltimore, Suite 550
Tulsa, OK 74119
*Attorney for Progressive Northern Ins. Co.*

*s/Amy E. Hampton*
**AMY E. HAMPTON**

AEH/aeh