## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GREAT LAKES INSURANCE SE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CIV-22-00702-JD |
| vs. | ) | Judge Jodi W. Dishman |
| | ) | |
| FREDY VALLE d/b/a VALLE | ) | |
|   TRUCKING; | ) | |
| SILVER STAR CONSTRUCTION | ) | |
|   COMPANY, INC.; | ) | |
| TYLON MACKEY; | ) | |
| ISRAEL JUAREZ; | ) | |
| ORD TRUCKING, INC. | ) | |
| ZURICH AMERICAN INS. CO., | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |
| | ) | |
| ZURICH AMERICAN INS. CO., | ) | |
| | ) | |
| Defendant/Third Party | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PROGRESSIVE NORTHERN INS. | ) | |
|   CO., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

Plaintiff Great Lakes Insurance SE ("Plaintiff," or "Great Lakes") pursuant to Fed.

R. Civ. P. 56, hereby moves for summary judgment in its favor on all declaratory judgment

claims in the Complaint (Dkt. #1) and further for summary judgment dismissing the

counterclaim of Defendant Zurich American Ins. Co. ("Defendant" or "Zurich") as pled in Defendant's Third-Party Counterclaim against Great Lakes ("Counterclaim") (Dkt. #27).

<u>**UNDESPUTED MATERIAL FACTS**</u>

**A.** <u>**The Parties.**</u>

1.      Plaintiff is a foreign insurance company with corporate headquarters and principal place of business in Munich, Germany. *See* Joint Status Report, Dkt. #49.

2.      Fredy Valle d/b/a Valle Trucking is a sole proprietorship located in Oklahoma. *See* Joint Status Report, Dkt. #49.

3.      Defendant, ORD Trucking, Inc. is an Oklahoma corporation. *See* Joint Status Report, Dkt. #49.

4.      Defendant Silver Star Construction Company, Inc. is an Oklahoma corporation. *See* Joint Status Report, Dkt. #49.

5.      Defendant Tylon Mackey is an Oklahoma resident. *See* Joint Status Report, Dkt. #49.

6.      Defendant Israel Juarez is an Oklahoma resident. *See* Joint Status Report, Dkt. #49.

7.      Defendant Zurich American Insurance Company is New York corporation. *See* Joint Status Report, Dkt. #49.

**B.** <u>**The Relevant Insurance Policies.**</u>

8.      Plaintiff issued a Commercial General Insurance Policy ("CGL") No. GLG022472 on February 20, 2019, to Valle Trucking covering a policy period from

February 11, 2019 to February 11, 2020. An endorsement in the Policy names Silver Star as an additional insured. *See* Ex. 1, Policy.

9.      The Great Lakes Policy specifically included coverage only for one truck, a 1999 Mack CH 613, with the last four vin 0371. *See* Ex. 2 Commercial Insurance Application.

10.     Zurich issued a Commercial Insurance Business Automobile Policy to Silver Star, covering a policy period from April 1, 2019 to April 1, 2020, Policy No. BAP 9809603-04 ("Zurich Policy). *See* Ex. 3, Zurich Policy.

11.     Progressive Northern Insurance Company ("Progressive") issued a Automobile Liability Policy, Policy No. 0040190612 ("Progressive Policy"). The Progressive Policy was issued on September 5, 2019 with effective dates July 12, 2019 through July 12, 2020 and lists Valle as the insured. *See* Ex. 4, Progressive Policy.

## C.  **The Underlying Lawsuit.**

12.     Tylon Mackey filed a lawsuit against Juarez, ORD Trucking, Valle, and Silver Star in Payne County for injuries he allegedly suffered as a result of an auto collision on September 4, 2019. *See* Ex. 5, Second Amended Petition.

13.     In the Petition, Mackey alleges that Juarez, while employed by ORD, Valle, and Silver Star, was operating a vehicle owned by ORD Trucking, traveling northbound and failed to yield the right of way at a stop sign, and collided with Mackey, causing injuries. *See* Ex. 5, Second Amended Petition.

