## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **1. GREAT LAKES INSURANCES SE** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No: 5:22-cv-00702-JD** |
| ) | |
| **2. FREDY VALLE d/b/a VALLE** ) | |
| **TRUCKING,** ) | |
| **3. SILVER STAR CONSTRUCTION** ) | |
| **COMPANY, INC.,** ) | |
| **4. TYLON MACKEY,** ) | |
| **5. ISRAEL JUAREZ,** ) | |
| **6. ORD TRUCKING, INC., and** ) | |
| **7. ZURICH AMERICAM INS. CO.,** ) | |
| ) | |
| **Defendants.** ) | |
| ---------------------------------------------- ) | |
| **8. ZURICH AMERICAN INS. CO.** ) | |
| ) | |
| **Third-Party Plaintiff** ) | |
| ) | |
| **9. BERKSHIRE HATHAWAY** ) | |
| **HOMESTATE INS. CO., and** ) | |
| **10. PROGRESSIVE NORTHERN** ) | |
| **INS. CO.** ) | |
| ) | |
| **Third-Party Defendants.** ) | |

## THIRD-PARTY DEFENDANT PROGRESSIVE NORTHERN INS. CO'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**COMES NOW** Third-Party Defendant Progressive Northern Insurance Company

("Progressive") by and through its attorneys of record of the law firm of Starr, Begin &

King, PLLC, Tulsa, Oklahoma, and hereby moves for an order of partial summary judgment

in its favor, and against Zurich American Insurance Company's third-party claim against

Progressive. In support, Progressive would state and aver as follows:

## INTRODUCTION

In this insurance coverage dispute, Third-Party Plaintiff Zurich American Insurance Company ("Zurich") and Third-Party Defendant Progressive Northern Insurance Company ("Progressive") disagree as to whether Progressive's policy, issued to Fredy Valle d/b/a Valle Trucking, extends liability coverage to Silver Star Construction Company, Inc. ("Silver Star"). Zurich, Silver Star's business automobile insurer, seeks a declaration from this Court that Silver Star is covered as an "additional insured" under Progressive's Policy, and thus Silver Star must be defended and indemnified should the plaintiff in an underlying lawsuit, Tylon Mackey, be granted a judgment against Silver Star.

## STATEMENT OF MATERIAL FACTS

The Incident

1. On February 7, 2019, Valle Trucking entered into a hauling services agreement ("Agreement") with Silver Star Construction Company, Inc. ("Silver Star"). *See* Ex. "1": Hauling Svc. Agreement.

2. Silver Star is in the road construction business. *Id.*

3. Valle Trucking agreed to haul materials for Silver Star as an independent contractor. *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #9.

4. Valle Trucking sub-contracted some of the work assigned to it by Silver Star to a third entity, ORD Trucking, Inc. *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #9.

5. On September 4, 2019, Israel Juarez and another driver, Tylon Mackey, were allegedly involved in an automobile collision at the intersection of Murphy Street and State

2

Highway 51 in the city of Stillwater, Payne County, Oklahoma ("Collision"). *See* Ex. "3":
Juarez Depo., 63:14 – 64:6; Ex. "4": Mackey's 2d Am. Pet.

6.   The Collision allegedly occurred as Mackey, operating a 2012 Harley Davidson
motorcycle, was eastbound on SH-51.  Meanwhile, Juarez, operating a 2001 Peterbilt dump
truck ("Vehicle"), was northbound on Murphy St.  Juarez allegedly failed to yield the right
of way to Mackey.  *See* Ex. "3": Juarez Depo., 63:14 – 64:6; Ex. "4": Mackey's 2d Am. Pet.

7.   At the time of the Collision, Juarez was employed by ORD Trucking.  *See* Ex. "2":
Valle Rsp. to Pl.'s ROGG #8; Ex. "3": Juarez Depo., 11:21-24; Ex. "4": Mackey 2d. Am.
Pet., ¶ 19; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 19.

8.   At the time of the Collision, Juarez was not employed by Valle Trucking.  *See* Ex.
"2": Valle Rsp. to Pl.'s ROGG #8, ROGG #13; Ex. "3": Juarez Depo., 11:21-24; Ex. "4":
Mackey 2d. Am. Pet., ¶ 19; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 19.

