**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. GREAT LAKES INSURANCE SE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CIV-22-00702-JD |
| vs. | ) | Judge Jodi W. Dishman |
| | ) | |
| 2. FREDY VALLE d/b/a VALLE TRUCKING; | ) | |
| 3. SILVER STAR CONSTRUCTION COMPANY, INC.; | ) | |
| 4. TYLON MACKEY; | ) | |
| 5. ISRAEL JUAREZ; | ) | |
| 6. ORD TRUCKING, INC. | ) | |
| 7. ZURICH AMERICAN INS. CO., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| 8. ZURICH AMERICAN INS. CO., | ) | |
| | ) | |
| Defendant/Third Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| 9. PROGRESSIVE NORTHERN INS. CO., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**DEFENDANT/THIRD-PARTY PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY'S RESPONSE TO PROGRESSIVE NORTHERN INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

## **TABLE OF CONTENTS**

ZAIC's Response to Progressive's Statement of Material Facts ......................................................1

ZAIC's Statement of Additional Material Facts Which Preclude Summary Judgment in Favor of Progressive.................................................................................................................................10

Arguments and Authorities................................................................................................15

    I.      Progressive has a duty to defend and indemnify Silver Star as to the underlying suit............................................................................................. 15

          A.  The Progressive Policy's non-owned autos endorsement provides coverage to Silver Star...............................................................................................15

          B.  Silver Star and Juarez are insureds under the Progressive Policy .........................22

          C.  Silver Star is an insured under the Progressive Policy pursuant to the lease of ORD's truck by Valle................................................................................. 25

          D.  Progressive's Form F Endorsement (Form MC1632) provides coverage for any auto used in Valle's business ...................................................................29

# **TABLE OF AUTHORITIES**

**Cases**

*Alfalfa Elec. Coop., Inc.  v Mid-Continent Cas. Co.*, 2015 OK CIV APP 53, 350 P.3d 1276, 1281 ............................................................................................................................. 27

*BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005) ...... 17, 22

*Brazan v. Washington*, 194 So.3d 1274 (La. Ct. App. 2016) ............................................ 19, 22

*Chambers v. Walker*, 1982 OK 128, 653 P.2d 931, 933-34 .................................................. 26

*Dodson v. St. Paul. Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991) ......................................... 16, 17

*Jordan v. Cates*, 935 P.2d 289 (Okla. 1997) ........................................................................ 23

*RPM Freight Systems, LLC v. Wesco Insurance Company*, 656 F. Supp.3d 721 (E.D. Mich. 2023) ................................................................................................................ 17, 21

*Union Standard Ins. Co. v. Hobbs Rental Corp.*, 566 F.3d 950 (10th Cir. 2009) ...................... 15

**Statutes and Regulations**

Oklahoma Administrative Code § 165:30-3-11 ......................................................... 26, 27

OKLA. STAT. tit. 47, § 230.29 .................................................................................................. 25

OKLA. STAT. tit. 47, § 230.29(A)(4) ......................................................................................... 26

OKLA. STAT. tit. 47, § 230.29(B) and (C) ............................................................................ 26, 27

OKLA. STAT. tit. 47, § 230.30 ................................................................................................ 29, 30

OKLA. STAT. tit. 47, §§ 231.1, *et seq.* .................................................................................... 26

OKLA. STAT. tit. 47, § 230.29(C)(4) ......................................................................................... 27

**Secondary Materials**

Black's Law Dictionary (11th ed. 2019) ................................................................................ 23

Defendant/Third-Party Plaintiff, Zurich American Insurance Company ("**ZAIC**") respectfully submits its Response to Third-Party Defendant Progressive Northern Insurance Company's ("**Progressive**") Motion for Partial Summary Judgment ("**MSJ**") (Doc. 94). For the reasons set forth herein, Progressive's MSJ should be denied.

<u>**ZAIC's Response to Progressive's Statement of Material Facts**</u>

1. Admitted.

2. Admitted. *See* Doc. 92-2, at 1.[1]

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted. *See* Doc. 1-4, Official Oklahoma Traffic Collision Report.

7. Admitted in part, denied in part. ZAIC admits Israel Juarez ("**Juarez**") was employed by ORD Trucking, Inc. ("**ORD**") at the time of the subject collision. However, ZAIC denies any implication that Juarez, as an agent of ORD Trucking ("**ORD**"), was not performing services for Valle pursuant to the HSA. *See* factual allegations and evidentiary materials cited in ZAIC's Statement of Additional Material Facts Which Preclude Summary Judgment in Favor of Progressive, hereafter "**SOAF**") at SOAF Nos. 2 (ORD had been hired by Valle and was working for Valle at the time of the Accident); 9 (Juarez testified it was his understanding at the time of the subject collision that ORD was working for Valle); 10 (Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA); 13

---

[1] For ease of reference, page numbers of exhibits refer to the Court's exhibit page number, reflected in the Court's filing stamp at the top of the page.

(for loads transported by an ORD vehicle and driver, "ORD" appears in the "LEASE" field of the Valle field ticket, evidencing Valle's lease of ORD vehicles to perform services to Silver Star under the HSA).

8.   Admitted in part, denied in part. ZAIC admits Juarez was not employed by Valle at the time of the subject collision.  However, ZAIC denies any implication that Juarez, as an agent of ORD, was not performing services for Valle pursuant to the HSA.  *See* factual allegations and evidentiary materials cited in SOAF Nos. 2 (ORD had been hired by Valle and was working for Valle at the time of the Accident); 9 (Juarez testified it was his understanding at the time of the subject collision that ORD was working for Valle); 10 (Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA); 13 (for loads transported by an ORD vehicle and driver, "ORD" appears in the "LEASE" field of the Valle field ticket, evidencing Valle's lease of ORD vehicles to perform services to Silver Star under the HSA).

9.   Admitted.

10. Admitted in part, denied in part. ZAIC admits neither Fredy Valle, Sr. nor any "employee" of Valle was present at the scene of the subject collision.  However, ZAIC denies any implication that Juarez, as an agent of ORD, was not performing services for Valle pursuant to the HSA.  *See* factual allegations and evidentiary materials cited in ZAIC's SOAF Nos. 2 (ORD had been hired by Valle and was working for Valle at the time of the Accident); 9 (Juarez testified it was his understanding at the time of the subject collision that ORD was working for Valle); 10 (Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA); 13 (for loads transported by an ORD vehicle and driver, "ORD"

appears in the "LEASE" field of the Valle field ticket, evidencing Valle's lease of ORD vehicles to perform services to Silver Star under the HSA).   Further, the evidence cited by Progressive indicates Valle sent five trucks to the job site the day of the subject collision (including the ORD truck driven by Juarez) to perform tasks given by a Silver Star foreman for purposes of fulfilling Valle's obligations under the HSA:

> Valle Trucking was an independent contractor, and has been requested by Silver Star Construction to have five trucks on the job site that morning, after which each driver would receive his specified task given by a Silver Star foreman.  So no one from Valle Trucking was "working for" anyone with Silver Star that day. Without waiver, the Valle Trucking employee who was on the job site that day was Ruben Simental, who was not involved in the subject accident.

*See* Doc. 94-2 at Answer to Interrogatory No. 15.

