**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1.  GREAT LAKES INSURANCE SE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. CIV-22-00702-JD |
| vs. | ) Judge Jodi W. Dishman |
| | ) |
| 2.  FREDY VALLE d/b/a VALLE TRUCKING; | ) ) |
| 3.  SILVER STAR CONSTRUCTION COMPANY, INC.; | ) ) |
| 4.  TYLON MACKEY; | ) |
| 5.  ISRAEL JUAREZ; | ) |
| 6.  ORD TRUCKING, INC. | ) |
| 7.  ZURICH AMERICAN INS. CO., | ) |
| | ) |
| Defendants, | ) |
| ——————————————— | ) |
| | ) |
| 8.  ZURICH AMERICAN INS. CO., | ) |
| | ) |
| Defendant/Third Party Plaintiff, | ) ) |
| | ) |
| vs. | ) |
| | ) |
| 9.  PROGRESSIVE NORTHERN INS. CO., | ) ) |
| | ) |
| Third-Party Defendant. | ) |

**DEFENDANT/THIRD-PARTY PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

i

## **TABLE OF CONTENTS**

Introduction ................................................................................................... 1

ZAIC's Response to Great Lakes' Statement of Undisputed Material Facts..................... 1

Statement of Additional Material Facts Which Preclude Summary Judgment in Favor of Great Lakes........................................................................................... 6

Arguments and Authorities............................................................................... 11

I.      Great Lakes has a duty to defend and indemnify Silver Star as to the underlying suit ................................................................................. 11

     A.   The Great Lakes Auto Exclusion does not exclude coverage for Silver Star for the underlying lawsuit........................................................... 11

     B.   The Great Lakes Independent Contractors Exclusion does not exclude coverage for Silver Star for the underlying lawsuit. ................................... 17

     C.   Great Lakes has a duty to defend and indemnify Silver Star due to the HSA qualifying as an insured contract under its policy...................................... 22

Conclusion ................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Bertram v. Progressive Southeastern Ins. Co.*, 2023 WL 5153618, --- F.Supp.3d ----, (W.D. La. Aug. 10, 2023) ..................................................................................................................... 13

*Express Servs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* No. CIV-12-222-R, 2012 WL 12865257, at *5 (W.D. Okla. Nov. 7, 2012)............................................................................. 19

*Marathon Ashland Pipe Line LLC v. Maryland Casualty Company,* 243 F.3d 1232 (10th Cir. 2001) .......................................................................................................................................... 20

*Nuvell Nat'l Auto Finance, LLC v. Monroe Guaranty Ins. Co.*, 736 S.E.2d 463 (Ga. Ct. App. 2012) .......................................................................................................................................... 23

*Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618 (7th Cir. 2002) .............................. 12

*The Employers' Fire Ins. Company v. Berg*, 2007 WL 273559 at * 4 (N.D. Ill. Jan 25, 2007) ... 19

*Yousuf v. Cohlmia*, 718 F. Supp. 2d 1279, 1291 (N.D. Okla. 2010) ........................................... 19

*Yousuf v. Cohlmia*, 741 F.3d 31, 42 (10th Cir. 2014) ................................................................. 19

Defendant/Third-Party Plaintiff, Zurich American Insurance Company ("**ZAIC**") respectfully submits its Response to Plaintiff Great Lakes Insurance SE's ("**Great Lakes**") Motion for Summary Judgment ("**MSJ**") (Doc. 93).

## Introduction

Great Lakes seeks summary judgment as to ZAIC's counterclaim for declaratory judgment, asserting Great Lakes owes no duty to defend or indemnify Silver Star Construction Company, Inc. ("**Silver Star**") for the underlying lawsuit styled as *Tylon Mackey v. Israel Juarez, ORD Trucking, Inc., Fredy N. Valle Sr. d/b/a Valle Trucking and Silver Star Construction Company, Inc.,* Payne County, Oklahoma District Court Case No. CJ-20-233. As set forth herein, Great Lakes owes Silver Star defense and indemnity for the underlying suit pursuant to the terms of the Great Lakes policy.

## ZAIC's Response to Great Lakes' Statement of Undisputed Material Facts[1]

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

---

[1] For ease of reference, ZAIC's page numbers referred to herein are the Court's page numbers stamped at the top of each exhibit's page.

9.   Admitted in part, denied in part. ZAIC admits that Valle Trucking, LLC's ("**Valle**") insurance application with Great Lakes stated "coverage is only one truck-1999 Mack ch613" with a Vehicle Identification Number ending in 0371.   ZAIC denies that the Great Lakes policy attached as an Exhibit to Great Lakes' MSJ (Doc. 93-1) includes any reference to the afore-mentioned vehicle or any other vehicle.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted in part, denied in part.  ZAIC admits Mackey's Second Amended Petition alleges that Juarez was employed by ORD Trucking, Inc. ("**ORD**"), Valle, and Silver Star Construction Company, Inc. ("**Silver Star**"), that he was operating a vehicle owned by ORD on September 4, 2019, that he was traveling northbound and failed to yield right of way at a stop sign, and collided with Mackey, causing injuries.  *See* Doc. 93-5, at ¶¶ 19-21.  ZAIC denies that Juarez was employed by Silver Star.  *See* ZAIC's Statement of Additional Facts Which Preclude Summary Judgment in Favor of Great Lakes (hereafter, "**SOAF**"), at SOAF Nos. 6, 7, 8, 11.

14. Admitted in part, denied in part.  ZAIC admits that Juarez testified at his deposition that did not know who Fredy Valle or Valle Trucking were.  *See* Doc. 93-6 at 29:18-25. Although ZAIC admits Juarez was employed by ORD, the evidentiary material cited by Great Lakes does not establish this fact.  *See*, however, ZAIC's SOAF Nos. 6, 7, 8, 11.

