## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **1. GREAT LAKES INSURANCES SE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No: 5:22-cv-00702-JD** |
| | ) |
| **2. FREDY VALLE d/b/a VALLE** | ) |
| **TRUCKING,** | ) |
| **3. SILVER STAR CONSTRUCTION** | ) |
| **COMPANY, INC.,** | ) |
| **4. TYLON MACKEY,** | ) |
| **5. ISRAEL JUAREZ,** | ) |
| **6. ORD TRUCKING, INC., and** | ) |
| **7. ZURICH AMERICAM INS. CO.,** | ) |
| | ) |
| **Defendants.** | ) |
| ------------------------------------------------ | ) |
| **8. ZURICH AMERICAN INS. CO.** | ) |
| | ) |
| **Third-Party Plaintiff** | ) |
| | ) |
| **9. BERKSHIRE HATHAWAY** | ) |
| **HOMESTATE INS. CO., and** | ) |
| **10. PROGRESSIVE NORTHERN** | ) |
| **INS. CO.** | ) |
| | ) |
| **Third-Party Defendants.** | ) |

## THIRD-PARTY DEFENDANT PROGRESSIVE NORTHERN INS. CO'S RESPONSE TO THIRD-PARTY PLAINTIFF ZURICH AMERICAN INS. CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ 1

TABLE OF AUTHORITIES............................................................................................. 2

INTRODUCTION ............................................................................................................ 4

RESPONSE TO ZURICH'S STATEMENT OF MATERIAL FACTS ............................ 4

COUNTERSTATEMENT OF MATERIAL FACTS ....................................................... 7

SUMMARY JUDGMENT STANDARD ........................................................................ 10

ARGUMENT AND AUTHORITY ................................................................................. 11

    I. ZURICH'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
    PROGRESSIVE SHOULD BE DENIED ............................................................. 11

        A. Juarez and Silver Star are not insureds under the Progressive Policy ............. 12

        B. The Insured Contract Provisions of the Progressive Policy do not apply ........ 21

        C. The Form endorsement does not require Progressive to defend Silver Star .... 21

CERTIFICATE OF SERVICE................................................................................................

## TABLE OF AUTHORITIES

Fed.R.Civ.P. 56 .................................................................................................. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 .................................... 10

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) ............................... 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 ....................................... 10

*MacKenzie v. City of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) ............................. 11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 . 11

*JP Energy Marketing v. Commerce and Industry Insurance Co.*, 2018 OK CIV APP 14, 412 P.3d 121 ....................................................................................................... 13

*Union Standard Ins. Co. v. Hobbs Rental Corp.*., 566 F.3d 950 (10th Cir., 2009) .... 16, 20

*Bamber v. Lumbermens Mut. Cas. Co.*, 451 Pa.Super. 548, 680 A.2d 901, 903 (1996) .. 17

*Adams v. Thomason*, 753 So.2d 416, 420-21 (La. Ct.App.2000) .................................... 19

*Berry v. Fed. Kemper Life Assurance Co.*, 136 N.M. 454, 99 P.3d 1166, 1183 (2004) .. 19

*Andres v. Okla. Farm Bureau Mut. Ins. Co.*. 2009 OK CIV APP 97, 227 P.2d 1102 ...... 20

*Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, 73 P.3d 865 .............................................. 20

*Haworth v. Jantzen*, 2006 OK 35, 172 P.3d 193 ............................................................. 20

47 O.S. 230.30 .................................................................................................................. 22

**COMES NOW** Third-Party Defendant Progressive Northern Insurance Company ("Progressive") by and through its attorneys of record of the law firm of Starr, Begin & King, PLLC, Tulsa, Oklahoma, and hereby responds and objects to Third-Party Plaintiff Zurich American Ins. Co.'s motion for an order of summary judgment in its favor (Dkt. #92). In support, Progressive would state and aver as follows:

## INTRODUCTION

In this insurance coverage dispute, Third-Party Plaintiff Zurich American Insurance Company ("Zurich") and Third-Party Defendant Progressive Northern Insurance Company ("Progressive") disagree as to whether Progressive's policy, issued to Fredy Valle d/b/a Valle Trucking, extends liability coverage to Silver Star Construction Company, Inc. ("Silver Star"). Zurich, Silver Star's business automobile insurer, seeks a declaration from this Court that Silver Star is covered under Progressive's Policy, and thus Silver Star must be defended and indemnified should the plaintiff in an underlying lawsuit, Tylon Mackey, be granted a judgment against Silver Star.

