## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.  GREAT LAKES INSURANCE SE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. CIV-22-00702-JD |
| vs. | ) Judge Jodi W. Dishman |
| | ) |
| 2.  FREDY VALLE d/b/a VALLE TRUCKING; | ) |
| 3.  SILVER STAR CONSTRUCTION COMPANY, INC.; | ) |
| 4.  TYLON MACKEY; | ) |
| 5.  ISRAEL JUAREZ; | ) |
| 6.  ORD TRUCKING, INC. | ) |
| 7.  ZURICH AMERICAN INS. CO., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| _____ | ) |
| | ) |
| 8.  ZURICH AMERICAN INS. CO., | ) |
| | ) |
| Defendant/Third Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| 9.  PROGRESSIVE NORTHERN INS. CO., | ) |
| | ) |
| Third-Party Defendant. | ) |

## DEFENDANT/THIRD-PARTY PLAINTIFF ZURICH AMERICAN INSURANCE COMPANY'S REPLY TO DEFENDANT TYLON MACKEY'S RESPONSE TO THE SUMMARY JUDGMENT MOTIONS FILED BY THE INSURERS

Third-Party Plaintiff Zurich American Insurance Company ("**ZAIC**") respectfully submits its Reply to Defendant Tylon Mackey's ("**Mackey**") Response to the Summary Judgment Motions Filed by the Insurers Response to ZAIC's Motion for Summary Judgment ("**MSJ**").

Mackey's Response adopts ZAIC's arguments regarding ZAIC's claims against Progressive Northern Insurance Company set forth in ZAIC's Motion for Summary Judgment (Doc. 92) ("**MSJ**"), but asserts certain factual disputes and arguments which pertain to ZAIC's MSJ.

<u>**ZAIC's Reply to Mackey's Fact Dispute Regarding ORD Trucking Inc.'s and Israel Juarez's Status as Independent Contractors**</u>

Mackey asserts that insofar as the insurers' motions rely on ORD Trucking, Inc. ("**ORD**") and Jesus Juarez's status as independent contractors of Fredy Valle/Valle Trucking, their motions are deficient. *See* Response, at 2. Mackey asserts that "Silver Star's undisputed right to control Juarez suggests that the three trucking companies were engaged in a joint venture or some other joint enterprise for this project and were not independent contractors as to each other." *Id.*

Mackey refers to Great Lakes' statement of material facts paragraph numbers 16 and 18, and asserts "These facts establishing Silver Star's control over ORD/Juarez show that they are not independent contractors and preclude summary judgment in plaintiff's favor." *See* Response, at 4. ZAIC denies that Juarez was retained by or employed by Silver Star. *See* Doc. 96, at ZAIC's Statement of Additional Facts Which Preclude Summary Judgment in Favor of Great Lakes, paragraphs 6, 7, 8, 11. ORD had been hired by Valle and was working for Valle at the time of the Accident (*id.* at paragraph 2); ORD admitted that Juarez was acting in the course and scope of his employment with ORD at the time of the Accident (*id.* at paragraphs 5 and 8); Juarez testified at his deposition that ORD gave him a job (*id.* at paragraph 6); at the time of the Accident, Juarez

1

was operating a truck owned by ORD (*id.* at paragraph 7); Juarez testified it was his understanding at the time of the subject collision that ORD was working for Valle (*id.* at paragraph 9); Valle testified that any of the trucks providing services for Silver Star through Valle were providing services subject to the HAS (*id.* at paragraph 10); Juarez testified he was paid for his work by ORD (*id.* at paragraph 11); for loads transported by an ORD vehicle and driver, "ORD" appears in the "LEASE" field of the Valle field ticket, evidencing Valle's lease of ORD vehicles to perform services to Silver Star under the Hauling Service Agreement ("HSA") (*id.* at paragraph 13). Further, Jesus Ordones, the owner of ORD, testified at his deposition that it was his decision to put Juarez in one of his trucks to provide to Valle (*see* Deposition Transcript of Jesus Ordones, July 20, 2023, attached as **Exhibit 1**, at 60:22-61:1. Ordones further testified as follows:

> Q. . . .
>   And I believe your testimony was something to the effect of they will tell you when to show up at the job site and start the day. Is that fair?
> A. Yes.
> Q. And then once you arrive as a truck driver at that job site they load your truck?
> A. Yes.
> Q. And then once you arrive as a truck driver at that job site they load your truck?
> A. Yes.
> Q. And then the contractor then tells you where to deliver that load?
> A. Yes.
> Q. Is that fair?
> A. Yes.
> Q. And, so, and you do that as a truck driver. You pick up the load and you're told where to deliver it and you haul it to that location and you unload it. Is that fair?
> A. Uh-huh.
> Q. Is that pretty much the process on every job you work? You are told to arrive at a certain time, at a certain location, and pick up a load?
> A. Yes.
> Q. Okay. And then that company that you're hauling the load for, they tell you where to deliver the load, that's common?
> A. Yes, sir.
> Q. Okay. But as far as how you operate your truck and how you drive that truck as a commercial driver, that's your job as a truck driver, is that fair?

A.  Yes.

Q.  The company that's hiring you to transport that load, they don't' sit in the truck with you and tell you how to operate that truck, is that fair?

A.  (Witness nods head).

Q.  Is that a yes?

A.  No. They don't tell me how to drive the truck.

. . .

Q.  It's not Silver Star's job to tell you how to secure the load; is that fair?

A.  No.

Q.  No, it's not fair, or yes, that is fair?

A.  Not me. We are the guys that secure the load, you know.

Q.  Truck driver secures the load?

A.  Yes.

. . .

Q.  . . . As a commercial truck driver, the company or person that you're hauling the load for, they also – they don't tell you when to stop at a stop sign; is that fair?

A.  No, they don't.

Q.  They don't tell you what speed to drive; is that fair?

A.  Yes.

. . .

Q.  Okay. And my point is, the job of a truck driver in operating that truck, that is solely the truck driver's job; is that fair?

A.  Yes, sir.

*See* Exhibit 1, at 61:20-65:15. Ordones further testified as follows:

Q.  Okay. Sir, the truck that Mr. Juarez was driving at the time of the accident, I believe you testified that you—that ORD Trucking owned that truck; is that fair?

A.  Yes.

Q.  And did ORD Trucking also perform all of the maintenance required on that tuck?

A.  Yes, sir.

.  . .

Q.  I just want to be clear and I want to make sure it's clear on the record, too, what ORD Trucking's role was versus Silver Star Construction's role.

Silver Star Construction didn't hire your drivers, is that fair?

A.  No, sir.

Q.  Silver Star Construction, they didn't determine what trucks your drivers would operate; is that fair?

A.  No, sir.

Q.  Silver Star Construction, it wasn't their job to train your drivers; is that fair?

A.  No, sir.

Q.  And I think we covered this but to be clear, Silver Star Construction, it wasn't their job to tell your drivers how to operate their trucks; is that fair?

3

A. Yes.
. . .
Q. Your driver was operating the truck?
A. Yes.
Q. It wasn't Silver Star's?
A. It wasn't Silver Star.
Q. Silver Star didn't own the truck he was driving?
A. No, sir.
Q. And Silver Star was not responsible for telling him how to operate the truck; is that fair?
A. Yes.

*See* Exhibit 1, at 72:22-78:10.  Israel Juarez testified as follows at his deposition:

While ZAIC has admitted Juarez testified that Silver Star employees were at the job site telling him when to start, what to do, and where to go, and that the supervisor for the day was a Silver Star employee (*see* Doc. 93-6, at 37:204; 38:10-19), ***this does not convert Juarez and ORD's status as independent contractors of Valle into employees of Silver Star***.  The HSA clearly identifies Valle as an independent contractor, and that Valle will provide hauling services for Silver Star as an independent contractor:

WHEREAS, ***HAULER [Valle] is an independent contractor*** engaged in the business of delivering, transporting and/or hauling various types of freight and materials by motor vehicle on behalf of others, pursuant to the agreements or contracts with various third parties;

WHEREAS, HAULER has voluntarily solicited from SILVER STAR the opportunity to deliver, transport and/or haul materials for SILVER STAR ***as an independent contractor and not as an employee of SILVER STAR.***

NOW THEREFORE, in consideration of the mutual covenants contained herein, the parties mutually agree as follows:

I.      TERM OF AGREEMENT AND GENERAL TERMS:  This Agreement shall be in full force at any time the HAULER is hauling for, or under the dispatch of SILVER STAR.  During that time ***HAULER agrees to utilize its own equipment and/or vehicles, wholly owned and/or leased by HAULER***, as may be necessary to transport, deliver, haul, load, and/or unload such materials as SILVER STAR shall request from time to time.