14.     However, in his deposition, Juarez testified that he was employed only by ORD Trucking and was not employed or hired by Valle at any time. In fact, Juarez had no idea who Fredy Valle or Valle Trucking were. *See* Ex. 6, Juarez Dep. 29:18-25.

15.     Juarez also testified that ORD was the one who paid him for his work. *See* Ex. 6, Juarez Dep. 39:14-18.

16.     Juarez also testified that Silver Star was the supervisor who was working that day. *See* Ex. 6, Juarez Dep. 27:17-22.

17.     Additionally, Jesus Ordones, the owner of ORD, told Juarez that the subject truck was going to be the job site for him to pick up. *See* Ex. 6, Juarez Dep. 31:14-18.

18.     Juarez also testified that the people telling him "when to start, what to do, where to go," were the "people from Silver Star." *See* Ex. 6, Juarez Dep. 37:2-4. In fact, the supervisor for the day was an employee of Siver Star. *See* Ex. 6, Juarez Dep. 38:10-19.

19.     The police report from the accident lists the vehicle involved in the crash as being owned by ORD Trucking with the last four VIN 2154. *See* Ex. 7, Official Oklahoma Traffic Collision Report.

20.     Silver Star also takes the position in the lawsuit that Juarez was not an employee of Valle Trucking but was rather a "subcontractor." *See* Ex. 8, Amended Answer and Counterclaim of Silver Star, pp23 and 28.

21.     Valle Trucking tendered the lawsuit to Great Lakes and Great Lakes agreed to defend Valle Tracking subject to a reservation of rights. *See* Ex. 9, Reservation of Rights to Valle Trucking.

22.    Silver Star also tendered the lawsuit to Great Lakes, and Great Lakes agreed to defend Silver Star also subject to a reservation of rights. *See* Ex. 10, Reservation of Rights to Silver Star.

23.    The Hauler Agreement was entered between Valle Trucking and Silver Star on February 7, 2019 wherein Valle Trucking agreed to transport, deliver and/or haul materials for Silver Star in exchange for an agreed amount of compensation. *See* Ex. 11 Hauling Agreement.

**D.   The Relevant Great Lakes Policy Provisions.**

24.    The Great Lakes Policy provides that it will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this occurrence does not apply." *See* Ex. 1, Great Lakes Policy.

25.    The Great Lakes Policy contains an exclusion for Aircraft, Auto or Watercraft. It is modified by endorsement to the Policy. Such exclusion and endorsement provide the insurance does not apply to "'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." See Ex. 1, Great Lakes Policy.

26.    Endorsement GL235-G of the Great Lakes Policy modifies the bodily injury provision (UMF #26) as follows: "This exclusion applies even if the claims against any

insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured." *See* Ex. 1, Great Lakes Policy.

27.    The Great Lakes Policy defines "auto" as "a land motor vehicle, trailer or other semitrailer designed for travel on public roads, including any attached machinery or equipment. But 'auto' does not include 'mobile equipment'." *See* Ex. 1, Great Lakes Policy.

28.    The Great Lakes Policy also provides for a Contractual Liability exclusion. Insurance is not applicable to Contractual Liability, "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." *See* Ex. 1, Great Lakes Policy.

29.    The definition of an insured contract is provided by the Great Lakes Policy. According to the Policy, an "insured contract" is "that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization, provided the 'bodily injury' or 'property damage' is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." See Ex. 1, Great Lakes Policy.

30.    The Great Lakes policy provides an exclusion for subcontractor work and independent contractors. The Policy does not apply to "bodily injury' or 'property damage', 'personal injury', 'advertising injury' or medical payments arising out of: (a) the acts or omissions of independent contractors while working on behalf of the insured or (b) the negligent hiring, investigation, supervision, training, retention of any independent contractor for whom any insurance is or ever was legally responsible and whose acts or omissions would be excluded by (a) above. As used throughout this endorsement, the term "Independent Contractors' includes Subcontractors." *See* Ex. 1, Great Lakes Policy.