9.   At the time of the Collision, the truck Juarez was operating was owned by ORD.  *See*
Ex. "3": Juarez Depo., 13:12-15; Ex. "4": Mackey 2d. Am. Pet., ¶ 31; Ex. "6": ORD Rsp. to
2d Am. Pet., ¶ 31.

10. At the time of the Collision, neither Fredy Valle, Sr., nor any employee of Valle
Trucking was present.  *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #5, 15.

11. At the time of the Collision, Juarez was on a mission for ORD Trucking.  *See* Ex. "4":
Mackey 2d. Am. Pet., ¶ 32-33; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 32-33.

12. Neither Fredy Valle, nor any employee of Valle Trucking supervised any aspect of
Juarez's carrying out of his mission for ORD Trucking.  *See* Ex. "2": Valle Rsp. to Pl.'s

3

ROGGS #9, 12, 13, 14, & 15.

13. When Juarez arrived at the job site, his task was given to him and directed by a supervisor/foreman from Silver Star.  *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #9, 12, 13, 14, & 15; Ex. "3": Juarez Depo., 27:15-21, 36:16 – 38:19, 41:12-17, 43:8 – 44:8, 51:11-20.

The Underlying Action

14. On July 8, 2020, Mackey sued Juarez and ORD Trucking.  *See* Ex. "7": Mackey Pet.

15. He claimed his injuries were caused by Juarez's negligent and/or reckless driving and by ORD's alleged negligence in the hiring, training and supervision of Juarez, and the entrustment of the dump truck to Juarez.  *Id*.

16. Mackey subsequently amended his petition to add Valle Trucking and Silver Star, making the same allegations as he did against ORD.  *See* Ex. "4": Mackey's 2d Am. Pet.

17. Mackey's petition does not include any theory that Silver Star is vicariously liable to the former for Valle's alleged negligence.  *Id*.

18. The lawsuit alleges that Silver Star is *directly* negligent for Mackey's injuries.  *Id*.

The Hauling Agreement

19. Article 3 of the Agreement required Valle to "purchase and maintain" a comprehensive general liability insurance, in the amount of $1,000,000.00.  *Id*.

20. Valle Trucking pledged to indemnify Silver Star against liability for damages which Silver Star might incur arising out of the performance of Valle  Trucking.  The indemnification obligations do not apply where the injury or damage sustained arose directly from Silver Star's own negligence.  *Id*.

The Policy

1.   Progressive Policy #04019061-2 ("Policy") lists Valle Trucking as the named insured.

*See* Ex. "8": Progressive Policy.

2.   The Policy's declarations page does not show Silver Star as a named insured.  *Id*.

3.   Moreover, the Policy does <u>not</u> include a Blanket Addl. Insured Endorsement.  *Id*.

4.   The Vehicle at issue is <u>not</u> listed on the Policy's auto coverage schedule.  *Id*.

5.   The Policy does include an Employer's Non-Ownership Liability Endorsement

6.   The Vehicle was not owned by Valley Trucking's employees, partners, members, or

members of their households.  *See* Ex. "3": Juarez Depo., 13:12-15; Ex. "4": Mackey 2d.

Am. Pet., ¶ 19, 33; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 19, 33.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the undisputed material facts establish that a

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A material fact is one

which may affect the outcome of the suit under the governing law.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).  To dispute a

material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence

must be such that "a reasonable jury could return a verdict" for him.  *Id*.  The facts and

reasonable inferences therefrom must be viewed in the light most favorable to the non-

moving party.  *MacKenzie v. City of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a

cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, a defendant need not disprove a plaintiff's claim, but must only point to "a lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts from which a rational trier of fact could find for him; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. *Adler*, 144 F.3d at 671-72.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)(citations omitted).

## ARGUMENT AND AUTHORITY

I. PROGRESSIVE IS ENTITLED TO SUMMARY JUDGMENT REGARDING ZURICH'S THIRD-PARTY CLAIM

Progressive is entitled to summary judgment regarding Zurich's third-party claim against Progressive because (A) Silver Star is not an "insured" as defined by the Policy and (B) the vehicle Suarez was operating at the time of the collision was not an "insured auto" as defined by the Policy.