11. Admitted in part, denied in part. ZAIC admits at the time of the subject collision, Juarez was acting in the course and scope of his employment with ORD.  *See* Doc. 92-6 at Response to Request for Admission No. 2.  ZAIC denies any implication that Juarez was not also on a mission for Valle at the time of the subject collision.  *See* factual allegations and evidentiary materials cited in SOAF Nos. 2, 6 (ORD gave Juarez a job);  2 (ORD had been hired by Valle and was working for Valle at the time of the subject collision); 3 (ORD was paid by Valle);  9 (Juarez testified it was his understanding at the time of the subject collision that ORD was working for Valle); 10 (Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA).

12. Denied.  To the extent Juarez was working for ORD, who had contracted with Valle for purposes of fulfilling Valle's obligations to Silver Star pursuant to the HSA, Juarez, as an agent of

ORD, was not divorced from control or oversight by Valle. *See* Doc. 94-2, at Answer to Interrogatory No. 9, which states:

> As to the project in question, Silver Star Construction contracted with Valle Trucking for five trucks to be present at the job site on the day of the incident. ***Valle Trucking thereafter contracted with ORD and three other contractors to be present at the site with trucks***. When all drivers and trucks arrived at the job site, their tasks were then given to them and directed by a supervisor/foreman from Silver Star. Silver Star paid Valle Trucking for the project, and then Valle paid the other contracting companies according to those contracts.

(Emphasis added). *See also*, factual allegations and evidentiary materials cited in SOAF Nos. 2 (ORD had been hired by Valle and was working for Valle at the time of the subject collision); 9 (Juarez testified it was his understanding at the time of the subject collision that ORD was working for Valle); 10 (Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA).

    13. Admitted.

    14. Admitted.

    15. Admitted.

    16. Admitted.

    17. Denied. The language of the Second Amended Petition cannot be interpreted so narrowly as Progressive suggests. The Second Amended Petition in *Tylon Mackey v. Israel Juarez, ORD Trucking, Inc., Fredy N Valle Sr. d/b/a Valle Trucking, and Silver Star Construction Company, Inc.*, Payne County, Oklahoma District Court Case No. CJ-2020-233 ("**Underlying Suit**") states, *inter alia*, as follows:

> 7. This is an action by Plaintiff to recover actual and punitive damages for the negligence, gross negligence and reckless disregard for the safety of others, including Plaintiff, by all Defendants. Such conduct resulted in Defendants' vehicle striking the Plaintiff. . . .
> . . .

19. At the same time, Defendant Juarez, who was employed by ORD Trucking, Valle Trucking and Silver Star, was operating a vehicle owned by ORD Trucking, traveling northbound on Murphy Street near the city of Stillwater.

. . .

23. ORD Trucking, Valle Trucking, and Silver Star knew or should have known the motor vehicle operated by Defendant Juarez was unsafe and improperly inspected, repaired and maintained.

24. ORD Trucking, Valle Trucking, and Silver Star knew or should have known of Defendant Juarez's history of reckless, careless, and intoxicated driving.

. . .

29. Defendant Juarez'sf, ORD Trucking's, Valle Trucking's, and Silver Star's negligence and negligence per se were a direct cause of the collision and Plaintiff's resulting injuries and damages.

. . .

31. At the time of the collision, the company vehicle being driven by Defendant Juarez was owned by Defendant ORD Trucking.

. . .

33. At the time of the collision, Defendant Juarez was driving the company vehicle while in the course and scope of his employment with ORD Trucking, Valle Trucking, and Silver Star.

. . .

41. Defendants ORD Trucking, Valle Trucking, and Silver Star were negligent in its hiring, training, screening and/or supervision of Defendant Juarez.

. . .

43. That pursuant to the doctrine of Respondeat Superior, ORD Trucking, Valle Trucking, and Silver Star are strictly liable for the negligence of Defendant Juarez. . . .

*See* Doc. 94-4, at ¶¶ 7, 19, 23-24, 29, 31, 33, 41 and 43.  As set forth above, although the Plaintiff

appears to jointly assert claims against all Defendants, Mackey's Second Amended Petition

recognizes that the vehicle operated by Juarez at the time of the subject accident was owned by

ORD.  This indicates Mackey is unsure about the relationship between Juarez and each of the

Defendants (or if any relationship even exists), and his Second Amended Petition is drafted in such

a way as to leave the door open as to his claims against the respective Defendants until such time

as he could determine who Juarez was actually working for on the date of the accident and what

relationship any of the Defendants may have had with Juarez.  Mackey thus makes allegations

lumping all Defendants in as a group for purposes of notice pleading, with Mackey to determine which claims may stand as to each Defendant as discovery progresses.[2]  Indeed, the discovery in this case and in the underlying action demonstrates that Juarez was working directly for ORD, and that ORD was hired by Valle to perform Valle's obligations to Silver Star under the HSA.  *See* SOAF Nos. 2, 3, 6, 9, and 10 and evidentiary materials cited therein.  Given these facts discovered since Mackey's filing of his Second Amended Petition, it cannot be said that Mackey's Second Amended Petition excludes any theory of vicarious liability whereby Silver Star may be held liable for Valle's alleged negligence in hiring ORD and Juarez to perform Valle's obligations owed to Silver Star pursuant to the HSA.

18. ZAIC admits Mackey's Second Amended Petition alleges Silver Star may be liable for Mackey's injuries. However, ZAIC denies any implication that the allegations of the Second Amended Petition are so narrowly framed as to exclude any theory of vicarious liability whereby Silver Star may be held liable to Valle's alleged negligence in hiring ORD and Juarez to perform Valle's obligations owed to Silver Star pursuant to the HSA. *See* factual allegations and supporting evidentiary material cited in ZAIC's response to Paragraph 17 of Progressive's Statement of

---

[2] As stated in *Jackson v. Oklahoma ex rel. Oklahoma State Bd. of Regents, Agr. and Mechanical Colleges*, 2007 WL 4208723 (W.D. Okla. Nov. 26, 2007),

> [Rule 8(a)(2)] provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

*Id.* at *1-*2 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

Material Facts, *supra*. *See* factual allegations and evidentiary material cited in SOAF Nos. 2, 3, 6, 9, and 10.

19. Admitted in part, denied in part.  ZAIC admits Paragraph 3 of the HSA required Valle to purchase and maintain a commercial general liability insurance in an amount not less than $1,000,000.00.  *See* Doc. 94-1, at Paragraph 3, pages 3-4.  ZAIC denies that Paragraph 19 of Progressive's Statement of Material Facts accurately sets forth all of the insurance and indemnity obligations owed by Valle to Silver Star pursuant to the HSA.  *See* Doc. 94-1 at Paragraphs 2 and 3, pages 3-4.  Further, in compliance with Okla. Stat. tit. 47, § 230.30, Progressive's Policy contains a Form MC1632, which is a Form F Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement.  *See* Doc. 94-8, at page 5.  Valle obtained a license as an Oklahoma intrastate motor carrier by filing the Progressive Policy with the Oklahoma Corporation Commission Transportation Division.  *See* Doc. 92-10, at page 34, Form E, Uniform Motor Carrier Bodily Injury and Property Damage Liability Certifice of Insurance; and SOAF No. 14.