15. Admitted.

16. Denied.   The evidentiary material cited by Great Lakes does not state that the supervisor was Silver Star.  *See* Doc. 93-6, at 27:17-22.  Juarez testified that he did not know who the supervisor was that told him where to dump his load, but that the supervisor worked for Silver Star.  *See id.*

17. Admitted.

18. Admitted in part, denied in part.  ZAIC admits Juarez testified that Silver Star employees were at the job site telling him when to start, what to do, and where to go, and that the supervisor for the day was a Silver Star employee.  *See* Doc. 93-6, at 37:2-4, 38:10-19.  ZAIC denies any implication that Juarez was retained by or employed by Silver Star.  *See* SOAF Nos. 6, 7, 8, 11.   *See* SOAF Nos. 2 (ORD had been hired by Valle and was working for Valle at the time of the Accident); 9 (Juarez testified it was his understanding at the time of the subject collision that ORD was working for Valle); 10 (Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA); 13 (for loads transported by an ORD vehicle and driver, "ORD" appears in the "LEASE" field of the Valle field ticket, evidencing Valle's lease of ORD vehicles to perform services to Silver Star under the HSA).

19. Admitted.

20. Denied. The evidentiary material cited by Great Lakes states that Juarez was an independent contractor, not a "subcontractor."  *See* Doc. 93-8 at page 10, Affirmative Defenses, ¶ 8. While Silver Star's Amended Answer repeatedly references ORD as Valle's subcontractor, it does not make the same reference as to Juarez.  *See id.* at page 15, ¶ 23;

page 16, ¶ 28; page 19, ¶ 46; and page 20, ¶ 53.  Juarez was an independent contractor retained by ORD.  *See* SOAF Nos. 6, 7, 8, 11.

21. Admitted.

22. Admitted.

23. Admitted in part, denied in part.  ZAIC admits Valle and Silver Star entered into a "Hauling Service Agreement" (not a "Hauler Agreement") on February 7, 2019, wherein Valle generally agreed to haul materials for Silver Star in exchange for compensation.  *See* Doc. 93-11. ZAIC denies that Great Lakes' general summary of the terms of the HSA is an accurate or complete representation of Valle's duties and obligations under the HSA. *See* Doc. 93-11. The HSA requires Valle, inter alia, to obtain commercial general liability and commercial automobile coverages naming Silver Star as an additional insured, and also requires Valle to indemnify Silver Star against all liability arising out of services performed by Valle.  *See* SOAF No. 1

24. ZAIC admits Great Lakes has accurately quoted a portion of the insuring agreement set forth in the Great Lakes Policy.  *See* Doc. 93-1, at page 15, Section I-Coverages, Coverage A Bodily Injury and Property Damage Liability, 1. Insuring Agreement; and page 29 (Amendment of Insuring Agreement—Known Injury or Damage Endorsement).

25. Admitted in part, denied in part.  ZAIC admits the Great Lakes Policy contains the referenced auto exclusion and endorsement.  *See* Doc. 93-1 at pages 17 (auto exclusion) and page 35 (Aircraft, Auto or Watercraft Exclusion Endorsement).  ZAIC denies that the exclusion operates to exclude Silver Star from coverage under the circumstances of this case.  Silver Star is an additional insured under the Great Lakes Policy.  *See* Doc. 93-1 at

4

page 35 (Additional Insured-Owners, Lessees or Contractors-Scheduled Person or Organization Endorsement). The vehicle involved in the subject collision was not owned by, operated by, rented to, or loaned to Valle or to Silver Star, Great Lakes' insureds. *See* SOAF No. 7.

26. Admitted.

27. Admitted.

28. Admitted in part, denied in part. ZAIC admits Great Lakes has accurately quoted a portion of the Contractual Liability Exclusion contained in its policy. ZAIC denies the quoted portion includes all language of the exclusion relevant to the determination of whether Great Lakes has a duty to defend and/or indemnify Silver Star in the underlying lawsuit. The Exclusion states, in its entirety, as follows:

2. Exclusions
This insurance does not apply to:
. . .
b. Contractual Liability
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. ***This exclusion does not apply to liability for damages:***
    (1) That the insured would have in the absence of the contract or agreement; or
    (2) ***Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.*** Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
        (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
        (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*See* Doc. 93-1, at page 15 (emphasis added).

29. ZAIC admits Great Lakes has quoted the relevant portion of its policy definition for an "insured contract." *See* Doc. 93-1 at page 23, Section V-Definitions, paragraph 9(f); and Amendment of Insured Contract Definition Endorsement, Doc. 93-1 at page 33.

30. ZAIC denies that Great Lakes has accurately quoted the Great Lakes Policy's Independent Contractors Exclusion. *See* Doc. 93-1, at page 34. The Endorsement states in relevant part as follows:

> This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or medical payments arising out of:
> (a) the acts or omissions of independent contractors while working on behalf of any insured, or
> (b) the negligent:
>    (i)     hiring or contracting;
>    (ii)    investigation;
>    (iii)   supervision;
>    (iv)   training;
>    (v)    retention;
> of any independent contractor for whom any insured is or ever was legally responsible and whose acts or omissions would be excluded by (a) above.
> As used throughout this endorsement, the term "Independent Contractors" includes Subcontractors.

*See* Doc. 93-1, at page 34.

## Statement of Additional Material Facts Which Preclude Summary Judgment in Favor of Great Lakes

1.   Under the HSA, Valle agreed to do the following:

A. ***Maintain the exclusive possession, control and use of all the equipment that may be required to fulfill the requirements of this Agreement***.
. . .
E. ***Maintain a policy or policies of insurance coverage, as set forth more particularly herein, which provide contractual liability coverage and which shall also name SILVER STAR as an additional insured on the policy or policies***.