## RESPONSE TO ZURICH'S STATEMENT OF MATERIAL FACTS

1. Undisputed.

2. Undisputed that Mackey's Second Amended Complaint (2AP) alleges that Silver Star is vicariously liable for the negligence of Juarez. It does not allege that Silver Star is vicariously liable for the negligence of Valle Trucking. *See* Ex. "4": Mackey's 2d Am. Pet.

3. Undisputed.

4. The Hauling Service Agreement is self-explanatory. *See* Ex. "1": Hauling Svc.

Agreement.

5. The Hauling Service Agreement is self-explanatory. *Id.*

6. The Hauling Service Agreement is self-explanatory. *Id.*

7. The Hauling Service Agreement is self-explanatory. *Id.*

8. Undisputed.

9. Disputed that Mr. Ordones testified that Valle Trucking "hired" him. The term "hired" is nowhere used in the excerpt cited. Disputed as to whether said testimony establishes that either Juarez or Silver Star were "insured" under the Progressive Policy. *See* Prog. SOMF 7-13.

10. Undisputed that Mr. Ordones testified as such. Disputed as to whether said testimony establishes that either Juarez or Silver Star were "insured" under the Progressive Policy. *See* Prog. SOMF 7-13.

11. Disputed as unsupported by evidence. Zurich's exhibit 5 does not appear to contain the pages referenced in support of the MSJ.

12. Disputed as unsupported by evidence. Zurich's exhibit 5 does not appear to contain the pages referenced in support of the MSJ. Undisputed that ORD admitted that Juarez was acting in the course and scope of his employment with ORD.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Juarez testified he "thought" that ORD was working for Fredy Valle Trucking at the

time of the accident.  What Juarez thought does not establish any relationship between Valle Trucking and ORD as undisputed fact.

17. Disputed.  Valle's response to the deposition question is unintelligible.  He was also speaking through an interpreter.

18. Undisputed.

19. Disputed that Valle testified that drivers were to document "important load details". The tickets speak for themselves as to the fields set forth thereon.

20. Disputed.  The tickets show inconsistencies and do not necessarily establish that Valle leased the trucks ORD owned.  Valle testified that ORD was "subcontracted" to Valle, not that Valle was leasing the trucks.  *See* Dkt. #92-3, 33:25 – 34:4.

21. Undisputed that the document cited was filed with Transportation Division of the Oklahoma Corporation Commission on July 20, 2007.

22. Undisputed.

23. Undisputed.

24. Undisputed.

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Undisputed that the document cited was filed with Transportation Division of the Oklahoma Corporation Commission on December 5, 2019.

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Undisputed.

36. Undisputed.

37. Undisputed.

38. Undisputed.

39. Undisputed.

40. Undisputed.

## **PROGRESSIVE'S COUNTERSTATEMENT OF MATERIAL FACTS**

The Incident

1.   On February 7, 2019, Valle Trucking entered into a hauling services agreement ("Agreement") with Silver Star Construction Company, Inc. ("Silver Star").  *See* Ex. "1": Hauling Svc. Agreement.

2.   Silver Star is in the road construction business.  *Id*.

3.   Valle Trucking agreed to haul materials for Silver Star as an independent contractor. *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #9.

4.   Valle Trucking sub-contracted some of the work assigned to it by Silver Star to a third entity, ORD Trucking, Inc.  *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #9.

7

5.   On September 4, 2019, Israel Juarez and another driver, Tylon Mackey, were allegedly involved in an automobile collision at the intersection of Murphy Street and State Highway 51 in the city of Stillwater, Payne County, Oklahoma ("Collision").  *See* Ex. "3": Juarez Depo., 63:14 – 64:6; Ex. "4": Mackey's 2d Am. Pet.

6.   The Collision allegedly occurred as Mackey, operating a 2012 Harley Davidson motorcycle, was eastbound on SH-51.  Meanwhile, Juarez, operating a 2001 Peterbilt dump truck ("Vehicle"), was northbound on Murphy St.  Juarez allegedly failed to yield the right of way to Mackey.  *See* Ex. "3": Juarez Depo., 63:14 – 64:6; Ex. "4": Mackey's 2d Am. Pet.

7.   At the time of the Collision, Juarez was employed by ORD Trucking.  *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #8; Ex. "3": Juarez Depo., 11:21-24; Ex. "4": Mackey 2d. Am. Pet., ¶ 19; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 19.