Due to the nature of the construction industry, SILVER STAR'S projects and the nature of the materials to be transported, hauled, and/or delivered, HAULER acknowledges and agrees that TIME IS OF THE ESSENCE in hauling materials pursuant to this agreement, and that HAULER will use equipment of the type commonly used within the industry for transporting, delivering and hauling such materials. ***HAULER agrees to promptly pick up the materials from the location(s) designated by SILVER STAR and HAULER will choose the route to the destination designated by SILVER STAR. HAULER will make all decisions with regard to the method it transports the materials and SILVER STAR shall have no control over the method of how HAULER conducts its business***. HAULER agrees to, and shall bear the full responsibility of observing each and all legal and regulatory requirements in the performance of transporting, delivering and hauling under this Agreement.

Furthermore, HAULER SHALL:

A.      Maintain the exclusive possession, control and use of all the equipment that may be required to fulfill the requirements of this Agreement.

B.      . . .

C.      Fully maintain HAULER'S equipment at HAULER'S own expense, providing all necessary equipment to safely haul SILVER STAR materials such as tarps, aprons, tail gate seals, etc. HAULER shall also provide at his expense repairs, fuel, oil, tires, road use taxes, tolls, fines, moving and weight violations, plates, trip permits and any other levies, expenses or assessments arising from HAULER'S operation of equipment;

D.      To the fullest extent allowable by law, **hold SILVER STAR harmless** as to any and all Federal, State and local governmental agencies on account of withholding, employment taxes or any other actions arising from HAULER'S operations; . . . .

*See* HSA, Doc. 92-2 at pages 1-2 (bold emphasis in original, bold/italic emphasis added).  The

HSA clearly identifies Valle as Silver Star's independent contractor, and also clearly disclaims any

employer/employee relationship between Valle and Silver Star.  The HSA further anticipates that

Valle may fulfill its independent contractor obligations under the HSA via equipment and vehicles

either owned by Valle ***or leased by Valle***.  *See id.* The HSA also clearly states that Silver Star will

exercise no control over either Valle's trucks or equipment, or how Valle conducts its business.

5

The mere fact that Valle's own subcontractor, ORD/Juarez, is told where to dump its load at the jobsite by a representative of Silver Star does not defeat the clear nature of the relationship between Silver Star and Valle, *or* Silver Star and Valle's own subcontractors, as set forth in the unambiguous terms of the HSA.

## ZAIC'S Reply to Mackey's Arguments and Authorities

ZAIC agrees with Mackey's assertion that the Great Lakes independent contractor exclusion does not apply to preclude coverage for Silver Star under the Great Lakes policy, but on grounds other than Mackey's suggested and unsupported "employee" relationship between ORD/Juarez and Silver Star.  If the independent contractor exclusion is applied as Great Lakes requests, it will render illusory the insurance coverage purportedly provided to Silver Star pursuant to the Great Lakes Additional Insured Endorsement and the insured contract provision of the Great Lakes policy.  *See* Doc. 96, at page 20-25.[1]

Mackey cites *Page v. Hardy*, 1958 OK 283, ¶ 10, 334 P.2d 782, 784-785, for eleven factors used to determine whether one is an employee or an independent contractor. Unlike the instant case, *Page* involved a determination of whether an individual was an employee or independent contractor in the context of a workers' compensation claim.  *Id.*  Significantly, also unlike the instant action, ***Page did not involve a detailed, written contract which established the precise nature of the relationships of the parties***.   Here, the HSA outlined in detail the nature of the relationship between Valle and Silver Star, noting specifically that Valle was an independent contractor of Silver Star and not an employee of Silver Star, and further noting Valle might lease

---

[1] For ease of reference, page references to filed documents refer to the Court's page numbering at the top of each filed document.

vehicles of other independent contractors to fulfill Valle's obligations to Silver Star pursuant to the HSA. The HSA identifies Valle as an independent contractor, not an employee, and the relationship between Silver Star and any independent contractor hired by Valle is *even further* removed from an employee/employer relationship. The HSA further states that Valle would use its own equipment or equipment leased by Valle from another entity or person (i.e., any subcontractor with whom Valle contracted, like ORD). *See* Doc. 92-2.