## ARGUMENTS AND AUTHORITIES

### Standard of Review

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[,]" *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986), and the Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56 (c)). Once the preliminary burden is met, the nonmovant must then "do more than simply show that there is some metaphysical doubt as to the material facts", *Garnett Rd. Baptist Church v. Guideone Mut. Ins. Co.*, 2020 WL 6386870, at * 4 (N.D. Okla. Oct. 30, 2020) (*quoting Matsushita*, 475 U.S. at 586), and instead present "a showing sufficient to establish an inference of the existence of each element essential to the case with respect to which that party has the

burden of proof[.]" *Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (emphasis added).

Although the movant "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law[,]" *Savant Homes, Inc. v. Collins,* 809 F.3d 1133, 1137–38 (10th Cir. 2016), that initial burden may be satisfied "by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." *Id.* However, the movant is not required to provide evidentiary materials "negating the opponent's claim. On the contrary, Rule 56 (c) . . . suggests the absence of such a requirement." *Celotex*, 477 U.S. at 323 (emphasis in original). Further, while the Court should disregard all "[f]actual disputes that are irrelevant or unnecessary, . . . and determine whether there is a genuine issue for trial", *Garnett Rd.,* 2020 WL 6386870, at * 4 (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 – 49 (1986)), summary judgment is appropriate where there is an absence of evidence to support an element of the non-movant's claim, as "there can be 'no genuine issue as to any material fact,'" *Celotex*, 477 U.S. at 322-323, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

**The Policy does not provide coverage under the auto coverage provision.**

Under Oklahoma law, contracts are interpreted using statutory rules of construction. *Trinity Baptist Church v. GuideOne Elite Ins. Co*., 2009 WL 2972502, at *4 (W.D. Okla. Sept. 14, 2009), *citing* 15 O.S. §§ 154.

"The Oklahoma statutory rules of construction establish that: the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity . . . ; a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others . . . ; a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect . . . ; words of a contract are to be given their ordinary and popular meaning . . . ; and a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates . . . ." (internal citations omitted).

A specific term in a contract is determined to be ambiguous only after applying the rules of construction and upon a finding that the term "is reasonably susceptible to at least two different constructions." *Id.*, *quoting Pitco Prod. Co. v. Chaparral Energy, Inc.*, 2003 OK 5, ¶ 14, 63 P.3d 541, 545. If a term is ambiguous, but the contract "is complete in itself, . . . [and] is unambiguous," the intention of the parties if viewed solely from the language of the contract itself. *Pitco*, 63 P.3d at ¶ 14.

As with other contracts under Oklahoma law, "[i]nsurance contracts are ambiguous only if they are susceptible to two constructions." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 1996 OK 28, 912 P.2d 861, 869. However, the Policy will not be reformed to "make a better contract by altering a term for a party's benefit," and courts will not find ambiguity where none exists. *Id.* Thus, as to contract interpretation of insurance policies, "[t]he general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy." *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, 812 P.2d 372, 377.

Despite these rules, however, Oklahoma law additionally recognizes that "an insurance policy should be construed in light of its predominant purpose—to provide coverage to the insured." *Lutheran Benev. Ins. Co. v. Nat'l Catholic Risk Retention Grp., Inc.*, 939 F. Supp. 1506, 1510 (N.D. Okla. 1995), *citing Dayton Hudson Corp. v. Am. Mut. Liab. Ins. Co.*, 1980 OK 193, 621 P.2d 1155, 1158. Ambiguous insurance policy terms will therefore be interpreted "most strongly against the insurer and liberally in favor of the insured." *Id.*; *accord*, *Dodson*, 812 P.2d at 376–77 ("If the insurance policy language is doubtful and susceptible to two constructions, without resort to and following application of the rules of construction, then a *genuine ambiguity exists*, and the contract will be interpreted, consistent with the parties' intentions, most favorably to the insured and against the insurance carrier.") (emphasis in original). To that end, Oklahoma has adopted the "reasonable expectations" doctrine, which allows the court to examine the extent of the coverage the parties "reasonably expected" from the insurance policy. *Max True Plastering*, 912 P.2d at 868-69.