A. Silver Star is not an "insured" as defined by the Policy

Zurich claims that Progressive owes Silver Star a defense and indemnity in the

Underlying Action.  The Policy's insuring agreement provides as follows:

> "Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury, property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**."

The Policy states that "you" refers to "the named insured shown on the declarations page."  Silver Star is not listed as a named insured on the Policy's declaration's page and does not claim to be.  The named insured is Fredy N. Valle Sr d/b/a Valle Trucking.

Oklahoma law does not require an entity claiming a contractual right to commercial liability insurance coverage to prove that it is in privity of contract with the insurer.  *JP Energy Marketing v. Commerce and Industry Ins. Co.*, 2018 OK CIV APP 14, 412 P.3d 121. The policy can provide for the addition of insureds, provided coverage is limited to the additional insured's vicarious liability.  Oklahoma public policy does not allow an entity to contract with another for indemnification of its own negligence.  *Id*.

Zurich claims that the terms of the Hauling Service Agreement "which makes Silver Star an additional insured under the Progressive Policy, trigger Progressive's duty to defend [and indemnify] Silver Star as an additional insured under the Progressive Policy."  *See* Dkt. #28, ¶¶ 42, 44.  Progressive offers policyholders blanket additional insured coverage via the Blanket Additional Insured Endorsement (Form 2366), which states as follows:

> "If you pay the fee for this Blanket Additional Insured Endorsement, we agree with you that any person or organization with whom you have executed a written agreement prior to any loss is added as an additional insured with respect to such liability coverage as is afforded by the policy but this

7

*insurance applies to such additional **insured** only as a person or organization liable for **your** operations and then only to the extent of that liability. This endorsement does not apply to acts, omissions, products, work, or operations of the additional **insured**."*

A review of the Policy's declarations page shows that the Policy did not include this coverage. Form 2366 (02/11) is nowhere listed on the Declarations page. Valle did not pay for the Blanket Additional Insured Endorsement (Form 2366), which would have allowed Valle to add a person or organization, such as Silver Star, to the policy as an additional insured by way of written agreement between the named insured and additional insured.

Silver Star may claim that it is nevertheless an "insured" for vicarious liability to Mackey for Valle Trucking's alleged negligence. The Policy states that "*When used in Part I – Liability to Others, **insured** means:*

> *3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I – Liability to Others*

The duty to defend inquiry is based on whether the facts alleged in the underlying complaint can be fairly read to support coverage. Ultimately, the duty to defend is determined by comparing the allegations contained within the four corners of the complaint with the language of the policy.

Under Oklahoma law, an insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage. This is so regardless of the true facts and merits of the underlying case. To determine whether the insurer has a duty to defend, the Court must apply the language of the applicable policy to the facts in the

8

complaint. *JP Energy*, 2018 OK CIV APP 14, ¶ 36.

Here, Mackey claims that Silver Star is *directly* liable for the former's alleged damages, not *vicariously*. Mackey asserts theories of recovery against ORD, Valle, and Silver Star, for (I) negligence/negligence per se; (II) negligent entrustment; and (III) negligent hiring, training, screening & supervision. Nowhere in his underlying petition does Mackey expressly allege that Silver Star is vicariously liable for Valle Trucking alleged negligence in any of the above-referenced respects. Accordingly, Silver Star has no duty to defend or indemnify Silver Star.

> B. <u>The vehicle Suarez was operating at the time of the collision was not an "insured auto" as defined by the Progressive Policy</u>

The Progressive Policy's insuring agreement says:

> *"Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury, property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**."*

The Policy defines an "insured auto" as follows:

> a. Any **auto** specifically described on the **declarations page**; or
> b. An additional **auto** for Part I - Liability To Others and/or Part II – Damage To Your Auto on the date **you** become the owner if:
>    (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
>    (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
>    (iii)   no other insurance policy provides coverage for that **auto**; and
>    (iv)   **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

> *If **you** add any coverage, increase **your** limits or make any other changes*

9

to this policy during the 30 day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II - Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:

(i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or

(ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

c. Any replacement **auto** on the date **you** become the owner if:

(i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

(ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30 day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits or make any other changes to **your** policy during this 30 day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes.