20. Admitted in part, denied in part.  ZAIC admits Valle pledged in the HSA to indemnify Silver Star against liability for damages which Silver Star might incur arising out of the performance of Valle, but denies that Progressive has accurately stated Valle's obligation.  Under the HSA, Valle agreed to do the following:

> 2.  <u>INDEMNITY:</u>  . . .  ***to hold harmless and unconditionally indemnity SILVER STAR against any and all liability for costs, expenses, claims and damages, including attorney fees and all other costs of defense, which SILVER STAR may at any time suffer or incur, or become liable for, by reason of any accidents, damages or injuries sustained either to persons or property, including but not limited to employees or agents of Silver Star and/or Hauler, and/or any third parties, arising out of the services performed by***

> ***HAULER pursuant to this Agreement, regardless of whether such injury or damage
> was caused in whole or in part, to any degree, by HAULER.***

*See* Doc. 94-1, at Paragraph 2, page 3 (emphasis added). ZAIC denies Progressive's assertion that

the "indemnification obligations do not apply where the injury or damage sustained arose directly

from Silver Star's own negligence," as Progressive is attempting to recast the facts discovered in

this action and in the underlying action to fit within an overly-narrow interpretation of the

allegations of Mackey's Second Amended Petition which is contrary to the liberal notice pleading

regime. *See* factual allegations and evidentiary materials cited in ZAIC's Response to

Progressive's Statement of Material Fact Nos. 17-18, *supra*. ZAIC also denies any implication

that the injury or damage sustained by Mackey arose directly from Silver Star's own negligence.

The discovery in this case and in the underlying action demonstrates that Juarez was working

directly for ORD, and that ORD was hired by Valle to perform Valle's obligations to Silver Star

under the HSA. *See* SOAF Nos. 2, 3, 6, 9, and 10 and evidentiary materials cited therein.

21. (Numbered as 1 under the heading "The Policy" in Progressive's MSJ). Denied.

Progressive's Policy lists "FREDY N VALLE SR VALLE TRUCKING" as the named insured.

*See* Doc. 94-8 at page 3.

22. (Numbered as 2 under the heading "The Policy" in Progressive's MSJ). Admitted,

however, ZAIC denies any implication that Valle was not required to list Silver Star as an

additional insured on the Progressive Policy pursuant to the terms of the HSA, which requires

Valle to name Silver Star as an additional insured on Valle's policy or policies of insurance. *See*

Doc. 94-1, at Paragraph 1(E), page 3 (requiring Valle to maintain a policy or policies of insurance

coverage, as set forth more particularly herein, which provide contractual liability coverage and

which shall also name SILVER STAR as an additional insured on the policy or policies");
Paragraph 3(C), page 4 ("HAULER [Valle] agrees to name SILVER STAR as an additional
insured under its commercial general liability and automobile policies referenced herein, on a
primary and non-contributory basis, without restriction as to fault or liability.")

23. (Numbered as 3 under the heading "The Policy" in Progressive's MSJ). Admitted in part,
denied in part. The Progressive Policy attached as Doc. 94-8 sets forth a Blanket Additional
Insured Endorsement (Form 2366) on page 39 of the Exhibit. However, the Progressive Policy's
Declarations Page (page 3 of the Exhibit) does not list Form 2366 as a form which modifies the
policy contract. *See* Doc. 94-8 at page 3. It is difficult to determine what premiums have been
charged for coverages, as it appears Progressive has redacted some information from the
Declarations Page with white-out redaction, such as premium and deductible amounts.[3] No
reference to the Blanket Additional Insured Endorsement is made on the Progressive Declarations
Page under "Outline of Coverage." *See* Doc. 94-8, at page 3.

24. (Numbered as 4 under the heading "The Policy" in Progressive's MSJ). ZAIC admits the
vehicle operated by Juarez that was involved in the subject collision is not listed on Progressive's
Auto coverage schedule. *See* Doc. 94-8 at page 4.

25. (Numbered as 5 under the heading "The Policy" in Progressive's MSJ). Admitted,
although Progressive has failed to cite supporting evidentiary material for this allegation. *See*
Progressive Policy Declarations Page, listing "Employer Non-Owned Auto Liability To Others
Bodily Injury and Property Damage Liability" with a "$1,000,000 combined single limit," Doc.

---

[3] Although ZAIC has repeatedly requested that Progressive provide an unredacted copy of the its
Policy, to date Progressive has not provided one.

94-8 at page 3. *See also*, Doc. 92-13, Progressive's Responses to ZAIC's Discovery Requests, at Answers to Request for Admission Nos. 1, 2, page 2 (admitting Valle requested from Progressive coverage pursuant to the Form 1890 Employer's Non-Ownership Liability Endorsement and that Valle paid a premium therefor).[4]

26. (Numbered as 6 under the heading "The Policy" in Progressive's MSJ). ZAIC admits the vehicle operated by Juarez at the time of the subject collision was not owned by Valle. ZAIC denies any implication that this relieves Valle of any liability to Mackey arising out of the collision, as the discovery in this case and in the underlying action demonstrates that Juarez was working directly for ORD, and that ORD was hired by Valle to perform Valle's obligations to Silver Star under the HSA. *See* SOAF Nos. 2, 3, 6, 9, and 10 and evidentiary materials cited therein. Thus, the vehicle operated by Juarez was being used in connection with Valle's business for purposes of affording coverage to Valle pursuant to the Form 1890 Employer's Non-Ownership Liability Endorsement for which Valle paid a premium.

### ZAIC's Statement of Additional Material Facts Which Preclude Summary Judgment in Favor of Progressive

1.   Under the HSA, Valle agreed to do the following:

A.   *Maintain the exclusive possession, control and use of all the equipment that may be required to fulfill the requirements of this Agreement*.
. . .
E.   *Maintain a policy or policies of insurance coverage, as set forth more particularly herein, which provide contractual liability coverage and which shall also name SILVER STAR as an additional insured on the policy or policies*.

---

[4] As stated ZAIC's Response to Progressive's Statement of Material Fact Paragraph No. 23, it appears Progressive has redacted from the Declarations Page the premium charged for the referenced coverage.

2.      <u>INDEMNITY:</u> . . . ***to hold harmless and unconditionally indemnity SILVER STAR against any and all liability for costs, expenses, claims and damages, including attorney fees and all other costs of defense, which SILVER STAR may at any time suffer or incur, or become liable for, by reason of any accidents, damages or injuries sustained either to persons or property, including but not limited to employees or agents of Silver Star and/or Hauler, and/or any third parties, arising out of the services performed by HAULER pursuant to this Agreement, regardless of whether such injury or damage was caused in whole or in part, to any degree, by HAULER***. It is the express intent of the parties to this Agreement that the indemnity obligations described herein are for the benefit of SILVER STAR unless the injury or damage sustained arose directly from SILVER STAR's negligence. . . .

3.   INSURANCE:

A. . . .  to purchase and maintain a commercial general liability insurance policy or policies, providing coverage for damage to both property and injury to persons, expressly insuring HAULER'S indemnity obligations above, in an amount not less than One Million Dollars ($1,000,000.00) for each occurrence, and Two Million Dollars ($2,000,000) in the aggregate. . . .

B. . . . to purchase an applicable commercial motor vehicle insurance policy, providing coverage for both damage to property and injury to persons, expressly insuring HAULER'S indemnity obligations referenced above, in an amount not less than One Million Dollars ($1,000,000.00) combined single limit.