6

2.    <u>INDEMNITY:</u>  . . .  ***to hold harmless and unconditionally indemnity SILVER STAR against any and all liability for costs, expenses, claims and damages, including attorney fees and all other costs of defense, which SILVER STAR may at any time suffer or incur, or become liable for, by reason of any accidents, damages or injuries sustained either to persons or property, including but not limited to employees or agents of Silver Star and/or Hauler, and/or any third parties, arising out of the services performed by HAULER pursuant to this Agreement, regardless of whether such injury or damage was caused in whole or in part, to any degree, by HAULER***. It is the express intent of the parties to this Agreement that the indemnity obligations described herein are for the benefit of SILVER STAR unless the injury or damage sustained arose directly from SILVER STAR's negligence. . . .

3.    INSURANCE:

A. . . .  to purchase and maintain a commercial general liability insurance policy or policies, providing coverage for damage to both property and injury to persons, expressly insuring HAULER'S indemnity obligations above, in an amount not less than One Million Dollars ($1,000,000.00) for each occurrence, and Two Million Dollars ($2,000,000) in the aggregate. . . .

B. . . .  to purchase an applicable commercial motor vehicle insurance policy, providing coverage for both damage to property and injury to persons, expressly insuring HAULER'S indemnity obligations referenced above, in an amount not less than One Million Dollars ($1,000,000.00) combined single limit.

C. . . .  ***to name SILVER STAR as an additional insured under its commercial general liability and automobile policies referenced herein, on a primary and non-contributory basis, without restriction as to fault or liability. HAULER agrees to furnish SILVER STAR with Certificates of Insurance identifying each carrier and policy, evidencing HAULER'S compliance with the obligations as set forth in this Agreement,*** . . . .  HAULER further agrees that the insurance provided to SILVER STAR as set forth in the Agreement shall not operate to preclude, circumvent or nullify any obligation assumed by it in paragraph 2 above, to indemnify SILVER STAR for any loss or damage sustained to any person or property. . . .

*See* Doc. 94-1 (emphasis added).  *See also,* Doc. 92-3, Deposition Transcript of Fredy

Valle, October 5, 2023, at 26:17-27:5 (Valle acknowledged entering into the HSA).

2.   Jesus Ordones ("**Ordones**"), the owner of ORD, testified that ORD had been hired by Valle and was working for Valle at the time of the Accident.  *See* Doc. 92-5, Deposition Transcript of Jesus Ordones, July 20, 2023, at 26:12-28:5.

3.   Ordones testified that ORD was paid by Valle.  *See* Doc. 92-5, at 27:21-28:3.  *See also,* Doc. 92-3, at 17:21-18:3 (Silver Star paid Valle by check, and then Valle paid its contractors).

4.   Ordones testified that Silver Star did not enter into a contract with ORD, *see* Doc. 92-5, at 59:22-60:3, the agreement was between Silver Star and Valle. *Id*. at 60:11-18.

5.   Ordones testified it was his decision to put Juarez in one of his trucks to provide to Valle.  *See* Doc. 92-5, at 60:22-61:1.  *See also*, Doc. 92-6, ORD's Responses to Plaintiff's Requests for Admission in the Underlying Suit, at Request No. 2 (admitting Juarez was acting in the course and scope of his employment with ORD at the time of the Accident).

6.   Juarez testified at his deposition that ORD gave him a job.  *See* Doc. 92-7, Deposition Transcript of Israel Juarez, July 29, 2021, at 13:25-14:2.

7.   At the time of the Accident, Juarez was operating a truck owned by ORD.  *See* Doc. 92-8*,* Juarez's Responses to Mackey's Request for Admission No. 2; Doc. 92-6, ORD's Responses to Mackey's Request for Admission No. 1.

8.   Juarez was acting in the course and scope of his employment with ORD at the time of the Accident.  *See* Doc. 92-6, ORD's Responses to Mackey's Request for Admission No. 2.

9.   Juarez testified it was his understanding at the time of the Accident that ORD was working for Valle.  *See* Doc. 92-7, at 33:20-23.

10. Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA. *See* Doc. 92-3, at 34:16-20.

11. Juarez testified he was paid for his work by ORD. *See* Doc. 92-7, at 39:14-18.

12. At the time of the Accident, Great Lakes had in force and effect its Certificate of Liability Insurance issued on February 20, 2019 ("**Great Lakes COI**"), attached as **Exhibit 1**, under Great Lakes Commercial General Liability Policy No. GLG022472.

13. The Great Lakes COI has effective dates of February 11, 2019 through February 11, 2020, lists Valle as the insured, and lists Silver Star and its subsidiaries as the certificate holder. The Great Lakes COI provides limits of $1,000,000.00 in liability coverage under the Great Lakes Policy for each occurrence. *See* Exhibit 1.

14. The Great Lakes Policy contains an Endorsement entitled, "Additional Insured— Owners, Lessees or Contractors—Scheduled Person or Organization" (hereafter, "**Additional Insured Endorsement**"), which states in part as follows:

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location (s) Of Covered Operations |
|---|---|
| Silver Star Construction, Inc & it's Subsidiaries 2401 S Broadway Moore, OK 73160 | Any and All Location(s) Of Covered Operations |

. . .

**A. Section II - Who Is An Insured** *is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule*, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    **1.** Your acts or omissions; or
    **2.** *The acts or omissions of those acting on your behalf;*
*in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.*

9

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

*See* Doc. 93-1, at page 35 (Additional Insured-Owners, Lessees or Contractors-Scheduled Person or Organization Endorsement) (bold emphasis in original, italic/underlined emphasis added).

15. Valle provides a pre-numbered "field ticket" to each driver on which to document important load details.  Some of the fields filled out by driver are "LEASE," "TRUCK #," "date," "driver name," "job #," start and end times, total hours worked, "# OF LOADS," "RATE," "TERMS," and "material type."   *See* Doc. No. 92-9, Valle Trucking Field Tickets,.  *See also*, deposition transcript of Fredy Valle, Doc. 92-3, at 33:1-34:21.

16. For loads transported by an ORD vehicle and driver, "ORD" appears in the "LEASE" field of the Valle field ticket.  *See* Doc. 92-9, at pages 4, 5, and 12.