8.   At the time of the Collision, Juarez was not employed by Valle Trucking.  *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #8, ROGG #13; Ex. "3": Juarez Depo., 11:21-24; Ex. "4": Mackey 2d. Am. Pet., ¶ 19; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 19.

9.   At the time of the Collision, the truck Juarez was operating was owned by ORD.  *See* Ex. "3": Juarez Depo., 13:12-15; Ex. "4": Mackey 2d. Am. Pet., ¶ 31; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 31.

10. At the time of the Collision, neither Fredy Valle, Sr., nor any employee of Valle Trucking was present.  *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #5, 15.

11. At the time of the Collision, Juarez was on a mission for ORD Trucking.  *See* Ex. "4": Mackey 2d. Am. Pet., ¶ 32-33; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 32-33.

12. Neither Fredy Valle, nor any employee of Valle Trucking supervised any aspect of Juarez's carrying out of his mission for ORD Trucking.  *See* Ex. "2": Valle Rsp. to Pl.'s ROGGS #9, 12, 13, 14, & 15.

13. When Juarez arrived at the job site, his task was given to him and directed by a supervisor/foreman from Silver Star.  *See* Ex. "2": Valle Rsp. to Pl.'s ROGG #9, 12, 13, 14, & 15; Ex. "3": Juarez Depo., 27:15-21, 36:16 – 38:19, 41:12-17, 43:8 – 44:8, 51:11-20.

The Underlying Action

14. On July 8, 2020, Mackey sued Juarez and ORD Trucking.  *See* Ex. "7": Mackey Pet.

15. He claimed his injuries were caused by Juarez's negligent and/or reckless driving and by ORD's alleged negligence in the hiring, training and supervision of Juarez, and the entrustment of the dump truck to Juarez.  *Id*.

16. Mackey subsequently amended his petition to add Valle Trucking and Silver Star, making the same allegations as he did against ORD.  *See* Ex. "4": Mackey's 2d Am. Pet.

17. Mackey's petition does not include any theory that Silver Star is vicariously liable to the former for Valle's alleged negligence.  *Id*.

18. The lawsuit alleges that Silver Star is *directly* negligent for Mackey's injuries.  *Id*.

The Hauling Agreement

19. Article 3 of the Agreement required Valle to "purchase and maintain" a comprehensive general liability insurance, in the amount of $1,000,000.00.  *Id*.

20. Valle Trucking pledged to indemnify Silver Star against liability for damages which Silver Star might incur arising out of the performance of Valle Trucking.   The

indemnification obligations do not apply where the injury or damage sustained arose directly from Silver Star's own negligence.  *Id.*

<u>The Policy</u>

1.  Progressive Policy #04019061-2 ("Policy") lists Valle Trucking as the named insured.  *See* Ex. "8": Progressive Policy.

2.  The Policy's declarations page does not show Silver Star as a named insured.  *Id.*

3.  Moreover, the Policy does <u>not</u> include a Blanket Addl. Insured Endorsement.  *Id.*

4.  The Vehicle at issue is <u>not</u> listed on the Policy's auto coverage schedule.  *Id.*

5.  The Policy does include an Employer's Non-Ownership Liability Endorsement

6.  The Vehicle was not owned by Valley Trucking's employees, partners, members, or members of their households.  *See* Ex. "3": Juarez Depo., 13:12-15; Ex. "4": Mackey 2d. Am. Pet., ¶ 19, 33; Ex. "6": ORD Rsp. to 2d Am. Pet., ¶ 19, 33.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A material fact is one which may affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).  To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him.  *Id.*  The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-

moving party.  *MacKenzie v. City of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action.  *Celotex*, 477 U.S. at 322.  However, a defendant need not disprove a plaintiff's claim, but must only point to "a lack of evidence" on an essential element of that claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  The burden then shifts to the plaintiff to go beyond the pleadings and present facts from which a rational trier of fact could find for him; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein.  *Adler*, 144 F.3d at 671-72.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)(citations omitted).