Further, the *Page* Court unequivocally stated as follows:

> We have without exception held that an independent contractor is one who engages to perform certain service for another, according to his own manner and method, ***free from control and direction of his employee in all matters connected with the performance of the service, except as to the result or product of the work***.

*Id*. at 784 (emphasis added).

The HSA states that Valle (and/or any subcontractor with whom Valle contracted, like ORD) would "transport, deliver, haul, load, and/or unload such materials as SILVER STAR shall request from time to time." *See* Doc. 92-2, at 1. Valle (and any entity with whom it contracted to perform these services) would maintain their own equipment and Silver Star would have no control over the method of how Valle/ORD/Juarez would conduct their business. *See* Doc. 92-2, at 1. While Silver Star advises as to the destination of the load under the HSA, it does choose the driver's route of travel. *See* Doc. 92-1, at 1. Valle (and/or any entity with whom it contracted to perform these services) would make all decisions with regard to the method it transported the materials. *See* Doc. 92-2, at 1. Valle (and/or any entity with whom it contracted) would maintain exclusive possession, control, and use of all equipment that may be required to fulfill the HSA. *See* Doc. 92-2, at 2. While Silver Star directed when to appear at a site for hauling activities and told Valle/ORD/Juarez

7

where to load and unload materials, this does not constitute control and direction of "all matters connected with the performance of the service." *See Page,* 334 P.2d at 784. ORD/Juarez was free to perform services for Valle according to their own manner and method. Under the definition of "independent contractor" in *Page*, Silver Star merely dictated the result or product of the work—where the hauled materials would be picked up, taken to, and unloaded. The scope of services for Valle and its subcontractors was merely to haul materials from one location to the other. The fact that Silver Star would maintain the control of where to pick up and deliver the hauled materials does not constitute active direction on how the materials were hauled. This was exclusively in the control of Valle and its subcontractors. As such, there is no genuine issue of fact regarding whether ORD and Juarez were independent contractors.

ZAIC submits that ORD and Juarez are clearly independent contractors under the unambiguous definition set forth in *Page*. However, if the Court finds it necessary to apply the factors set forth in *Page*, the weight of the factors point to an independent contractor status for ORD and Juarez:

(a) the nature of the contract between the parties, whether written or oral—there is an absence of ***any*** contract, either written or oral, between Silver Star and ORD or Juarez. This indicates there is no relationship between Silver Star and ORD or Juarez. The less formal oral contract between Valle and ORD would tend to indicate an independent contractor relationship, as there were no written guidelines to control the aspects of ORD's performance of work for Valle;

(b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent—as there was no agreement between Silver Star and ORD/Juarez, there was no control exercised by Silver Star over the method of ORD/Juarez's work. Silver Star simply maintained control over the work's result; *i.e.*, where the load was picked up and where it was delivered and unloaded;

(c) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others—ORD/Juarez worked for various other entities, and did not exclusively work for Valle, indicating they are intendent contractors (*see* Deposition Transcript of Israel Juarez, attached as **Exhibit 2**, at 15:13-17). Jesus Ordones, the owner of ORD, works for various entities (*see* Deposition Transcript of Jesus Ordones, attached as Exhibit 1, at 12:1-20:4);

(d) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision—in Oklahoma, as elsewhere, in construction work of any kind it is common for haulers of dirt and other materials to be independent contractors rather than captive employees of a single construction company;

(e) the skill required in the particular occupation—the hauling of dirt and other materials by a truck does not require higher education, but simply the ability to operate a truck and a proper license to operate it.  There is no need for a formal employment contract to set forth the details of the hauling activity as would be found in an employment agreement with an employer/employee relationship;

(f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work—ORD/Juarez used their own truck, and chose the route for their hauling activity, and were only advised by Silver Star as to where to pick up and deliver loads;

(g) the length of time for which the person is employed—ORD/Juarez worked for Valle on a per job basis, and Juarez testified the work was "off and on" (*see* Exhibit 2, , at 15:9-22);

(h) the method of payment, whether by the time or by the job—ORD paid Juarez for his work (*see* Doc. 92-7, at 39:14-18);