The Great Lakes Policy excludes "bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured." The Policy defines the term "auto" clearly—a motor vehicle. In addition, the police report indicates that the vehicle driven in the incident was a Peterbilt truck, which, per the underwriting file, was not the truck the Great Lakes Policy covers. Under this Policy exclusion, coverage for this auto collision coverage should be excluded.

Employing the reasonable expectations doctrine in this instance allows the Court to examine extrinsic evidence beyond the four-corners of the Great Lakes Policy itself, specifically the application for insurance, the related Lawsuit pleadings, and the police report. *Max True Plastering*, 912 P.2d at 870. The CGL was only intended to insure one 1999 Mack truck with the last 4 of the VIN was 0371. But, moreover, the truck driven by Juarez that was involved in the accident was not the 1999 Mack truck Valle Trucking owned, but an entirely different truck that was owned by ORD Trucking. For these reasons, the Court should determine that coverage does not apply under the auto exclusion.

**The Policy Does Not Provide Coverage for Subcontractors/Independent Contractors**

The Great Lakes Policy explicitly excludes coverage for any work done by any subcontractor or independent contractor. Juarez admitted in his deposition that he was not an employee of Valle Trucking, nor was he aware of who Valle Trucking was. Additionally, there is no evidence, as stated above, that the vehicle involved in the accident was in any way owned or directed by Valle Trucking. However, assuming *arguendo* that Silver Star's position is true, and ORD was a subcontractor/independent contractor for Valle Trucking at the time the accident occurred, coverage would still not be afforded. Under any circumstances, coverage would not be provided.

**Exclusion under the Insured Contract Provision/Exclusion**

Valle Trucking and Silver Star entered the Hauler Agreement for the purposes of hauling and transporting materials. The Hauler Agreement falls under part (f) of the definition of an insured contract:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Trucking is the business of Valle Trucking in which they entered into an agreement with Silver Star, wherein they assumed liability. The Hauler Agreement states:

WHEREAS, SILVER STAR is engaged in the paving, grading, excavation and heavy construction business, and various operations thereto. Silver Star's operations requires the need for the transportation of various materials or equipment (hereinafter referred to as "materials");

WHEREAS, HAULER is an independent contractor engaged in the business of delivering, transporting and/or hauling various types of freight and materials by motor vehicle on behalf of others, pursuant to agreements or contracts with various third parties;

WHEREAS, HAULER has voluntarily solicited from SILVER STAR the opportunity to deliver, transport and/or haul materials for SILVER STAR as an independent contractor and not as an employee of SILVER STAR.

However, the Great Lakes Policy exclusion states insurance does not apply to contracts where the insured assumes liability for damages in a contract unless the contract is an "insured contract" where an insured assumes the tort liability of another person or organization, provided the [damages are] caused, in whole or in part, by the insured or by those acting on the insured's behalf.  In that event, the damage could be covered.  However, here, Valle Trucking did not cause the damage claimed in the lawsuit. And further, since Juarez was not driving for Valle Trucking, but for ORD Trucking, no one acting on behalf of Valle Trucking caused the damage, therefore, the exclusion of contract indemnity type damages applies to preclude coverage.

## **CONCLUSION**

For the reasons stated herein and as demonstrated in the evidentiary materials hereto, no coverage existed under the Great Lakes Policy for the Lawsuit and there are no material facts to demonstrate otherwise. The Court should therefore summarily adjudicate all of Plaintiff's claims in Great Lakes' favor and grant it such other and further relief to which it has shown itself entitled.

Respectfully submitted,

*/s/ Emily E. Allan*
Michael S. Linscott, OBA No. 17266
Emily E Allan, OBA No. 33456
Doerner, Saunders, Daniel
& Anderson, L.L.P.
Two West Second Street, Suite 700
Tulsa, OK  74103-3117
Telephone 918.591.5288
Facsimile 918.925.5288
Email: mlinscott@dsda.com
           eallan@dsda.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF FILING</u>

I hereby certify that on November 21, 2023 I electronically filed the foregoing Motion for Summary Judgement to the Clerk of the U.S. District Court, Western District of Oklahoma, using the electronic case filing system of the Court.

By: <u>/s/ Emily Allan</u>

8134012.1