The vehicle Juarez was driving at the time of the collision is not listed on the Policy declarations page, nor was it owned by Valle Trucking, or a replacement vehicle as defined by the Policy, thus, is not an "insured auto" as defined by the policy.

Valle Trucking did purchase coverage under the Employer's Non-Ownership Liability Endorsement ("Endorsement"). The Endorsement provides that the Policy definition of an "insured auto" is modified to include a "non-owned auto." A "non-owned auto" means…

> "...an **auto** that **you** do not own, lease, hire, rent, or borrow, and that is used in connection with **your** business. This includes **autos** owned by **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business or **your** personal affairs."

The Endorsement does not apply, under the circumstances, because the Vehicle was not being used in connection with Valle Trucking's business. The Court in *Union Standard Ins. Co. v. Hobbs Rental Corp.*., 566 F.3d 950 (10th Cir., 2009) examined an endorsement containing virtually the same language. As with the Policy at issue, the policy in *Union Standard* did not formally define the "in connection with" language. The Court noted, however, that the Endorsement itself "supplies the most obvious example of coverage in its second sentence: privately-owned vehicles driven by [named insured's] employees (or members of their household) in the course of [named insured-related] business or [named insured-related] personal affairs." *Id*. at 953. The Court explained that:

> "This second sentence indicates that the provision is intended to cover a more narrow and foreseeable set of circumstances involving HRC employees or members of their household. For example, an employee or family member's vehicle driven to a parts store on company business, or used to haul equipment for HRC, would be covered. Viewing the "in connection with" language in

11

the context of the entire provision thus suggests that <u>instead of covering all autos somehow related to HRC's business, the policy is intended to apply to HRC-affiliated persons operating privately-owned vehicles while performing company-related work</u>."

*Id*. (underscore added)(citing *Bamber v. Lumbermens Mut. Cas. Co.*, 451 Pa.Super. 548, 680 A.2d 901, 903 (1996) (an employee's personal vehicle is a non-owned auto used "in connection with [insured's] business" when used in the course and scope of employee's employment with the insured).

The Court declined to expand coverage to independent contractors who do business with the named insured for three reasons: (1) the named insured exercised no control over the non-owned auto; (2) a reasonable insured would not view the Endorsement as extending coverage to independent contractors over which the named insured did not exercise control; and (3) non-expansion is in accord with the common purpose of non-owned policy provisions. Applying the *Union* factors, the Court should decline to expand coverage to Silver Star under the circumstances of this case.

### 1. Valle Trucking exercised no control over the non-owned auto

At the time of the Collision, Juarez was undisputedly employed by ORD Trucking; the truck was undisputedly owned by ORD Trucking as well. Valle Trucking exercised no control over Juarez in Juarez's operation of the Vehicle at issue. Valle Trucking did not operate the Vehicle – only Juarez did. The accident occurred without direct Valle Trucking's supervision. At the time of the Collision, neither Fredy Valle, Sr., nor any employee of Valle Trucking was present. Juarez was undisputedly driving the Vehicle in the course and

scope of his employment with ORD.  Neither Fredy Valle, nor any employee of Valle

Trucking supervised any aspect of Juarez's carrying out of his mission for ORD Trucking.

When Juarez arrived at the job site, his task was given to him and directed by a

supervisor/foreman from Silver Star.

> Q: Okay. So let me make sure I'm understanding this picture.  So you arrive to work.
>  And at some point an employee from Silver Star would tell everyone on the job
>  site, hey, we're about to start doing the loads?
>
> A.  Where to go, what to do.

*See* Ex. "3": Juarez Depo., 41:12-16.

> Q: So, as far as my understanding, just to wrap this up for my understanding, Silver
>  Star was in charge of the dump trucks on the site?
>
> A: Yes
>
> Q: Okay.  And they were in charge of telling the dump trucks when to get to the job
>  site?
>
> A: (Witness nods head)
>
> Q: Is that a yes?
>
> A: Yes.

*See* Ex. "3": Juarez Depo., 43:8-15.