C. . . . ***to name SILVER STAR as an additional insured under its commercial general liability and automobile policies referenced herein, on a primary and non-contributory basis, without restriction as to fault or liability. HAULER agrees to furnish SILVER STAR with Certificates of Insurance identifying each carrier and policy, evidencing HAULER'S compliance with the obligations as set forth in this Agreement,*** . . . HAULER further agrees that the insurance provided to SILVER STAR as set forth in the Agreement shall not operate to preclude, circumvent or nullify any obligation assumed by it in paragraph 2 above, to indemnify SILVER STAR for any loss or damage sustained to any person or property. . . .

*See* Doc. 94-1 (emphasis added). *See also,* Doc. 92-3, Deposition Transcript of Fredy Valle,

October 5, 2023, at 26:17-27:5 (Valle acknowledged entering into the HSA).

2.  Jesus Ordones ("**Ordones**"), the owner of ORD, testified that ORD had been hired by

Valle and was working for Valle at the time of the Accident. *See* Doc. 92-5, Deposition Transcript

of Jesus Ordones, July 20, 2023, at 26:12-28:5.

11

3.   Ordones testified that ORD was paid by Valle.  *See* Doc. 92-5, at 27:21-28:3.  *See also,* Doc. 92-3, at 17:21-18:3 (Silver Star paid Valle by check, and then Valle paid its contractors).

4.   Ordones testified that Silver Star did not enter into a contract with ORD, *see* Doc. 92-5, at 59:22-60:3, the agreement was between Silver Star and Valle. *Id*. at 60:11-18.

5.   Ordones testified it was his decision to put Juarez in one of his trucks to provide to Valle. *See* Doc. 92-5, at 60:22-61:1.  *See also*, Doc. 92-6, ORD's Responses to Plaintiff's Requests for Admission in the Underlying Suit, at Request No. 2 (admitting Juarez was acting in the course and scope of his employment with ORD at the time of the Accident).

6.   Juarez testified at his deposition that ORD gave him a job.  *See* Doc. 92-7, Deposition Transcript of Israel Juarez, July 29, 2021, at 13:25-14:2.

7.   At the time of the Accident, Juarez was operating a truck owned by ORD.  *See* Doc. 92-8*,* Juarez's Responses to Mackey's Request for Admission No. 2; Doc. 92-6, ORD's Responses to Mackey's Request for Admission No. 1.

8.   Juarez was acting in the course and scope of his employment with ORD at the time of the Accident.  *See* Doc. 92-6, ORD's Responses to Mackey's Request for Admission No. 2.

9.   Juarez testified it was his understanding at the time of the Accident that ORD was working for Valle.  *See* Doc. 92-7, at 33:20-23.

10. Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA. *See* Doc. 92-3, at 34:16-20.

11. Juarez testified he was paid for his work by ORD.  *See* Doc. 92-7, at 39:14-18.

12. Valle provides a pre-numbered "field ticket" to each driver on which to document important load details.  Some of the fields filled out by driver are "LEASE," "TRUCK #," "date,"

"driver name," "job #," start and end times, total hours worked, "# OF LOADS," "RATE," "TERMS," and "material type." *See* Doc. 92-9, Valle Trucking Field Tickets. *See also*, Doc. 92-3, Deposition Transcript of Fredy Valle, at 33:1-34:21.

13. For loads transported by an ORD vehicle and driver, "ORD" appears in the "LEASE" field of the Valle field ticket. *See* Doc. 92-9, at pages 4, 5, and 12.

14. Valle obtained a license as an Oklahoma intrastate motor carrier by filing the Progressive Policy with the Oklahoma Corporation Commission Transportation Division. *See* Doc. 92-10 at page 34, Form E, Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance.

15. The Progressive Policy includes a Form F, Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, which reflects a Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed in Oklahoma. *See* Doc. 92-11, at Form F, page 4.

16. The Progressive Policy defines an "insured contract" as "That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your** employees or agents; . . . ." *See* Doc. 94-8, at pages 3-4 (emphasis in original).

17. The Progressive Policy states in part as follows:

> Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. . . .

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I.  **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

*See* Doc. 94-8, at Part I, page 14 (emphasis in original).

18. Part I-Liability to Others contains the following additional definitions:

A.  When used in Part I-Liability To Others, **insured** means:
1. **You** with respect to an insured auto.
. . .
4.   Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I-Liability To Others.
. . .
*If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.*

*See* Doc. 94-8, at Part I, page 14 (bold emphasis in original, italic emphasis added).

19. The Progressive Policy contains certain exclusions, including the following:

**5.        Contractual**
Any liability assumed by an **insured** under any contract or agreement, *unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage***.

*See* Doc. 94-8, at Exclusions, page 17 (bold emphasis in original, italic emphasis added).

20. Valle    paid    premiums    for    Progressive's    Employer's    Non-Ownership    Liability

Endorsement, which states in part as follows:

**ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT**

If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

14

*"**Non-owned auto**" means an **auto** that **you** do not own*, lease, hire, rent, or borrow, *and that is used in connection with **your** business*. This includes **autos** owned by **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business or **your** personal affairs.

## CHANGES TO PART I – LIABILITY TO OTHERS

*The definition of an **insured auto** is modified to include a **non-owned auto***.  The definition of **insured** does not include the owner of a **non-owned auto**. . . .

*See* Doc. 94-8, at Employer's Non-Ownership Liability Endorsement, page 36-37 (bold emphasis in original, italic/underlined emphasis added); and Doc. 92-13, Progressive's Response to ZAIC's Request for Admission No. 10.

21. Pursuant to OKLA. STAT. tit. 47, § 230.30, Progressive filed FORM E UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE with the Oklahoma Corporation Commission Transportation Division on December 5, 2019, certifying Progressive Northern Insurance Company provided Valle a policy of insurance effective from July 12, 2019 12:01 AM standard time. *See* Doc. 92-10, Form E, at page 34.

## Arguments and Authorities

**I.  Progressive has a duty to defend and indemnify Silver Star as to the Underlying Suit.**

**A. The Progressive Policy's non-owned auto endorsement provides coverage to Silver Star.**

Progressive argues against coverage for Silver Star under Progressive's non-owned autos endorsement, alleging that Juarez's operation of ORD's truck was not "in connection" with Valle's business.  Progressive relies on *Union Standard Ins. Co. v. Hobbs Rental Corp.*, 566 F.3d 950 (10th Cir. 2009).  *Union Standard* is a 2009 Tenth Circuit case which applies New Mexico law

for insurance contract interpretation.  New Mexico law is markedly different from Oklahoma law

regarding insurance contract interpretation.   In *Union Standard*, Hobbs Rental Corporation

("**HRC**") hired Nolan Brunson Incorporated ("**Brunson**") to haul a mud separator from an oil

filed to the HRC yard.  *Id*. at 951. The issue before the Court was whether the Brunson truck was

"used in connection with" HRC's business.  *Id*.  The inquiry was to determine whether HRC's

insurer, Union Standard Insurance Company ("**Union Standard**") had to defend and indemnify

HRC pursuant to a non-owned auto endorsement in its policy.  *Id*. at 951.  The Court began its

analysis by describing New Mexico standards for interpretation of insurance policies:

> First and fundamentally, a reviewing court must begin with the plain language of the
> insurance agreement itself. *Rummel v. Lexington Ins. Co.,* 123 N.M. 752, 945 P.2d 970,
> 976 (1997). To the extent the language is not dispositive, we examine the contract terms in
> context and construe them in a reasonable and ordinary way. *See Mountain States Mut.
> Cas. Co. v. Ne. N.M. Fair Ass'n,* 84 N.M. 779, 508 P.2d 588, 591 (1973). **When
> evaluating competing interpretations of a policy, we must adopt the standpoint of a
> "hypothetical reasonable insured" and ask "what understanding a reasonably
> intelligent, non-lawyer lay person might glean from the policy, in light of the usual
> meaning of the words and the circumstances leading to purchase of the policy**." *Berry
> v. Fed. Kemper Life Assurance Co.,* 136 N.M. 454, 99 P.3d 1166, 1183 (2004). Finally,
> while we construe insurance contract ambiguities in favor of the insured, a favored
> interpretation cannot lead to strained interpretations of the policy language. *Battishill v.
> Farmers Alliance Ins. Co.,* 139 N.M. 24, 127 P.3d 1111, 1115 (2006).