## Arguments and Authorities

**I. Great Lakes has a duty to defend and indemnify Silver Star as to the underlying suit.**

    **A. The Great Lakes Auto Exclusion does not exclude coverage for Silver Star for the underlying lawsuit.**

If the Court finds Valle did not lease from ORD the vehicle operated by Juarez at the time of the accident, the Great Lakes Auto Exclusion Endorsement does not operate to exclude coverage for Silver Star for the underlying lawsuit. The endorsement states in relevant part as follows:

2. Exclusions
This insurance does not apply to:

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

*See* Doc. 93-1, at page 32. The endorsement specifically excludes coverage for bodily injury arising out of the ownership, maintenance, use or entrustment to others of any auto ***owned or operated by or rented or loaned to any insured***. *See id.* Here, the "insureds" are Valle and Silver Star. For the exclusion to apply, either Valle or Silver Star must have: (1) owned the truck operated by Juarez at the time of the subject accident; (2) operated the

11

truck involved in the subject accident; (3) rented the truck operated at the time of the subject accident; or (4) borrowed the truck involved in the subject accident.  It is undisputed that neither Valle nor Silver Star owned the truck involved in the accident.  ORD was the owner of the truck operated by Juarez at the time of the accident.  *See* SOAF No. 7.  Neither Valle nor Silver Star, nor any of their employees, were operating the truck at the time of the accident.  Juarez, who was hired by ORD to fulfill Valle's obligations to Silver Star under the HSA, was operating the truck at the time of the accident.  *See* SOAF Nos. 2, 4, 5, 6, 8, 9, 10.  Neither Valle nor Silver Star borrowed the truck involved in the accident, as ORD did not loan the truck to either Valle or Silver Star.

It is ZAIC's position that the truck operated by Juarez at the time of the accident was leased to Valle by ORD.  *See* SOAF Nos. 15and 16, and Section I(B) of ZAIC's Motion for Summary Judgment, Doc. 92, at 18-22.  It is Valle's position that the ORD truck was not owned, operated, rented or loaned to Valle.  If this Court should find no lease existed between Valle and ORD at the time of the subject accident, the Great Lakes Auto Exclusion Endorsement is inapplicable and does not preclude coverage for Silver Star under the facts of this case.  *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618 (7th Cir. 2002), is instructive.  Subscription Plus was in the business of processing magazine subscriptions.  It made a contract with Y.E.S.!, a sales agency, whereby Y.E.S.! would procure magazine subscriptions for Subscriptions Plus.  *Id*. at 619.  Salesmen employed by Y.E.S.! would travel around the country in vans, selling subscriptions.  *Id*.  Joseph Wild, one of these salesmen, while traveling in a van owned by Y.E.S.!'s owner and driven by another employee of the company, was killed when the van crashed.  *Id.*  In disputing any duty to

defend its insureds, Subscription Plus and it owner, Karleen Hillery, Scottsdale relied on an exclusion in its commercial general liability insurance policy for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." *Id*. at 620.  The Seventh Circuit Court of Appeals found that "*[b]ecause the van was not owned or operated by, or rented or loaned to, either of the insureds, nor used by it (as it would have been had the van's driver been an employee of Subscription Plus), the exclusion is inapplicable*."  *Id*. (emphasis added).

Also instructive is *Bertram v. Progressive Southeastern Ins. Co.*, 2023 WL 5153618, --- F.Supp.3d ----, (W.D. La. Aug. 10, 2023), wherein Mallory Alexander International Logistics, Inc. ("**Mallory**") hired by Convermat Corp. ("**Convermat**") to ship paper towels. *Id*. at *1.  Convermat retained Blue Grace Logistics, LLC ("**Blue Grace**"), a carrier broker, who coordinated with Empire National, Inc. ("**Empire**") for the transport. *Id*. Empire employed Justin Chong to transport the paper towels from Laredo, Texas to Hickory, North Carolina. *Id*.  Mr. Chong experienced a blow-out on the interstate, lost control of the tractor-trailer, and struck another vehicle, killing its driver, Stephen Bertram. *Id*.  At issue in the resulting lawsuit was whether Plaintiffs' claims against Northfield Insurance Company ("**Northfield**"), Convermat's insurer, should be dismissed via Northfield's motion for summary judgment. *Id*. at *2.  Northfield argued, *inter alia*, that Plaintiffs' claims should be dismissed based upon an auto exclusion in Northfield's commercial general liability policy.  *Id*.  The subject auto exclusion stated as follows:

Convermat's CGL Policy contains the following Aircraft, Auto or Watercraft Exclusion Endorsement, which states that the CGL Policy does not apply to:

> **g. Aircraft, Auto or Watercraft**
> "Bodily injury" or "property damage" **arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, an agent of any insured, or an independent contractor providing services for or on behalf of any insured**. Use includes operation and "loading and unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use of entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, an agent of any insured, or an independent contractor providing services for or on behalf of any insured.

*Id*. at *4 (emphasis in original).

Northfield argued that the exclusion unambiguously precluded coverage for the Plaintiffs' claims because their complaint arose from an automobile collision. *Id*. Plaintiffs argued that the duties breached by Convermat did not flow from the use of an automobile, but that the duties were contractual and completely independent from the use of an automobile. *Id*. Plaintiffs further relied upon *LeJeune v. Allstate Ins. Co.*, 365 So.2d 471 (La. 1978), wherein the Louisiana Supreme Court stated:

> An exclusion clause in a liability policy is strictly construed against the insurer and in favor of coverage, if more than one interpretation is possible. Consonant with this principle, the decisions we could find hold that, where the automobile use exclusion clause is sought to be applied so as to avoid coverage for injuries otherwise covered by a general liability policy, the exclusion clause does not apply where the insured's act is a result of negligence independent of, even though concurring with, his use of an automobile ....