## <u>ARGUMENT AND AUTHORITY</u>

I.  ZURICH'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PROGRESSIVE SHOULD BE DENIED

The Progressive Policy's ("Policy") insuring agreement provides as follows:

*"Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury, property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**."*

11

The Policy states that "you" refers to "the named insured shown on the declarations page."  Silver Star is not listed as a named insured on the Policy's declaration's page and does not claim to be.  The named insured is Fredy N. Valle Sr d/b/a Valle Trucking.  Zurich nevertheless claims that Progressive owes Silver Star a defense and indemnity in the underlying action anyway.  Progressive is entitled to summary judgment regarding Zurich's MPSJ as to its claims because (A) Juarez and Silver Star are not insureds under the Progressive Policy, (B) the insured contract provisions of the Policy do not apply, and (C) the Form F endorsement does not require Progressive to defend Silver Star.

A.  <u>Juarez and Silver Star are not insureds under the Progressive Policy</u>

The Progressive Policy provides that an "insured" means:

3.  *Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I – Liability to Others*

 *See* Dkt. #94-8.

Zurich claims this subsection entitles Silver Star to a defense under the Progressive Policy.  This argument should fail because (1) Mackey's second amended petition (2AP) does not allege that Silver Star is vicariously liable for the alleged negligence of Valle Trucking.  While the 2AP does allege that Silver Star is vicariously liable for the alleged negligence of Juarez, (2) Juarez is not an "insured" under Progressive's Policy.

**1. Mackey's 2AP does not allege that Silver Star is vicariously liable to Mackey for the alleged negligence of Valle Trucking**

The duty to defend inquiry is based on whether the facts alleged in the underlying

complaint can be fairly read to support coverage.  Under Oklahoma law, an insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage.  This is so regardless of the true facts and merits of the underlying case.  To determine whether the insurer has a duty to defend, the Court must apply the language of the applicable policy to the facts in the complaint.  *JP Energy Marketing v. Commerce and Industry Insurance Co.*, 2018 OK CIV APP 14, ¶ 36, 412 P.3d 121.

> "The duty to defend is triggered by the claims made in underlying litigation, not the ultimate outcomes in those cases. *See Honeywell v. GADA Builders, Inc.*, 2012 OK CIV APP 11, ¶ 26 n.11, 271 P.3d 88 (citing *First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md.*, 1996 OK 105, ¶ 13, 928 P.2d 298).  If, in the underlying litigation, the plaintiffs alleged JP is vicariously liable for the negligence of Global and Wilcrest, the duty to defend has been triggered.  If they allege the harm resulted from JP's own acts and omissions, Wilcrest and Global do not have a duty to defend JP.  JP claims vicarious liability is asserted in the underlying litigation.  BITCO and Navigators have not submitted any evidence to the contrary.[12]  Therefore, we hold BITCO and Navigators owe a duty to defend JP.[13]

In *JP Energy*, the petitions filed in the underlying litigation were not attached to the motions for summary judgment or responses.  *Id*. at fn. 12.  Here, Mackey's second amended petition is part of the record.  *See* Dkt. #94-4.

Here, Silver Star does not appear to claim that Mackey's 2AP alleges that Silver Star is vicariously liable for the negligence of Progressive's named insured, Valle Trucking. Mackey asserts theories of recovery (I) against Juarez, ORD, Valle, and Silver Star, for negligence/negligence per se; (II) against ORD for negligent entrustment of the Vehicle to Juarez; and (III) against Juarez, ORD, Valle, and Silver Star for negligent hiring, training, screening & supervision.  *Id*. Nowhere in his 2AP does Mackey expressly allege that Silver

Star is vicariously liable for the negligence of Valle Trucking.

### 2.  Juarez is not an "insured" under Progressive's Policy

Mackey's 2AP does allege that Silver Star is vicariously liable for the negligence of *Juarez*, the ORD employee operating an ORD-owned Vehicle at the time of the Collision. *See* Dkt. #94-4, ¶ 43.  The problem, of course, is that Juarez is not the named insured under Progressive's policy.  The Policy provide that persons other than the named insured could be "insured", such as:

> 2. "[a]ny person while using, with your permission, an insured auto you own, hire, or borrow…".

*See* Dkt. #94-8, p. 15.

Zurich argues that Juarez is an "insured" under this provision of Progressive's Policy and that Silver Star is therefore entitled to a defense for any vicarious liability it has to Mackey for Juarez's negligence in the underlying action.  This argument should not be well-taken because (i) the record does not establish that the Vehicle was hired/leased by Valle Trucking, and (ii) the Vehicle was not an "insured auto".