(i) whether or not the work is a part of the regular business of the employer—hauling materials was not the normal business of Silver Star, as it contracted with Valle to perform these services for it.  *See* Doc. 92-2, at 1 ("Silver Star's operations requires the need for the transportation of various materials. . ." and "HAULER is an independent contractor engaged in the business of delivering, transporting and/or hauling various types of freight and materials. . . .");

(j) whether or not the parties believe they are creating the relationship of master and servant—there was no relationship between Silver Star and ORD/Juarez at all, so there was no belief they were forming a master/servant relationship.  The HSA indicates there was not even a master/servant relationship between Silver Star and Valle, as Valle was hired as a "independent contractor" (*see* Doc. 92-2, at 1); and

(k) the right of either to terminate the relationship without liability—there was no relationship between ORD/Juarez and Silver Star.

*See Page*, 334 P.2d at 784-85. Mackey makes no effort to examine the application of the above factors, which clearly demonstrate that neither ORD nor Juarez were employees of Silver Star.

Lastly, Mackey asserts in an extremely one-liner conclusory fashion that "Silver Star's undisputed right to control Juarez suggests that the three trucking companies were engaged in a joint venture and were not independent contractors of one another." *See* Response, at 7. Mackey neither attempts to define what would constitute a "joint venture" under Oklahoma law, nor produces any evidentiary material in support of such a relationship. It is clear under the facts supported by competent evidence before this Court that neither ORD nor Juarez are, or ever have been, employees of Silver Star.

WHEREFORE, Defendant/Third-Party Plaintiff Zurich American Insurance Company respectfully requests that the Court enter an Order: (1) granting summary judgment in its favor as to Progressive's duty to defend and indemnify Silver Star as to the Underlying Suit; (2) denying Great Lakes' Motion for Summary Judgment; and (3) setting forth the priority of coverage and proportionate indemnification obligations with regard to the ZAIC, Great Lakes, and Progressive Policies; and (3) granting any other relief to which ZAIC may be entitled.

Respectfully Submitted,

**ASTON | MATHIS | CAMPBELL PLLC**


By _s/Amy E. Hampton_ _____
    **RACHEL C. MATHIS, OBA #16360**
    **AMY E. HAMPTON, OBA # 20235**
    2642 East 21st Street, Suite 250
    Tulsa, OK  74114
    (918) 949-9966
    FAX: (918) 949-9968
    E-Mail: rmathis@amlawok.com
    ahampton@amlawok.com
    Attorney for Defendant/Third-Party Plaintiff
    Zurich American Insurance Company

## CERTIFICATE OF SERVICE

I, Amy E. Hampton, hereby certify that on this 19th day of December, 2023, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system:

Michael S. Linscott
Doerner, Saunders, Daniel & Anderson, L.L.P.
Two West Second Street, Suite 700
Tulsa, OK 74103-3117
_Attorney for Great Lakes Insurance SE_

Brian M. Keester
Doerner, Saunders, Daniel & Anderson, L.L.P.
2 West Second Street, Suite 700
Tulsa, OK 74103-3117
_Attorney for Great Lakes Insurance SE_

Emily E. Williams
Doerner, Saunders, Daniel & Anderson, L.L.P.
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
_Attorney for Great Lakes Insurance SE_

J. Chris Horton
J. Chris Horton, PC
PO Box 576
El Reno, OK 73036
*Attorney for Silver Star Construction Company, Inc.*

James A. Scimeca
Burch, George & Germany
1500 City Place Bldg.
204 N. Robinson, Ste 1500
Oklahoma City, OK  73102
*Attorney for Tylon Mackey*

Ryan Polchinski
Law Offices of Daniel M. Davis
300 N. Walnut Ave.
Oklahoma City, OK 73104
*Attorney for Tylon Mackey*

Andrew Polchinski
Law Offices of Daniel M. Davis
300 N. Walnut Ave.
Oklahoma City, OK 73104
*Attorney for Tylon Mackey*

Bradley E. Bowlby
Starr, Begin & King, PLLC
1800 South Baltimore, Suite 550
Tulsa, OK 74119
*Attorney for Progressive Northern Insurance Company*

Christopher C. King
Starr, Begin & King, PLLC
1800 South Baltimore, Suite 550
Tulsa, OK 74119
*Attorney for Progressive Northern Ins. Co.*

*s/Amy E. Hampton*
**AMY E. HAMPTON**

AEH/aeh