> Q: Okay.  And then Silver Star would tell you how to work?
>
> A: Yes.

*See* Ex. "3": Juarez Depo., 44:6-8.

In sum, the record shows that Valle Trucking exercised no control over the Vehicle.

Juarez drove it, in the course and scope of his employment with ORD, following the orders

of Silver Star supervisors regarding when to get to the job site, when to start working, and

how to work – or, as Juarez put it, "where to go, what to do." The Vehicle at issue is not a

non-owned auto per the Endorsement. *See, e.g., Adams v. Thomason*, 753 So.2d 416, 420-21

(La. Ct.App.2000) (finding that a vehicle is not a non-owned auto "used in connection with"

an insured's business when the vehicle's operator was not the insured's employee and the

insured lacked control over the vehicle).

### 2. A reasonable insured would not view the Endorsement as extending coverage to independent contractors over which the named insured did not exercise control

In *Union Standard*, the Court noted extending this policy language to independent

contractors would conflict with New Mexico's "reasonable insured" standard. This standard

asks what understanding a reasonably intelligent, non-lawyer lay person might glean from

the policy, in light of the usual meaning of the words and the circumstances leading to

purchase of the policy. *Id.* at 954 (citing *Berry v. Fed. Kemper Life Assurance Co.*, 136

N.M. 454, 99 P.3d 1166, 1183 (2004). Oklahoma applies the same standard. *See Andres v.*

*Okla. Farm Bureau Mut. Ins. Co.*. 2009 OK CIV APP 97, ¶ 13, 227 P.2d 1102 ("We do not

believe such a distinction can be drawn by the policy language, applied in practice, or

interpreted by any reasonable insured person…"); *Spears v. Shelter Mut. Ins. Co.*, 2003 OK

66, ¶ 11, 73 P.3d 865 ("We find the exclusionary language to be clear, straightforward and

understandable from the point of view of an objectively reasonable insured.")

The Court determined that a reasonable insured would not view the Endorsement as

extending coverage to independent contractors over which the named insured did not

exercise control.  "Such a broad interpretation of the provision would extend coverage to all businesses [the named insured] hired to transport its equipment.  In our view, no reasonable insured party would understand non-owned policy language to apply to such circumstances." *Id*. at 954.  Such a reading would result in a strained policy interpretation, which Oklahoma law, like New Mexico law, prohibits. *Haworth v. Jantzen*, 2006 OK 35, ¶ 13, 172 P.3d 193.

### 3. Non-expansion is in accord with the common purpose of non-owned policy provisions

In *Union Standard*, the Court noted that its interpretation "accords with the common purpose of non-owned policy provisions." *Union Standard*, 566 F.3d at 954.  Such provisions "provide employers with protection from liability based on the doctrine of respondeat superior arising out of an employee's commission of a tort while using their own personal vehicles in the employer's business." *Id*. (citing Lee R. Russ & Thomas F. Segalla, 8A Couch on Insurance § 118.41 (3d ed.2008).  While the use of personal vehicles by employees acting on the company's behalf might be covered, independent contractors are not."  Accordingly, the Court should find that the Endorsement does not provide coverage for vehicles under the operation and control of third-party independent contractors.

## <u>CONCLUSION</u>

Progressive is entitled to summary judgment regarding Zurich's third-party claim because Silver Star is not an "insured" as defined by the Policy and the vehicle Suarez was operating at the time of the collision was not an "insured auto" as defined by the Policy.

**WHEREFORE**, premises considered, Third-Party Defendant Progressive Northern Insurance Company respectfully requests an order of partial summary judgment in its favor, and against Zurich American Insurance Company, as to Zurich's third-party claim against Progressive, with such other and further relief the Court deems just and equitable.

Respectfully submitted,

**STARR, BEGIN, & KING, PLLC**

s/Bradley E. Bowlby
Bradley E. Bowlby, OBA #22847
1800 S. Baltimore Ave., Ste 550
Tulsa, OK 74119
Tele:   (918) 872-0374
Fax:    (918) 592-0381
Email: brad.bowlby@tulsalawyer.org
***Attorney for Def. Progressive Northern Ins. Co.***

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2023, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

s/Bradley E. Bowlby