*Id*. at 952 (emphasis added).   The Court relied heavily upon New Mexico's "hypothetical

reasonable insured" standard in determining the non-owned autos clause was not intended to

extend to independent contractors, and that the policy was only intended to apply to HRC-affiliated

persons operating privately-owned vehicles while performing company-related work.  *Id*. at 953.

In Oklahoma, general principles of contractual interpretation govern the construction of an

insurance policy.  *Dodson v. St. Paul. Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).  Thus, "[a]n

insurance policy, like any other contract of adhesion, is liberally construed, consistent with the

object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." *Id*. (footnote omitted). "When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions." *BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005) (footnote omitted). "**[N]either forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract.**" *Dodson*, 812 P.2d at 376 (emphasis added, footnote omitted). However, **when the policy language is susceptible to two constructions, without resort to rules of construction, a genuine ambiguity exists and the contract must be construed in favor of the insured and against the insurance carrier**. *Id*. at 376-77. **Absent from Oklahoma's insurance policy interpretation standards is any reference to or reliance upon the hypothetical reasonable insured standard relied upon in** *Union Standard*.

The undersigned has not found any Oklahoma state or federal decision applying Oklahoma law to determine the meaning of "in connection with your business." Instructive are the decisions of two other courts who rejected the *Union Standard* reasoning found the "in connection with" language clear and unambiguous, such that the subject non-owned auto endorsements were found applicable where the subject non-owned autos were operated by independent contractors. First, in *RPM Freight Systems, LLC v. Wesco Insurance Company*, 656 F. Supp.3d 721 (E.D. Mich. 2023), RPM, a freight broker, appointed Paper Impex USA ("**Paper Impex**") to serve as a motor vehicle carrier for the transportation of Tesla cars. *Id*. at 726. A tractor-trailer carrying a load, owned by Paper Impex and leased to Raptor, was involved in an accident that resulted in the death of two

17

victims. *Id.* In the underlying wrongful death suit, the plaintiff sued RPM, Paper Impex, Raptor, and the driver of the tractor-trailer, alleging the acts of the driver were imputed to RPM under the doctrine of respondeat superior. *Id.* at 726. In the subsequent breach of contract and declaratory judgment action, the United States District Court for the Eastern District of Michigan was tasked with interpreting the non-owned autos endorsement in RPM's insurance policy issued by Wesco Insurance Company. *Id.* at 727. The Court began its analysis by summarizing the standards for insurance policy interpretation in Michigan, which are very similar to Oklahoma's standards:

> "When analyzing the scope of insurance policy coverage, the traditional principles of contract and insurance law apply." *Orchard*, 146 F. Supp. 3d at 885. **Michigan courts resolve disputed insurance policies in accordance with their terms and do so by resolving ambiguous policies in the insured's favor**. *See Hamilton Specialty Ins. Co. v. Transition Inv., LLC*, 818 F. App'x 429, 432 (6th Cir. 2020). "Contractual language limiting coverage must be unambiguous. Otherwise the clause is unenforceable." *Id.*
>
> . . .
>
> Michigan courts have yet to address the issue of whether a "non-owned" vehicle driven by a non-employee is considered to be used "in connection with" a company's business for insurance purposes. Under Michigan law, when "determining whether a policy applies, [courts] first must determine whether the policy is clear and unambiguous on its face." *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 476 N.W.2d 392, 397 (1991) (citation omitted). "**A fundamental tenet of [Michigan] jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written***." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 703 N.W.2d 23, 30 (2005) (emphasis in original); *see also Upjohn Co.,* 476 N.W.2d at 397 (noting that **courts "cannot create an ambiguity where none exists" and courts should "reject the temptation to rewrite the plain and unambiguous meaning of [an insurance policy] under the guise of interpretation**."). Determining whether language in an agreement is ambiguous is "one of law; therefore, it may be resolved summarily." *Parrett v. American Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993).
>
> Here, **the phrase 'in connection with' is unambiguous**. The Oxford English Dictionary, which is considered to be "one of the most authoritative on the English language," *see Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 569, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012), defines the word "connection" as: "The condition of being *related to* something else by a bond of interdependence, causality, logical sequence, coherence, or

18

the like; relation between things one of which is bound up with, or involved in, another." 3 *Oxford English Dictionary* 746 (2d. ed. 1989); *see also Morse/Diesel, Inc. v. Provident Life & Acc. Ins. Co.*, 166 F.3d 1214 (6th Cir. 1998) (concluding that ***731** the "district court correctly held that the phrase *in connection with* ... plainly refers to matters *related to* ....") (emphasis added). **Based on the definition and its plain meaning, the Court is satisfied that the phrase 'in connection with' means 'related to,' and declines to engage in an attempt to interpret language that is unambiguous on its face.** *See Rory*, 703 N.W.2d at 30.

*Id*. at 729, 730-31 (italic emphasis in original, bold emphasis added).  The Court went on to find that the vehicle involved in the subject accident was used in connection with RPM's business:

In the Complaint, RPM alleges that it is "a freight broker that specializes in arranging freight and finished vehicle transportation" and "as a part of its business, RPM is an intermediary between clients and carriers to ensure secure transportation of various types of cargo." (ECF No. 1 ¶¶ 7-8, Pg ID 3.). In the Underlying Action, John Perkovich, RPM's agent, testified under oath that RPM is "in the business of arranging for the shipment of vehicles or freight ..." and that it "get[s] paid by [its] customer to move their shipments with carriers." (ECF No. 21-3 at Pg ID 329, 331.) **The accident at issue in the Underlying Action occurred while transporting Tesla vehicles that were brokered by RPM. Specifically, an employee of Raptor, while driving a tractor-trailer owned by Paper Impex, got into an accident while transporting Tesla vehicles that RPM was hired to ship—a job that RPM contracted to Paper Impex. <u>There can be no dispute that the accident in question occurred "in connection with" RPM's business of arranging vehicle transportation</u>. In fact, this transportation of Tesla vehicles was the very reason the Raptor employee was operating the tractor-trailer to begin with.** As such, the Court finds the accident occurred in connection with RPM's business.

*Id*. at 731 (bold and underlined emphasis added).