14

*Id*. at \*4 (citing *LeJeune*, 365 So. 2d at 479). The Court agreed, finding that the Plaintiffs had alleged Convermat breached its contractual duties to Mallory under a Warehousing Agreement or impliedly authorized unsafe work practices of Mallory as an independent contractor.  *Id*. Significantly, the Court further stated:

> Additionally, ***neither Convermat nor Mallory owned, operated, rented, or loaned the Freightliner Cascadia 125 tractor towing a 2017 Great Dane trailer that allegedly struck Mr. Bertram's vehicle. Thus, Convermat's alleged failure to instruct Mallory is negligence outside the scope of the Policy's Auto Exclusion.*** This part of the motion will be denied.

*Id*. (emphasis added).  Thus, the Court denied Northfield's motion for summary judgment, finding the auto exclusion did not apply under the circumstances.  *Id*.

Here, the Great Lakes auto exclusion is almost identical to the exclusion at issue in *Bertram*.  The only difference is that the *Bertram* policy added the following language to the end of the second paragraph: "an agent of any insured, or an independent contractor providing services for or on behalf of any insured."  *Id*. at \*4. As in *Bertram*, the vehicle involved in the subject accident was owned by an independent contractor, ORD, who was hired by another entity, Valle, to fulfill obligations owed to yet another entity, Silver Star, pursuant to an agreement to which the vehicle's owner was not a party, the HSA. Similar to Convermat's position in *Bertram,* here the Second Amended Petition in the Underlying Suit alleges negligent acts or omissions as to Valle. These acts or omissions occurred in relation to Valle's performance of its obligations owed to Silver Star pursuant to contract. Thus, as in *Bertram,* the claims asserted against Valle are independent from the use of an automobile, and the auto exclusion of the Great Lakes policy does not apply.

Further, regardless of whether a lease existed between Valle and ORD for the use of the truck involved in the subject accident, applying the Auto Exclusion Endorsement to deprive Silver Star of additional insured coverage would render the coverage obtained by Valle to protect Silver Star pursuant to the HSA of no effect, resulting in illusory coverage. *See* arguments and authorities set forth in Section I(B), *supra*.

Also notable is the inconsistency of Great Lakes' position that its policy purportedly provides auto coverage for one vehicle not involved in the subject accident, but excludes coverage for the vehicle involved in the subject accident.   Great Lakes states in paragraph 9 of its Statement of Material Facts that its policy included coverage only for a 1999 Mack CH 613, with a VIN ending in 0371. *See* MSJ, Statement of Facts, ¶ 9.   Instead of citing its own policy to support this allegation, Great Lakes cites instead a Commercial Insurance Application, Doc. 93-2.   Indeed, the undersigned is unable to locate any reference to auto coverage for this 1999 Mack truck in the policy provided by Great Lakes in discovery or the policy attached to Great Lakes' MSJ.   *See* Doc. 93-1.   Nor does the Great Lakes Common Policy Declarations include any reference to a premium charged for auto coverage for the 1999 Mack truck. *See* Doc. 93-1, at page 1. Great Lakes references only an insurance application for this purported "coverage," then proceeding to argue for the ORD truck  to be excluded by its auto exclusion for owned, operated, borrowed or rented autos except mobile equipment. Great Lakes offers no explanation for how its auto exclusion would apply to preclude coverage for bodily injury caused by the ORD truck, but would purportedly provide coverage for the 1999 Mack CH 613 which is not even referenced in its own policy.  While Great Lakes appears willing to write coverage into its

policy where the language of the policy does not support any such coverage, it seeks here to render illusory any coverage for its additional insured, Silver Star, when such coverage was bargained for by its named insured, Valle.

### B. The Great Lakes Independent Contractors Exclusion does not exclude coverage for Silver Star for the underlying lawsuit.

Great Lakes cites its Independent Contractors Exclusion Endorsement, asserting it operates to exclude coverage for Silver Star under the Great Lakes policy.   The endorsement states as follows:

> This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or medical payments arising out of:
>
>     a)  the acts or omissions of independent contractors while working on behalf of any insured, or
>
>     b)  the negligent:
>         (i)   hiring or contracting;
>         (ii)  investigation;
>         (iii) supervision;
>         (iv) training;
>         (v)  retention;
>
> of any independent contractor for whom any insured is or ever was legally responsible and whose acts or omissions would be excluded by (a) above.
>
> As used throughout this endorsement, the term "Independent Contractors" includes Subcontractors.

*See* Doc. 93-1, at page 34.  Thus, the endorsement purports to exclude from coverage any claim for bodily injury resulting from the acts or omissions of independent contractors (such as ORD) while working on behalf of any insured (Valle or Silver Star).

If the endorsement operated to exclude from coverage Mackey's injury resulting from the acts or omission of ORD (who was working for Valle to fulfill Valle's obligations

pursuant to the HSA (*see* SOAF Nos. 2, 3, 4, 9, 10) or Juarez (who was working for ORD

to fulfill Valle's obligations pursuant to the HSA (*see* SOAF Nos. 6, 7, 8, 9, 10, 11), the

coverage purportedly provided to Silver Star pursuant to the Additional Insured

Endorsement and the insured contract provisions of the Great Lakes policy is rendered

illusory.

It is undisputed that the HSA required Valle to indemnify Silver Star against any and

all liability arising out of the services performed by Valle pursuant to the HSA.  *See* SOAF

No. 1. It is undisputed that the HSA required Valle to obtain both automobile and

commercial general liability insurance coverage, naming Silver Star as an additional

insured on a primary and non-contributory basis, without restriction as to fault or liability.

*See* SOAF No. 1.  The Additional Insured Endorsement in the Great Lakes policy states as

follows:

A. Section II-Who Is An Insured is amended to include as an additional insured the
   person(s) or organization(s) shown in the Schedule, but only with respect to
   liability for "bodily injury", "property damage" or "personal and advertising
   injury" caused, in whole or in part, by:

   1. Your [Valle's] acts or omissions; or
   2. The acts or omissions of those acting on your [Valle's] behalf;

   in the performance of your [Valle's] ongoing operations for the additional
   insured(s) [Silver Star] at the location(s) designated above.