### i.  The record does not establish that the Vehicle was hired/leased by Valle Trucking

Zurich argues that the Vehicle owned by ORD and operated by Juarez at the time of the Collision was leased by Valle Trucking.  This claim is wholly unsupported by the record.  Zurich offers no written lease agreement in support of this claim.  Zurich offers no express testimony, from Valle or Ordones, in which either testified that Valle was leasing trucks from ORD.  Valle testified that he subcontracted some of the work assigned to Valle by the

HSA to ORD.  *See* Ex. 92-3, 33:25 – 34:4.  He testified that ORD was in charge of their own trucks, the maintenance thereon, and their drivers, such as Juarez.  *Id*. at 35:7-12.

In support of its claim for a lease, Zurich points to a sheaf of 20 individual trip tickets.  These tickets do not prove that Valle Trucking leased ORD's trucks.  A review of the tickets show haphazard completion.   On ticket No 5578, for example, the lease line is left incomplete.  *See* Dkt. #92-9, p. 18.  On tickets No. 5008 and No. 5009, the lease line indicates Valle Trucking.  *See* Dkt. #92-9, p. 6 & 11.  Valle Trucking presumably did not lease their own trucks in support of the HSA.  The fact that Valle's various subcontractors are listed on a "lease" line on a field ticket is not dispositive of the issue.

In sum, the record simply does not show there was a lessor, lessee arrangement between Valle and ORD.  At the very least, the issue is a question of fact for the jury and not one for summary judgment.

### ii.    The vehicle Juarez was operating at the time of the collision was not an "insured auto" as defined by the Progressive Policy

The Policy defines an "insured auto" as follows:

a.  *Any **auto** specifically described on the **declarations page**; or*
b.  *An additional **auto** for Part I - Liability To Others and/or Part II – Damage To Your Auto on the date **you** become the owner if:*
    *(i) **you** acquire the **auto** during the policy period shown on the **declarations page**;*
    *(ii)    **we** insure all **autos** owned by **you** that are used in **your** business;*
    *(iii)    no other insurance policy provides coverage for that **auto**; and*
    *(iv)    **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.*

c.  *Any replacement **auto** on the date **you** become the owner if:*
    *(i) **you**  acquire  the  **auto**  during  the  policy  period  shown  on  the*

15

*declarations page;*
(ii) *the **auto** that **you** acquire replaces one specifically described on the* ***declarations page** due to termination of **your** ownership of the replaced* ***auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and*
(iii) *no other insurance policy provides coverage for that **auto**.*

The vehicle Juarez was driving at the time of the collision is not listed on the Policy declarations page, nor was it owned by Valle Trucking, or a replacement vehicle as defined by the Policy, thus, is not an "insured auto" as defined by the policy.

Valle Trucking did purchase coverage under the Employer's Non-Ownership Liability Endorsement ("Endorsement"). The Endorsement provides that the Policy definition of an "insured auto" is modified to include a "non-owned auto." A "non-owned auto" means…

> *"…an **auto** that **you** do not own, lease, hire, rent, or borrow, and that is used in connection with **your** business. This includes **autos** owned by **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business or **your** personal affairs."*

The Endorsement does not apply, under the circumstances, because the Vehicle was not being used in connection with Valle Trucking's business. The Court in *Union Standard Ins. Co. v. Hobbs Rental Corp.*., 566 F.3d 950 (10th Cir., 2009) examined an endorsement containing virtually the same language. As with the Policy at issue, the policy in *Union Standard* did not formally define the "in connection with" language. The Court noted, however, that the Endorsement itself "supplies the most obvious example of coverage in its second sentence: privately-owned vehicles driven by [named insured's] employees (or members of their household) in the course of [named insured-related] business or [named

16

insured-related] personal affairs." *Id*. at 953.  The Court explained that:

> "This second sentence indicates that the provision is intended to cover a more
> narrow and foreseeable set of circumstances involving HRC employees or
> members of their household.  For example, an employee or family member's
> vehicle driven to a parts store on company business, or used to haul equipment
> for HRC, would be covered.  Viewing the "in connection with" language in
> the context of the entire provision thus suggests that <u>instead of covering all
> autos somehow related to HRC's business, the policy is intended to apply to
> HRC-affiliated persons operating privately-owned vehicles while performing
> company-related work</u>."

*Id*. (underscore added)(citing *Bamber v. Lumbermens Mut. Cas. Co.*, 451 Pa.Super. 548, 680

A.2d 901, 903 (1996) (an employee's personal vehicle is a non-owned auto used "in

connection with [insured's] business" when used in the course and scope of employee's

employment with the insured).