Second, in *Brazan v. Washington*, 194 So.3d 1274 (La. Ct. App. 2016), the Court affirmed a district court's interpretation of the "in connection with" language, holding that the language was broad enough to provide coverage when the subject non-owned auto was operated by an independent contractor.  In *Brazan*, Hallmark Specialty Insurance Company ("**Hallmark**") insured Arabie Trucking ("**Arabie**"), who was in the business of transporting raw sugarcane from cane fields to sugar mills.  *Id.* at 1275. Arabie entered into a Trucking Service Agreement with

Lafourche Sugars ("**Lafourche**") to transport sugarcane from Lafourche's cane farmer customers' fields to Lafourche's sugar mill.  *Id.* Arabie then entered into an agreement with WHY, a trucking company owned by Charlotte Alexander, to provide a tractor owned by WHY and a driver to transport the sugarcane to Lafourche's mill.  *Id.* In interpreting the "in connection with" language of the Hallmark policy, the Court cited Louisiana's standards for insurance contract interpretation and reasoned as follows:

> In their reply to Hallmark's opposition, plaintiffs argued that jurisprudence cited by Hallmark was factually distinguishable, that Arabie Trucking was in the business of transporting sugarcane, and that the trailer was being used in connection with Arabie Trucking's business to haul sugarcane for its client, Lafourche, when the accident occurred, and therefore the trailer was covered under the plain language of Hallmark's policy. **State Farm further argued that jurisprudence cited by Hallmark was distinguishable from the instant case, because, unlike other cases dealing with vicarious liability of a non-employee driver, plaintiffs had asserted claims of independent negligence against Arabie Trucking for Arabie Trucking's maintenance of the trailer**.
>
> . . .
>
> The interpretation of an insurance policy is usually a legal question that can be properly resolved on a motion for summary judgment. *Davis v. Scottsdale Ins. Co.,* 13–255 (La.App. 5 Cir. 10/30/13), 128 So.3d 471, 475. An insurance policy is a contract between the parties and has the effect of law between them. *Bryant v. United Services Auto. Ass'n.,* 03–3491 (La.9/9/04), 881 So.2d 1214, 1221. The intent of the parties, as reflected by the words of the insurance policy, determines **\*\*9** the extent of coverage. *Louisiana Insur. Guar. Ass'n. v. Interstate Fire and Casualty Co.,* 93–911 (La.1/14/94), 630 So.2d 759, 763. When courts interpret insurance policies, they must determine the parties' common intent to ensure that the interpretation of the insurance policy is not conducted in a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by the policy's terms. *Huggins v. Gerry Lane Enterprises, Inc.,* 06–2816, (La.5/22/07), 957 So.2d 127, 129. **If the words of the insurance policy are clear and express the intent of the parties, the agreement must be enforced as written.** *Reynolds v. Select Properties, Ltd.,* 93–1480 (La.4/11/94), 634 So.2d 1180, 1183. **Any ambiguity in the terms of the policy must be construed against the drafter and in favor of the insured.** *Id.*
>
> . . .

Arabie Trucking's Answers to Interrogatories and the deposition of Arabie Trucking's corporate representative reflect that Arabie Trucking was in the business of transporting raw sugarcane pursuant to a contract with Lafourche. The contract between Arabie Trucking and WHY reflects that Arabie Trucking hired WHY to provide trucks and drivers "in order to pursue its business of transporting raw sugar for [Arabie Trucking]'s clients," and the contract required WHY to use sugar cane trailers assigned, inspected, and maintained by Arabie Trucking. In her deposition, Arabie Trucking's corporate representative testified that Arabie Trucking would have been paid by Lafourche had the shipment of sugarcane been completed on the day of the accident. The record reflects that at the time of the accident, WHY's driver, Jerold Washington, was driving WHY's truck with an attached trailer full of sugarcane, which had been assigned by Arabie Trucking.

**\*\*11 Applying the facts of this case to the plain language of Hallmark's policy, we find no genuine issue exists as to whether the trailer was used in connection with Arabie Trucking's business at the time of the accident. The trailer was assigned by Arabie Trucking for transport by WHY in order to fulfill Arabie Trucking's contractual obligation to transport sugarcane to Lafourche's sugar mill, and at the time of the accident, the trailer was being hauled pursuant to Arabie Trucking's contract with Lafourche. At least a portion of Arabie Trucking's business was transporting Lafourche's sugarcane. Thus, under the plain language of the nonowned autos provision, the trailer was clearly "used in connection with" Arabie Trucking's business at the time of the accident**.

*Id.* at 1279-1280 (emphasis added). Here, as in *RPM Freight Systems*, Mackey has alleged that the acts of Juarez, the driver of ORD's truck, are imputed to Silver Star under the doctrine of respondeat superior. *See RPM Freight Systems,* 656 F.Supp.3d at 726. Like RPM, who was hired to transport Teslas, Valle was hired by Silver Star to haul materials. Just as RPM hired Paper Impex to fulfill its obligations, Valle hired ORD to fulfill its obligations to Silver Star. *See id.* at 731. In *RPM Freight Systems,* the Raptor employee was operating the subject tractor-trailer to fulfill RPM's obligations, just as Juarez, ORD's driver, was operating ORD's truck to fulfill Valle's HSA with Silver Star. *See* SOAF Nos. 2, 3, 6, 9, and 10. The *RPM Freight Systems* Court found under these circumstances, "there can be no dispute that the accident in question occurred 'in connection with' RPM's business. . . .'" Here, there can likewise be no dispute that Juarez was

operating ORD's truck in connection with Valle's business, as Valle had hired ORD for the specific purpose of fulfilling Valle's hauling obligations to Silver Star pursuant to the HSA.

Further, as in *Brazan*, where Arabie contracted with WHY to fulfill Arabie's contractual obligation to transport sugarcane to Lafourche's sugar mill, Valle contracted with ORD to fulfill its contractual hauling obligation to Silver Star. *See Brazan*, 194 So.3d at 1279-80. There is no definition in the Progressive Policy for "in connection with [Valle's] business." As set forth by the *RPM Freight Systems* and *Brazan* Courts, there is no ambiguity in the phrase "in connection with your business" in Progressive's non-owned autos endorsement. ZAIC respectfully submits that this Court should interpret this language according to its ordinary, plain meaning. *See BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005). Valle hired ORD and Juarez for purposes of fulfilling ***Valle's*** obligations under the HSA. *See* SOAF Nos. 9, 10. Thus, ORD and Juarez worked in furtherance of Valle's business, and certainly "in connection with" Valle's business.

### B. Silver Star and Juarez are insureds under the Progressive Policy.

Progressive argues that Silver Star is not entitled to defense or indemnity for the Underlying Suit by virtue of the fact that Silver Star is not listed as a named insured or additional insured under the Progressive Policy. This is despite the requirement in the HSA that Valle list Silver Star as an additional insured on its commercial general liability and automobile policies. *See* SOAF No. 22.

Progressive asserts that Silver Star is not an "insured" under the Progressive policy because the Second Amended Petition in the Underlying Suit only accuses Silver Star of direct negligence. Progressive asserts "Mackey claims that Silver Star is *directly* liable for the former's alleged damages, not *vicariously*." *See* MSJ, at 9 (emphasis in original). This assertion is directly refuted

22

by the allegation of Paragraph 43 of Mackey's Second Amended Petition, which specifically alleges Silver Star's liability on a theory of respondeat superior.   *See* ZAIC's Response to Statement of Material Fact No. 17; Doc. No. 93-5, at ¶ 43 ("That pursuant to the doctrine of Respondeat Superior, ORD Trucking, Valle Trucking, and Silver Star are strictly liable for the negligence of Defendant Juarez.").   This allegation of Silver Star being liable as an employer for the acts of its employee places the allegations of the Second Amended Complaint squarely within the third definition of "insured" in the Progressive policy, which states as follows:

> A. When used in Part I – Liability to Others, **Insured** means:
> . . .
> 3. Any other person or organization, but only with respect to the legal liability of that person or organization for the acts or omissions of any person otherwise covered under this Part I - Liability To Others.