*See* Doc. 93-1 at page 35.  By its clear and unambiguous terms, the Additional Insured

Endorsement clearly provides coverage for Silver Star for bodily injury caused to Mackey

through (1) the acts or omissions of Valle; or (2) the acts or omissions of those acting on

Valle's behalf (ORD and Juarez) in the performance of Valle's ongoing operations for

Silver Star.  *See id.*  To interpret the Great Lakes Independent Contractor Endorsement to exclude in its entirety the very coverage the Additional Insured Endorsement provides renders the additional insured coverage obtained by Valle for Silver Star pursuant to the provisions of the HSA completely useless and illusory.  *See, e.g., Yousuf v. Cohlmia*, 718 F. Supp. 2d 1279, 1291 (N.D. Okla. 2010), *aff'd*, 741 F.3d 31 (10th Cir. 2014) ("To provide that coverage and then to exclude it in the same policy would be inconsistent. It renders the coverage provisions illusory and the exclusions ambiguous."); *Yousuf v. Cohlmia*, 741 F.3d 31, 42 (10th Cir. 2014) (refusing to apply policy provisions which would have excluded coverage for willful violation of Oklahoma's libel or slander penal statutes where policy explicitly provided coverage for personal injury for the publication of a libel or slander, finding exclusion of coverage would render coverage provision illusory); and *Express Servs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* No. CIV-12-222-R, 2012 WL 12865257, at *5 (W.D. Okla. Nov. 7, 2012) ("Illusory coverage means that the policy, when read as a whole provides no coverage at all. Only where there is no possibility under any set of facts for coverage is the policy deemed illusory.") (citing *The Employers' Fire Ins. Company v. Berg*, 2007 WL 273559 at * 4 (N.D. Ill. Jan 25, 2007)(No. 05-C-4710)( citation omitted)).

Great Lakes concedes that "an insurance policy should be construed in light of its predominant purpose—to provide coverage to the insured."  *See* MSJ, at 10 (citing *Lutheran Benev. Ins. Co. v. Nat'l Catholic Risk Retention Grp., Inc.*, 939 F.Supp. 1506, 1510 (N.D. Okla. 1995), and that "[a]mbiguous insurance policy terms will therefore be interpreted 'most strongly against the insurer and liberally in favor of the insured.'" *Id.*

Applying these principles, and in light of the arguments and authorities set forth above, ZAIC respectfully submits that application of the Independent Contractors Exclusion Endorsement would defeat the very coverage Valle elected with the Additional Insured Endorsement, leaving Valle in breach of the HSA as to its obligations to obtain the required insurance.  Nor can Great Lakes validly assert that ORD and Juarez were not engaged in the performance of Valle's ongoing operations for Silver Star at the time of the subject accident.  *See* SOAF Nos. 2 (ORD had been hired by Valle and was working for Valle at the time of the accident); 3 (ORD was paid by Valle); 8 (Juarez was acting in the course and scope of his employment with ORD at the time of the accident); 6 (ORD gave Juarez a job); 7 (at the time of the accident, Juarez was operating a truck owned by ORD); 9 (it was Juarez's understanding at the time of the accident that ORD was working for Valle); 10 (Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA).

Instructive in this regard is *Marathon Ashland Pipe Line LLC v. Maryland Casualty Company*, 243 F.3d 1232 (10th Cir. 2001). In *Marathon*, Marathon Ashland Pipe Line LLC ("**Marathon**"), a company that operated an energy pipeline and related properties, entered into a service contract with Steel Structures, Inc. ("**SSI**"), a building erection company, covering any work SSI would perform at Marathon's request. *Id.* at 1234-35.  Pursuant to the parties' service contract, SSI acquired a liability insurance policy with Maryland Casualty and named Marathon as an additional insured under that policy.  *Id*. at 1235. Marathon requested SSI hire Justis Berg to work at Marathon's direction for the summer, and Marathon directed and controlled Berg's work assignments, trained and supervised

20

Berg, and reimbursed SSI's expenses related to Berg. *Id*. Berg was subsequently injured while mowing a steep incline at Marathon's site when the front-loader he was driving overturned. *Id*. Berg tendered his injury claim to Maryland Casualty, who denied his request for indemnification based on the policy's workers' compensation and employee exclusions. *Id*.

In determining whether coverage was available to Marathon as an additional insured under the additional insured endorsement of the Maryland Casualty policy, the Tenth Circuit Court of Appeals concluded that Marathon qualified as an additional insured under the endorsement for its liability to Mr. Berg. *Id*. at 1237. The Court specifically rejected the district court's holding that Marathon's liability did not arise out of SSI's activities, stating:

> Our review of the undisputed facts convinces us there was a sufficient causal connection between SSI's operations and Mr. Berg's injuries to trigger the additional insured endorsement. . . . Marathon's liability must be 'the natural and reasonable incident or consequence of' SSI's ongoing operations for Marathon, 'the causal connection being reasonably apparent.'
>
> * * *
>
> . . . What is material, and indeed decisive, is that Mr. Berg was present and working at Marathon's site due to SSI's agreement with Marathon to hire and pay individuals who were to work at Marathon's complete direction and control. . . .
>
> * * *
>
> In summary, we hold that Mr. Berg's injuries arose out of SSI's operations because Mr. Berg's presence at the Casper site was a natural consequence of SSI's activity of hiring him and paying his salary while releasing him to Marathon's control. Marathon therefore qualifies as an additional insured under the policy.

*Id*. at 1239 (citations omitted).

Here, just as Mr. Berg was performing work for SSI to satisfy SSI's obligations under its contact with Marathon, Juarez was performing work through ORD to satisfy Valle's obligations under its contract with Silver Star, the HSA. Just as the Maryland Casualty policy provided additional insured coverage for Marathon for bodily injury sustained by Berg under these circumstances, the Great Lakes policy provides additional insured coverage for Silver Star for bodily injury sustained by Mackey, as Mackey's injury was caused by Juarez/ORD while they were acting on Valle's behalf in the performance of Valle's ongoing operations for Silver Star. *See* Doc. 93-1, at page 35.