The Court declined to expand coverage to independent contractors who do business

with the named insured for three reasons: (1) the named insured exercised no control over the

non-owned auto; (2) a reasonable insured would not view the Endorsement as extending

coverage to independent contractors over which the named insured did not exercise control;

and (3) non-expansion is in accord with the common purpose of non-owned policy

provisions.  Applying the *Union* factors, the Court should find that the Vehicle was not an

insured auto, under the circumstances of this case.

### a. Valle Trucking exercised no control over the non-owned auto

At the time of the Collision, Juarez was undisputedly employed by ORD Trucking;

the truck was undisputedly owned by ORD Trucking as well.  Valle Trucking exercised no

control over Juarez in Juarez's operation of the Vehicle at issue.  Valle Trucking did not

operate the Vehicle – only Juarez did.  The accident occurred without direct Valle Trucking's

supervision.  At the time of the Collision, neither Fredy Valle, Sr., nor any employee of

Valle Trucking was present.  Juarez was undisputedly driving the Vehicle in the course and

scope of his employment with ORD.  Neither Fredy Valle, nor any employee of Valle

Trucking supervised any aspect of Juarez's carrying out of his mission for ORD Trucking.

When Juarez arrived at the job site, his task was given to him and directed by a

supervisor/foreman from Silver Star.

> Q: Okay. So let me make sure I'm understanding this picture.  So you arrive to work.  And at some point an employee from Silver Star would tell everyone on the job site, hey, we're about to start doing the loads?
>
> A.  Where to go, what to do.

*See* Ex. "3": Juarez Depo., 41:12-16.

> Q: So, as far as my understanding, just to wrap this up for my understanding, Silver Star was in charge of the dump trucks on the site?
>
> A: Yes
>
> Q: Okay.  And they were in charge of telling the dump trucks when to get to the job site?
>
> A: (Witness nods head)
>
> Q: Is that a yes?
>
> A: Yes.

*See* Ex. "3": Juarez Depo., 43:8-15.

> Q: Okay.  And then Silver Star would tell you how to work?
>
> A: Yes.

18

*See* Ex. "3": Juarez Depo., 44:6-8.

In sum, the record shows that Valle Trucking exercised no control over the Vehicle. Juarez drove it, in the course and scope of his employment with ORD, following the orders of Silver Star supervisors regarding when to get to the job site, when to start working, and how to work – or, as Juarez put it, "where to go, what to do."  The Vehicle at issue is not a non-owned auto per the Endorsement.  *See, e.g., Adams v. Thomason*, 753 So.2d 416, 420-21 (La. Ct.App.2000) (finding that a vehicle is not a non-owned auto "used in connection with" an insured's business when the vehicle's operator was not the insured's employee and the insured lacked control over the vehicle).

> **b. A reasonable insured would not view the Endorsement as extending coverage to independent contractors over which the named insured did not exercise control**

In *Union Standard*, the Court noted extending this policy language to independent contractors would conflict with New Mexico's "reasonable insured" standard. This standard asks what understanding a reasonably intelligent, non-lawyer lay person might glean from the policy, in light of the usual meaning of the words and the circumstances leading to purchase of the policy.  *Id.* at 954 (citing *Berry v. Fed. Kemper Life Assurance Co.*, 136 N.M. 454, 99 P.3d 1166, 1183 (2004).  Oklahoma applies the same standard.  *See Andres v. Okla. Farm Bureau Mut. Ins. Co..* 2009 OK CIV APP 97, ¶ 13, 227 P.2d 1102 ("We do not believe such a distinction can be drawn by the policy language, applied in practice, or interpreted by any reasonable insured person…"); *Spears v. Shelter Mut. Ins. Co.*, 2003 OK

66, ¶ 11, 73 P.3d 865 ("We find the exclusionary language to be clear, straightforward and understandable from the point of view of an objectively reasonable insured.")

The Court determined that a reasonable insured would not view the Endorsement as extending coverage to independent contractors over which the named insured did not exercise control. "Such a broad interpretation of the provision would extend coverage to all businesses [the named insured] hired to transport its equipment. In our view, no reasonable insured party would understand non-owned policy language to apply to such circumstances." *Id*. at 954. Such a reading would result in a strained policy interpretation, which Oklahoma law, like New Mexico law, prohibits. *Haworth v. Jantzen*, 2006 OK 35, ¶ 13, 172 P.3d 193.