*See* Doc. 93-4, at 13 (bold emphasis in original).   Under this definition of "Insured," the word "vicarious" does not need to appear in the Second Amended Petition.   Rather, the definition is met if legal liability for the acts of another insured is alleged.   Here, respondeat superior liability on the part of Silver Star is specifically alleged.   Respondeat superior liability is a form of vicarious liability.   *See, e.g.,* Black's Law Dictionary (11th ed. 2019) (defining "respondeat superior" as "[Law Latin "let the superior make answer"] (17c) *Torts.* The doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency. — Also termed *master-servant rule[,]*" and defining "vicarious liability" as "Liability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties. — Also termed *imputed liability.* See respondeat superior.") (Italic emphasis in original).   *See also, Jordan v. Cates*, 935 P.2d 289 (Okla. 1997) (Oklahoma Supreme Court acknowledged respondeat

superior liability as synonymous with vicarious liability, first recognizing employer may be held liable for acts of employee where relationship of master and servant exists and tortious act was committed within the scope of employment, and further second, holding where employer stipulated the employee was acting in the course of his employment at time of incident, liability of employer "would be under the ***respondent superior doctrine***, thereby making any other theory for imposing liability on the employer unnecessary and superfluous.  Because ***vicarious liability*** can include liability for punitive damages, the theory of negligent hiring and retention imposes no further liability on employer.") (Emphasis added.)[5]

Progressive asserts that "the duty to defend is determined by comparing the allegations contained within the four corners of the complaint [here, the Second Amended Petition filed in the Underlying Suit] with the language of the policy," and "[t]o determine whether the insurer has a duty to defend, the Court must apply the language of the applicable policy to the facts in the complaint."  *See* MSJ, at 8, 9.  Thus, pursuant to Progressive's own argument and Mackey's clear allegation of respondeat superior liability on the part of Silver Star, Silver Star unquestionably qualifies as an insured under the Progressive policy.

### C.  Silver Star is an insured under the Progressive Policy pursuant to the lease of ORD's truck by Valle.

---

[5] Mackey also alleged in his Second Amended Petition that Silver Star should have known of Juarez's reckless propensities when operating a vehicle, *i.e.,* that Silver Star negligently entrusted its vehicle to Juarez.  *See* Doc. 93-5, at ¶ 24.  A handful of states have deemed negligent entrustment of a vehicle to be a form of vicarious liability, including California, Pennsylvania, Missouri, and Illinois; *see, e.g.,* National Union Fire Ins. Co. v. Showa Shipping Co, 47 F.3d 316, 321-22 (9th Cir 1995); Reliance Ins. Co. v. Federal Ins. Co., 2000 U.S.Dist LEXIS 16083 (E.D.Pa. Nov. 3, 2000); Lindsay v. Pruitt, 273 S.W.3d 73, 76 (Mo.Ct.App. 2008); Gant v. L.U. Transp., 331 Ill.App.3d 924, 928-29 (Ill.App.Ct. 1st Dist. 2002).

Silver Star is an insured under the Progressive Policy by virtue of the lease of ORD's truck by Valle. The truck owned by ORD and operated by Juarez at the time of the subject accident was leased by Valle.  This is evidenced by the Valle field tickets identifying the vehicles being leased by Valle, the date and time of the leases, the rate of pay for the leases, and the companies whose vehicles were being leased.  *See* SOAF Nos.  12-13.  Here, Valle was leasing vehicles from ORD to satisfy its obligations to Silver Star under the HSA.  *See* SOAF Nos. 2, 3, 6, 9, 10.  The HSA required Valle to maintain exclusive possession, control, and use of the equipment used for the Silver Star job, and that Valle use only owned or leased vehicles for the job.  *See* SOAF No. 1. *See also,* SOAF Nos. 2 (Ordones testified that ORD had been hired by Valle and was working for Valle at the time of the Accident); SOAF No. 3 (ORD was paid by Valle); SOAF No. 4 (Silver Star entered into a contract with Valle, not ORD); SOAF No. 9 (Juarez testified at the time of the Accident, ORD was working for Valle); SOAF No. 10 (Valle testified any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA).

The Valle field tickets are evidence of a lease between Valle and ORD, whereby Valle leased ORD's trucks and drivers to fulfill Valle's obligations to Silver Star pursuant to the HSA.  *See* SOAF Nos. 1, 12, 13.  The field tickets set forth all the essential terms of the lease, including reference to the party to the lease, the truck number, date, driver name, job number, start and end times, total hours worked, number of loads, rate, terms, and material type.  *See id.*  OKLA. STAT. tit. 47, § 230.29 defines a "lease" in the context of the Oklahoma Motor Carrier Safety and Hazardous Materials Transportation Act as "a contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use

in the regulated transportation of passengers or property, in exchange for compensation." *See* OKLA. STAT. tit. 47, § 230.29(A)(4). Valle obtained an Oklahoma intrastate motor carrier license by filing the Progressive Policy. *See* SOAF No. 14; OKLA. STAT. tit. 47, § 230.30. Oklahoma's Motor Carrier Act of 1995, OKLA. STAT. tit. 47, §§ 231.1, *et seq.* ("**MCA**") requires motor carrier insurance to cover the operation of any carrier for which the carrier is legally liable. *Id.* The required insurance policy may not contain any restriction relating to the driving or operation of the vehicle, and must cover any and all vehicles operated by the motor carrier insured, whether or not listed or identified in the policy. *See* Oklahoma Administrative Code ("**OAC**") 165:30-3-11(j) and (k).[6] Insurance policy provisions resulting in a lesser obligation than required by statute will be void as against public policy. *See Chambers v. Walker*, 1982 OK 128, 653 P.2d 931, 933-34.

Pursuant to OKLA. STAT. tit. 47, § 230.29(B) and (C), a licensed motor carrier may perform authorized transportation in vehicles it does not own if there is a written lease between the carrier and the owner, identifying the vehicle to be used, granting the use of the vehicle, and stating the rate of pay and other terms. Pursuant to the statute, the authorized carrier lessee must have

---

[6] OAC § 165:30-3-11 provides in part as follows:

   . . .

 (j) No certificate of insurance shall be filed with the Commission, which contains a provision to the effect that liability thereunder may be limited or avoided because of the culpability, the recklessness, or the condition of the driver of the vehicle involved or any other restriction relating to the driving or operation of the vehicle.

(k) Every certificate of insurance filed with the Commission shall provide that the public is protected from damage sustained through operations of any and all vehicles operated by the motor carrier insured, whether or not listed or identified in the policy; and that liability is not limited by the description of any particular vehicle or route which may be traveled by the motor vehicle in transporting passengers or property under the certificate or permit or license.

exclusive possession, control and use of the vehicle, and the lessee must assume complete responsibility for the operation of the equipment for the duration of the lease.  *See* OKLA. STAT. tit. 47, § 230.29(C)(4).  Oklahoma courts have imposed the motor carrier insurance requirements on a policy of insurance which attempted to skirt these obligations.  *See Alfalfa Elec. Coop., Inc. v Mid-Continent Cas. Co.*, 2015 OK CIV APP 53, 350 P.3d 1276, 1281 (citing the MCA, noting the insurer issued a Form F pursuant to OKLA. STAT. tit. 47, § 230.30, and noting the Oklahoma Supreme Court's longstanding interpretation to make a motor carrier and its insurer "jointly liable" and to allow an injured third party to bring a direct action against a motor carrier and its insurer).