### C. Great Lakes has a duty to defend and indemnify Silver Star due to the HSA qualifying as an insured contract under its policy.

The HSA falls within the "insured contract" definition of the Great Lakes Policy because it is an agreement pertaining to Valle's business under which Valle assumes tort liability of another party to pay for bodily injury or property damage to a third person (Mackey) for bodily injury or property damage caused by Valle **_or_** "by those acting on [Valle's] behalf. . . ." *See* Doc. 93-1, at Amendment of Insured Contract Definition. While the Great Lakes Policy contains an exclusion for Contractual Liability, such does not apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' **_occurs subsequent to the execution of the contract or agreement_**." *See* Doc. 93-1, at Section I, Exclusions (emphasis added). The HSA was entered on February 7, 2019, prior to the accident which is the subject of the underlying lawsuit.

Pursuant to the HSA, Valle was required to defend and indemnify Silver Star. *See* Doc. 94-1, at page 2, Paragraph 2. Because the HSA is an insured contract under the Great Lakes policy and no exclusion applies, Great Lakes has a duty to defend and indemnify Silver Star. Instructive in this regard is *Nuvell Nat'l Auto Finance, LLC v. Monroe Guaranty Ins. Co.*, 736 S.E.2d 463 (Ga. Ct. App. 2012), as it presents an analogous factual scenario. In *Nuvell,* the wife of a vehicle owner's friend who was struck and killed by a tow truck during an attempted repossession of the vehicle brought an action against the tow truck driver, the field repossession company, the repossession management company, and the financing company that ordered the repossession. Nuvell National Auto Finance, LLC ("**Nuvell**") provided financing to Lidie Joseph Clements to purchase a 2004 Dodge Ram truck. *Id*. at 465. Nuvell faxed a request for repossession of the truck to Renaissance Recovery Solutions, LLC ("**Renaissance**"), a repossession management company with which Nuvell had a contract for repossession services. *Id*. Monroe Guaranty Insurance Company ("**Monroe**") issued three policies to Renaissance, including a Commercial Auto Policy. *Id*. On March 1, 2006, Nuvell and Renaissance had entered into an indemnity agreement pursuant to which Nuvell was issued a certificate of insurance reflecting Monroe as the insurer. *Id*. Nuvell was not added to the policy as a named insured. *Id*.

After being given the repossession assignment by Nuvell, Renaissance contacted Renovo Services, LLC ("**Renovo**"), a repossession company, to pick up the Dodge Ram. *Id*. Renovo retained several independent contractors, including Michael Brown ("**Brown**"), for repossessing vehicles. Renovo owned the wreckers, and the drivers leased them on a per job basis. When Brown went to repossess the truck, Clements' friend, William Jacobs,

Jr., was run over by the tow truck and killed.  *Id*.  In the underlying lawsuit, Pamela Jacobs

sued Michael Brown, Nuvell, Renaissance, and Renovo for wrongful death, wrongful

repossession, negligent hiring and retention, and other claims. The Jacobs case proceeded

to trial and the jury awarded a verdict of $2.5 million.  *Id*. at 401. Judgment was entered

accordingly and was satisfied. *Id*. Nuvell filed a third-party claim against Renaissance and

Monroe, claiming it was an insured under the Commercial Auto Policy and that

Renaissance had agreed to indemnify it.  *Id*. at 401. Nuvell appealed from the trial court's

denial of its motion for summary judgment against Monroe and the grant of Monroe's

motion for summary judgment on the basis that Nuvell was not an insured. *Id*.

The Monroe policy listed Renaissance as the named insured, although a later

endorsement was issued which stated that the named insured was amended to include

Renovo Services.  *Id*. at 404.  The Monroe policy provided coverage for non-owned autos,

which was defined as follows:

> those "autos" you do not own, lease, hire, rent or borrow that are used in connection
> with your business.  This includes "autos" owned by your "employees," partners (if
> you are a partnership), members (if you are a limited liability company), or members
> of their households but only while used in your business or your personal affairs.

*Id*.  The Georgia Court of Appeals found that the trial court had erred in determining the

tow truck owned by Renovo and operated by Brown was not a non-owned auto as to

Renaissance.  *Id*. at 406-07.  The Court further found error with the trial court's

determination that the tow truck was not used in connection with the business of

Renaissance.  *Id*. at 407.  The Court stated:

> In determining whether the tow truck was used "in connection with" the business of
> Renaissance, the trial court relied on the standard set out in *CMH Homes v. United*

24

*States Fidelity & Guaranty Co.,* 2007 U.S. Dist. LEXIS 12795 (E.D.Tenn.2007), with which we agree. . . . Because the phrase "in connection with the business" of Renaissance is not defined in the Monroe policy, it is to be given its ordinary and plain meaning, avoiding a technical or strained construction, and any ambiguity is to be resolved in favor of Renaissance. *Hosking v. State Farm Mut. Automobile Ins. Co.,* 198 Mich.App. 632, 633, 499 N.W.2d 436 (1993).

\* \* \*

. . . The March 1, 2006 agreement between Nuvell and Renaissance provided in paragraph 8 that

> [c]ontractor [Renaissance] will indemnify and hold harmless [Nuvell] ... from any and all liabilities, losses, damages costs, and expenses (including reasonable attorneys' fees and legal expenses), suits, and/or causes of action ... arising out of [Renaissance's] negligent, reckless, or willful misconduct in the performance of any Services under this Agreement, and any Services performed by any entity, person or company to which Contractor assigns Services whether with ***\*409*** or without knowledge of [Nuvell], and from [Renaissance's] breach of any covenant, representation or warranty set forth in this agreement or in [Nuvell's] Policy on Repossession and Location Information.