### c. Non-expansion is in accord with the common purpose of non-owned policy provisions

In *Union Standard*, the Court noted that its interpretation "accords with the common purpose of non-owned policy provisions." *Union Standard*, 566 F.3d at 954. Such provisions "provide employers with protection from liability based on the doctrine of respondeat superior arising out of an employee's commission of a tort while using their own personal vehicles in the employer's business." *Id*. (citing Lee R. Russ & Thomas F. Segalla, 8A Couch on Insurance § 118.41 (3d ed.2008). While the use of personal vehicles by employees acting on the company's behalf might be covered, independent contractors are not." Accordingly, the Court should find that the Vehicle Juarez was driving at the time of the Collision was not an "insured auto". At the very least, this is a question of material fact for a jury rather than a question of law for the Court.

20

B.  The insured contract provisions of the Policy do not apply

Zurich argues that the HAS agreement between constitutes an "insured contract" as defined by the Progressive Policy.  The Progressive Policy's ("Policy") defines an insured contract as "[t]hat part of any other contract or agreement pertaining to **your** business . . . under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your** employees or agents."  *See* Dkt. 94-8, p. 12.

Zurich argues that the 2AP alleges that Silver Star is vicariously liable for the alleged negligence of Juarez.  Zurich acknowledges that Juarez was an employee of ORD, but argues he was an agent of Valle Trucking.  As set forth in Part I(A)(2)(ii)(a) herein, Juarez was not an agent for Valle Trucking.  *See* Dkt. #94, SOMF #7-13.  Furthermore, the vehicle Juarez was operating was not an insured auto, as required by the insuring agreement.  Accordingly, the insured contract provisions of the Progressive Policy do not apply.

C.  The Form F endorsement does not require Progressive to defend Silver Star

Zurich claims that the Progressive Policy's Form F Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement applies, under the circumstances.  Title 47 O.S. 230.30 provides that said endorsement binds the obligor "to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any carrier for which the carrier is legally liable."  Zurich argues the endorsement "amends the Progressive policy to provide coverage for any auto used in Valle's business."  *See* Dkt. #92, p. 20.

The record shows, however, that at the time of the Collision, Juarez was undisputedly

employed by ORD Trucking; the truck was undisputedly owned by ORD Trucking as well. Valle Trucking exercised no control over Juarez in Juarez's operation of the Vehicle at issue. Valle Trucking did not operate the Vehicle – only Juarez did.  The accident occurred without direct Valle Trucking's supervision.  At the time of the Collision, neither Fredy Valle, Sr., nor any employee of Valle Trucking was present.  Juarez was undisputedly driving the Vehicle in the course and scope of his employment with ORD.  Neither Fredy Valle, nor any employee of Valle Trucking supervised any aspect of Juarez's carrying out of his mission for ORD Trucking.  When Juarez arrived at the job site, his task was given to him and directed by a supervisor/foreman from Silver Star.

In sum, the record shows that Valle Trucking exercised no control over the Vehicle. Juarez drove it, in the course and scope of his employment with ORD, following the orders of Silver Star supervisors regarding when to get to the job site, when to start working, and how to work – or, as Juarez put it, "where to go, what to do."  The Vehicle was not being "operated" by Valle Trucking for the purposes of the Form F endorsement and 47 O.S.§ 230.30.  At the very least, whether it was, or was not, is a genuine issue of material fact for a jury, not a matter for summary judgment.

**WHEREFORE**, premises considered, Third-Party Defendant Progressive Northern Insurance Company respectfully requests the Court deny Zurich American Insurance Company's motion for summary judgment against Progressive, with such other and further relief the Court deems just and equitable.

Respectfully submitted,

**STARR, BEGIN, & KING, PLLC**


s/Bradley E. Bowlby_____
Bradley E. Bowlby, OBA #22847
1800 S. Baltimore Ave., Ste 550
Tulsa, OK 74119
Tele:   (918) 872-0374
Fax:    (918) 592-0381
Email: brad.bowlby@tulsalawyer.org
*Attorney for Def. Progressive Northern Ins. Co.*




## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I electronically transmitted the attached

document to the Clerk of Court using the Electronic Case Filing System for filing.  Based on

the records currently on file in this case, the Clerk of Court will transmit a Notice of

Electronic Filing to those registered participants of the ECF System.

s/Bradley E. Bowlby_____