Here, the Valle field tickets identify the vehicle being leased by vehicle number, as well as state the day and time of the lease, the rate of pay, and the company whose vehicle is being leased (*e.g.,* "ORD").  *See* SOAF Nos. 12-13.  This, together with the testimony of Valle, Juarez, and Ordones (*see* SOAF Nos. 2, 9, 10) establishes that the dump truck owned by ORD was being leased by Valle.  Pursuant to Oklahoma statutes and applicable regulations, the hired auto operated by Juarez at the time of the Accident must be covered by Progressive despite any language in its policy preventing coverage for a hired auto.  *See* OKLA. STAT. tit. 47, § 230.30, OAC § 165:30-3-11; OKLA. STAT. tit. 47, § 230.29(B) and (C).   Further, pursuant to its policy, Progressive must cover "any person while using, with [Valle's] permission, and within the scope of that permission, an insured auto you…hire…"  *See* Doc. 94-8, at Part I—Liability to Others, Additional Definitions, at page 6, para. (A)(2).  Thus, Juarez, who was operating an ORD truck pursuant to a lease between Valle and ORD at the time of the Accident, is an "insured" under the Valle policy.

The Progressive Policy also defines an insured as "[a]ny other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person

otherwise covered under this Part I – Liability To Others." *See* Doc. 94-8, at Part I—Liability to Others, Additional Definitions, at page 6, para. (A)(3).  Because Juarez is an insured under the Progressive Policy and Mackey has alleged in its Second Amended Petition filed in the Underlying Suit that Silver Star is vicariously liable for the acts and omissions of Juarez (*see* ZAIC's Response to Material Fact No. 17), Silver Star is also an insured under the Progressive Policy.

Pursuant to the plain language of Progressive's policy, the driver of the vehicle used in Valle's business, Juarez, is an insured.  Juarez had Valle's permission to use the vehicle that Valle hired by virtue of the lease whereby Valle leased autos from ORD to fulfill its obligations under the HSA.  Further, pursuant to the Progressive Policy, the HSA, and the allegations in Plaintiff's Second Amended Petition in the Underlying Suit, Silver Star is alleged to be liable for the acts or omissions of Juarez.  Thus, both Juarez and Silver Star are insureds under the Progressive Policy.

**D.  Progressive's Form F Endorsement (MC1632) provides coverage for any auto used in Valle's business.**

Progressive's Form F Endorsement (Form MC1632) also provides coverage for any auto used in Valle's business.  Progressive's policy includes a Form F Endorsement to comply with Oklahoma law's requirement that motor carriers file with the Oklahoma Corporation Commission a liability insurance policy or bond covering public liability and property damage.  OKLA. STAT. tit. 47, § 230.30 governs issuance of licenses to motor carriers and states as follows:

    A.  No license shall be issued by the Commission to any carrier until after the carrier shall have filed with the Commission a liability insurance policy or bond covering public liability and property damage, . . .

    B.  . . .
        No carrier, whose principal place of business is in Oklahoma, shall conduct any operations in this state unless the operations are covered by a valid primary bond or insurance policy issued by a provider authorized or approved by the State Insurance Commissioner. No carrier shall conduct any operations in this state unless the

operations are covered by a valid bond or insurance policy issued by a provider authorized and approved by the National Association of Insurance Commissioners and certified by the State Insurance Commission.

*See* OKLA. STAT. tit. 47, § 230.30.  In compliance with OKLA. STAT. tit. 47, § 230.30, Progressive's

policy contains a Form MC1632, which is a "FORM F UNIFORM MOTOR CARRIER

BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE

ENDORSEMENT."  *See* Doc. 94-8 at Form F.  Form F states as follows:

> It is agreed that:
>
> **1.  *The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby. . . .***

*See* Doc. 94-8, at Form F (underlined emphasis in original, bold italic emphasis added).  Thus,

Progressive's Form F filing amends the Progressive policy to provide coverage for any auto used

in Valle's business.  As set forth in SOAF Nos. 2, 3, 6, 9, 10, the truck owned by ORD and operated

by Juarez at the time of the subject accident was being operated for the purpose of Valle fulfilling

its obligations to Silver Star under the HSA.  As such, the truck was an auto being used in Valle's

business, and the Form F filed by Progressive for purposes of covering public liability and property

damage operates to provide coverage for the auto owned by ORD, driven by Juarez, and used in

Valle's business.

WHEREFORE, Defendant/Third-Party Plaintiff Zurich American Insurance Company

respectfully requests that the Court deny Progressive Northern Insurance Company's Motion for

Partial Summary Judgment in its entirety, and award to ZAIC any other relief to which it may be entitled.

Respectfully Submitted,

**ASTON | MATHIS | CAMPBELL PLLC**

By *s/Amy E. Hampton*
      **RACHEL C. MATHIS, OBA #16360**
      **AMY E. HAMPTON, OBA # 20235**
      2642 East 21st Street, Suite 250
      Tulsa, OK  74114
      (918) 949-9966
      FAX: (918) 949-9968
      E-Mail: rmathis@amlawok.com
      ahampton@amlawok.com
      Attorney for Defendant/Third-Party Plaintiff
      Zurich American Insurance Company

## CERTIFICATE OF SERVICE

I, Amy E. Hampton, hereby certify that on this 12th day of December, 2023, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system:

Michael S. Linscott
Doerner, Saunders, Daniel & Anderson, L.L.P.
Two West Second Street, Suite 700
Tulsa, OK 74103-3117
*Attorney for Great Lakes Insurance SE*

Brian M. Keester
Doerner, Saunders, Daniel & Anderson, L.L.P.
2 West Second Street, Suite 700
Tulsa, OK 74103-3117
*Attorney for Great Lakes Insurance SE*

Emily E. Williams
Doerner, Saunders, Daniel & Anderson, L.L.P.
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
*Attorney for Great Lakes Insurance SE*

J. Chris Horton
J. Chris Horton, PC
PO Box 576
El Reno, OK 73036
*Attorney for Silver Star Construction Company, Inc.*

James A. Scimeca
Burch, George & Germany
1500 City Place Bldg.
204 N. Robinson, Ste 1500
Oklahoma City, OK  73102
*Attorney for Tylon Mackey*

Ryan Polchinski
Law Offices of Daniel M. Davis
300 N. Walnut Ave.
Oklahoma City, OK 73104
*Attorney for Tylon Mackey*

Andrew Polchinski
Law Offices of Daniel M. Davis
300 N. Walnut Ave.
Oklahoma City, OK 73104
*Attorney for Tylon Mackey*

Bradley E. Bowlby
Starr, Begin & King, PLLC
1800 South Baltimore, Suite 550
Tulsa, OK 74119
*Attorney for Progressive Northern Insurance Company*

Christopher C. King
Starr, Begin & King, PLLC
1800 South Baltimore, Suite 550
Tulsa, OK 74119
*Attorney for Progressive Northern Ins. Co.*

*s/Amy E. Hampton*
**AMY E. HAMPTON**

AEH/aeh