The insurance policy provides in Section II, subsection "B. Exclusions" that

> [t]his insurance does not apply to any of the following: ... 2. Contractual Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages: a. Assumed in a contract or agreement that is an "*insured contract* " provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or b. That the "insured" would have in the absence of the contract or agreement. (Emphasis supplied.)

In Section V–Definitions, subsection H 5, "insured contract" is defined as

> [t]hat part of any other contract or agreement pertaining to your business ... under ***\*\*471*** which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

According to Section IV, subsection B 5, "Other Insurance," sub-subsection c. provides that liability coverage is primary for any liability assumed under an "insured contract."

> **Therefore, Nuvell's liability assumed by Renaissance under the indemnity agreement shifts to Monroe because coverage under the Monroe policy applies to any liability of Renaissance resulting from the lawsuit**. Accordingly, Renaissance was entitled to summary judgment on this ground also. . . .

*Id*. at 407-09 (italic emphasis in original, bold emphasis added).

In the instant case, Silver Star is in the position of Nuvell; Valle is in the position of Renaissance; Great Lakes is in the position of Monroe; ORD is in the position of Renovo; and Juarez is in the position of Brown. The indemnity agreement in *Nuvell* is similar to the HSA; the contractual liability exclusion in *Nuvell* is similar to the contractual exclusion in the Great Lakes policy; and the definition of "insured contract" in *Nuvell* is similar to the definition of "insured contract" in the Great Lakes policy. The Great Lakes Policy contains an Additional Insured Endorsement naming Silver Star as an additional insured. *See* SOAF No. 14.

Because Valle assumed liability under the HSA's indemnity agreement for any claims brought against Silver Star in relation to any claims arising out of the services provided by Valle (and contractors hired by Valle), under the indemnity agreement the liability shifts to Great Lakes because Great Lakes' coverage under its policy applies to any liability of Valle resulting from the underlying lawsuit. *See Nuvell*, 736 S.E. 2d at 409. Great Lakes argues "Valle Trucking did not cause the damage claimed in the lawsuit. And further, since Juarez was not driving for Valle Trucking, but for ORD Trucking, no one acting on behalf of Valle Trucking caused the damage, therefore, the exclusion of contract indemnity type damages applies to preclude coverage." *See* MSJ, at 12. Great Lakes' argument is divorced from the facts gleaned through discovery in this case and in the underlying suit. It is

undisputed that ORD had been hired by Valle and was working for Valle at the time of the Accident (*see* SOAF No. 2); Juarez testified it was his understanding at the time of the subject collision that ORD was working for Valle (*see* SOAF No. 9); and Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HSA (*see* SOAF No. 10). Under the facts presented, it is clear that ORD and Juarez were both acting on behalf of Valle at the time of the accident, and as such, the HSA is an insured contract under the Great Lakes policy.

## Conclusion

As set forth herein, the Great Lakes policy provides for defense and indemnity of Silver Star pursuant to the HSA qualifying as an insured contract.  The Auto Exclusion and Independent Contractors Exclusion in the Great Lakes Policy do not eviscerate the coverage granted to Silver Star pursuant to the Additional Insured Endorsement, as applying the referenced exclusions would result in illusory coverage purchased by Valle to satisfy its obligations under the HSA.

WHEREFORE, Defendant/Third-Party Plaintiff Zurich American Insurance Company respectfully requests that the Court deny Great Lakes' Motion for Summary Judgment in its entirety, and award to ZAIC any other relief to which it may be entitled.

Respectfully Submitted,

**ASTON | MATHIS | CAMPBELL PLLC**

By *s/Amy E. Hampton*

    **RACHEL C. MATHIS, OBA #16360**
    **AMY E. HAMPTON, OBA # 20235**
    2642 East 21st Street, Suite 250
    Tulsa, OK  74114
    (918) 949-9966
    FAX: (918) 949-9968
    E-Mail: rmathis@amlawok.com
    ahampton@amlawok.com
    Attorney for Defendant/Third-Party Plaintiff
    Zurich American Insurance Company

## <u>CERTIFICATE OF SERVICE</u>

I, Amy E. Hampton, hereby certify that on this 12th day of December, 2023, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system:

Michael S. Linscott
Doerner, Saunders, Daniel & Anderson, L.L.P.
Two West Second Street, Suite 700
Tulsa, OK 74103-3117
*Attorney for Great Lakes Insurance SE*

Brian M. Keester
Doerner, Saunders, Daniel & Anderson, L.L.P.
2 West Second Street, Suite 700
Tulsa, OK 74103-3117
*Attorney for Great Lakes Insurance SE*

Emily E. Williams
Doerner, Saunders, Daniel & Anderson, L.L.P.
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
*Attorney for Great Lakes Insurance SE*

J. Chris Horton
J. Chris Horton, PC
PO Box 576
El Reno, OK 73036
*Attorney for Silver Star Construction Company, Inc.*

James A. Scimeca
Burch, George & Germany
1500 City Place Bldg.
204 N. Robinson, Ste 1500
Oklahoma City, OK  73102
*Attorney for Tylon Mackey*

Ryan Polchinski
Law Offices of Daniel M. Davis
300 N. Walnut Ave.
Oklahoma City, OK 73104
*Attorney for Tylon Mackey*

Andrew Polchinski
Law Offices of Daniel M. Davis
300 N. Walnut Ave.
Oklahoma City, OK 73104
*Attorney for Tylon Mackey*

Bradley E. Bowlby
Starr, Begin & King, PLLC
1800 South Baltimore, Suite 550
Tulsa, OK 74119
*Attorney for Progressive Northern Insurance Company*

Christopher C. King
Starr, Begin & King, PLLC
1800 South Baltimore, Suite 550
Tulsa, OK 74119
*Attorney for Progressive Northern Ins. Co.*

*s/Amy E. Hampton*
**AMY E. HAMPTON**

AEH/aeh